UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARY McCARTHY, CLAYTON BOROWSKI, individually and on behalf of others similarly situated, and individually, GAIL ADAMS, DONALD BAKERT, et al., | CIVIL ACTION NO. 3:03 CV 0431 (SRU) |
| Plaintiffs, | |
| v. | DECEMBER 9, 2003 |
| THE DUN & BRADSTREET CORPORATION, THE DUN & BRADSTREET CORPORATION RETIREMENT ACCOUNT, and THE DUN & BRADSTREET CAREER TRANSITION PLAN, | |
| Defendants. | |

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF
## THEIR MOTION TO DISMISS WITH PREJUDICE

Patrick W. Shea (ct07071)
Zachary R. Osborne (ct19988)
Paul, Hastings, Janofsky & Walker, LLP
1055 Washington Boulevard
Stamford, CT 06901-2217
Telephone: (203) 961-7400
Facsimile: (203) 359-3031
patrickshea@paulhastings.com

Counsel for the Defendants
THE DUN & BRADSTREET CORPORATION,
THE DUN & BRADSTREET CORPORATION
RETIREMENT ACCOUNT, and THE DUN &
BRADSTREET CAREER TRANSITION PLAN

# TABLE OF CONTENTS

Page

A.    The Plan Administrator's Denial Of Severance Benefits Under The Career Transition Plan Must Be Upheld Under Any Standard Of Review ................................... 1

    (1)    The Language Of The CTP Is Plain And Unambiguous ....................................... 1

    (2)    While The Court Need Not Reach The Issue, Deferential Review Is Appropriate .................................................................................................. 5

B.    Count Three Fails Because The Master Retirement Plan SPD Summarized And Disclosed All Material Plan Terms.................................................................................. 7

    (1)    The SPD Appropriately Summarized The Master Retirement Plan; If Plaintiffs Wanted More Information, They Knew How To Obtain It. .................. 8

    (2)    Neither ERISA Nor The Internal Revenue Code Requires A Plan Document To Specify Actuarial Reduction Rates ................................................ 10

    (3)    Plaintiffs Cannot Demonstrate Prejudice.......................................................... 12

C.    The Plan Interest Rate Of 6.75 Percent Is Reasonable As A Matter Of Law .................. 13

# TABLE OF AUTHORITIES

## CASES

Amato v. Western Union International, Inc.,
    773 F.2d 1402 (2d. Cir. 1985)..................................................................13

Aramony v. United Way Replacement Benefit Plan,
    191 F.3d 140 (2d Cir. 1999)....................................................................2

Burke v. Kodak Retirement Income Plan,
    336 F.3d 103 (2d Cir. 2003)..............................................................5, 7, 12

District 65, UAW v. Harper & Row Publishers, Inc.,
    696 F. Supp. 29 (S.D.N.Y. 1988) ...........................................................14

Dooley v. American Airlines, Inc.,
    Civ. A. No. 81 C 6770, 1993 U.S. Dist. LEXIS 15667 (N.D. Ill. 1993) ............14

Esden v. Bank of Boston,
    229 F.3d 154 (2d. Cir 2000).....................................................................13

Fay v. Oxford Health Plan,
    287 F.3d 96 (2d Cir. 2002)........................................................................6

Fuller v. FMC Corp.,
    4 F.3d 255 (4th Cir. 1993) ....................................................................9, 13

Gilbertson v. AlliedSignal, Inc.,
    328 F.3d 625 (10th Cir. 2003) ...................................................................5

Jebian v. Hewlett-Packard Co.,
    310 F.3d 1173 (9th Cir. 2003) ...................................................................5

Kinek v. Paramount Communications, Inc.,
    22 F.3d 503 (2d Cir. 1994)........................................................................2

Layaou v. Xerox Corp.,
    238 F.3d 205 (2d Cir. 2001)......................................................................10

Leyda v. AlliedSignal,
    322 F.3d 199 (2d Cir. 2003)......................................................................12

Mastrobuono v. Shearson Lehman Hutton, Inc.,
    514 U.S. 52, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995)....................................2

Pagan v. NYNEX Pension Plan,
    52 F.3d 438 (2d Cir.1995)...................................................................................3

Perreca v. Gluck,
    295 F.3d 215 (2d Cir. 2002)..............................................................................2

Pompano v. Michael Schiavone & Sons, Inc.,
    680 F.2d 911 (2d Cir. 1982)..............................................................................9

Pulvers v. First Unum Life Insurance Co.,
    210 F.3d 89 (2d Cir. 2000)..............................................................................6, 7

Record Club of America, Inc. v. United Artists Records, Inc.,
    890 F.2d 1264 (2d Cir. 1989)............................................................................3

Risenhoover v. Bayer Corp. Group Health Plan,
    83 F. Supp. 2d 408 (S.D.N.Y. 2000)................................................................6

Stahl v. Tony's Building Materials, Inc.,
    875 F.2d 1404 (9th Cir. 1989) .........................................................................9

Stamper v. Total Petroleum, Inc. Retirement Plan,
    188 F.3d 1233 (10th Cir. 1999) ..................................................................10, 11

Sullivan v. LTV Aerospace & Defense Co.,
    82 F.3d 1251 (2d Cir. 1996).............................................................................7

Taylor v. Continental Group Change in Control,
    933 F.2d 1227 (3d Cir. 1991)............................................................................3

United Technologies Corp. v. American Home Assurance Co.,
    989 F. Supp. 128 (D. Conn. 1997)....................................................................3

Whitney v. Empire Blue Cross & Blue Shield,
    106 F.3d 475 (2d Cir. 1997)..............................................................................7

## STATUTES

29 U.S.C. § 1022(a)(1)...........................................................................................10

29 U.S.C. § 1022(b)................................................................................................10

ERISA § 102 ......................................................................................................1, 7

ERISA § 203 ..........................................................................................................15

ERISA § 206(a)............................................................................................................14

I.R.C. § 401(a)(25)......................................................................................................11

I.R.C. § 417(e)............................................................................................................14

### TEXTS

Steven J. Sacher et al., <u>Employee Benefits Law</u>  (BNA Books 2d ed. 2000)...............................13

.

## INTRODUCTION

Counts One, Three and Four of the Amended Complaint all fail as a matter of law. The claim in Count One for severance benefits fails because the plan administrator correctly determined that unambiguous Career Transition Plan ("CTP") language precludes Plaintiffs from collecting severance where their employment with Dun & Bradstreet ended as a result of a sale involving their business unit. Count Three must be dismissed because the Master Retirement Plan SPD, in full compliance with ERISA § 102, clearly informed Plaintiffs that benefits for former employees electing early retirement would be actuarially reduced and that such reductions would result in lower benefits. Finally, Count Four must be dismissed because the interest rate of 6.75% used to calculate such actuarial reductions is reasonable as a matter of law. As discussed below, no fact or legal argument asserted in Plaintiffs' 52-page opposition brief saves any of these three legally insufficient claims.

A. **The Plan Administrator's Denial Of Severance Benefits Under The Career Transition Plan Must Be Upheld Under *Any* Standard Of Review.**

Count One fails under any standard of review. Even applying a stricter *de novo* standard, it is clear that the plan administrator's decision was correct and that Plaintiffs were not eligible for severance benefits under the CTP.

### (1)    *The Language Of The CTP Is Plain And Unambiguous*.

Plaintiffs assert that the CTP's sale-of-business exclusion does not apply to them "because their jobs, while eliminated in connection with a sale, were not eliminated in connection with a sale *to* one of Dun & Bradstreet's nineteen 'Participating Companies' or an offer of employment with one." Pls.' Opp. at 34 (emphasis added). Nothing in the Plan or SPD, however, states that the sale-of-business exclusion for severance pay applies only where a sale is made *by* a Participating Company *to* another Participating Company. Rather, the Plan expressly

states that "a termination as a result of sale . . . *involving a* Participating Company," is not an Eligible Termination for severance pay purposes.  Ex. D to Defs.' Mem., Section 1.4 at 1-2 (emphasis added).  Here, as the plan administrator correctly found (and as is undisputed), Dun & Bradstreet is a Participating Company, there was a sale of a Dun & Bradstreet business, and Dun & Bradstreet was involved as the seller.  Plaintiff's argument is therefore foreclosed by the plain and unambiguous language of the CTP.    See Aramony v. United Way Replacement Benefit Plan, 191 F.3d 140, 149 (2d Cir. 1999) ("unambiguous language in an ERISA plan must be interpreted and enforced in accordance with its plain meaning").

    In fact, any other reading of the sale-of-business exclusion would render the CTP illogical and contravene the "cardinal principle of contract construction[ ] that a document should be read *to give effect to all its provisions* and to render them consistent with each other." Perreca v. Gluck, 295 F.3d 215, 224 (2d Cir. 2002) (emphasis added), quoting Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 63, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); see also Kinek v. Paramount Communications, Inc., 22 F.3d 503, 509 (2d Cir. 1994) (well-established principle of contract construction requires that "all provisions of a contract be read together as a harmonious whole, if possible").  Specifically, a "comparable offer" exclusion immediately following the sale-of-business exclusion provides that an Eligible Termination does not include "any termination where an offer of employment is made to the Eligible Employee of a comparable position at a Participating Company concurrently with his or her Eligible Termination."  Ex. D to Defs.' Mem., Sec. 1.4(z) at 2.  If, as Plaintiffs propose, the sale-of-business exclusion applied only to a sale of a business by one Participating Company to another Participating Company (a transaction that almost invariably produces comparable job offers from the acquiring company), then the sale to the Participating Company would trigger the

"comparable offer" exclusion, rendering the sale-of business exclusion redundant. Under established contract construction principles, therefore, the Court cannot accept Plaintiffs' distorted and unreasonable interpretation of the CTP.

Because the language of the CTP is unambiguous, and because the Plaintiffs' proposed interpretation would render the sale-of-business exclusion meaningless, there is no basis for applying the doctrine of *contra proferentum*. Even assuming the Court found the sale-of-business exclusion language ambiguous, however, *contra proferentum* still would not apply. First, the doctrine is inapplicable where, as here, the arbitrary and capricious standard of review applies to the plan administrator's determination. Pagan v. NYNEX Pension Plan, 52 F.3d 438, 443-44 (2d Cir.1995); see also discussion of deferential standard of review, infra at pp. 5-7. Moreover, as the Second Circuit has held, "[r]ules of construction such as the principle that in certain circumstances a contract may be construed adversely to the party that drafted it are principles of *last resort*, to be invoked when efforts to fathom the parties' intent have proved fruitless." Record Club of America, Inc. v. United Artists Records, Inc., 890 F.2d 1264, 1271 (2d Cir. 1989) (citations omitted; emphasis added); see also United Technologies Corp. v. American Home Assurance Co., 989 F.Supp. 128, 145 (D. Conn. 1997) (Arterton, J.) ("the rule of contra proferentum is a rule of last resort, only utilized when all aids to construction have been employed and have failed to resolve the ambiguity."). Relying on the Second Circuit's Record Club of America reasoning, the Third Circuit has specifically held that when interpreting an ERISA-governed severance plan, a district court should attempt to determine its intended meaning "without construing it in favor of any party" and that only if other aids to construction prove fruitless should a court resort to constructions in favor of one party or another. Taylor v. Continental Group Change in Control, 933 F.2d 1227, 1233 (3d Cir. 1991).

Here, Dun & Bradstreet's intent to apply the sale-of-business exclusion to any sale involving a Participating Company is apparent from the language of the Plan itself.  For example, as evidenced by its choice of words, Dun & Bradstreet knew how to use narrow language to describe certain exclusions related to actions by a Participating Company: "involuntary termination of employment *with a Participating Company*"; "resignation mutually agreed to in writing *by the Participating Company* and the Eligible Employee"; "termination *by a Participating Company* for Cause"; "offer of employment . . . *at a Participating Company*." Ex. D to Defs.' Mem., Sec. 2.3 at 2-3 (emphases added).  The sale-of-business exclusion, by contrast, uniquely uses the broader term "*involving* a Participating Company."  Id. (emphasis added).  Clearly, if Dun & Bradstreet meant to limit the exclusion to sales by a Participating Company *to* a Participating Company or *between* Participating Companies, it knew how to do so. The fact that Dun & Bradstreet instead chose to use the broader term "involving" demonstrates its intent not to limit the exclusion.

Finally, Dun & Bradstreet's intent to apply the sale-of-business exclusion broadly, by not limiting the exclusion to Participating Company purchasers or to individuals who became unemployed post-sale, is entirely reasonable given the endless amount of litigation such distinctions have generated.  As Plaintiffs' own Opposition brief will attest, there have been scores of disputes, specifically in the sale-of-business context, over how to interpret plans and SPD's that attempt to provide severance benefits to some, but not to others after a sale.  Pls.' Opp. at 37-47.  Here, Dun & Bradstreet's manifest intent was to avoid any such dispute by making severance benefits unavailable across the board in the case of any "sale (whether in whole or in part, of stock or assets), merger or other combination, spinoff, reorganization or liquidation, dissolution, or other winding up or other similar transaction *involving* a Participating

Company". Ex. D to Defs.' Mem., Sec. 1.4(y) at 1-2 (emphasis added). The language could not be broader or clearer. This Court should therefore respect the intent reflected in the language and reject Plaintiffs' attempt to re-write the terms of the CTP.

      *(2)*      ***While The Court Need Not Reach The Issue, Deferential Review Is Appropriate.***

While Count One fails under any standard of review, the arbitrary and capricious standard applies because the alleged procedural flaws in the CTP plan administrator's review are trivial and do not demonstrate a lack of substantial compliance with ERISA. See Gilbertson v. AlliedSignal, Inc., 328 F.3d 625, 634 (10th Cir. 2003) (it is appropriate to "overlook . . . certain procedural requirements" where "the administrator has substantially complied with the regulations and the process as a whole fulfills the broader purposes of ERISA and its accompanying regulations.")(citations omitted). See also Burke v. Kodak Retirement Income Plan, 336 F.3d 103, 107 (2d Cir. 2003) (indicating substantial compliance with ERISA requirements is adequate). Here, Plaintiffs' procedural complaints are indeed trivial and do not detract from Defendants' substantial compliance.

First, Plaintiffs assert that the plan administrator's denial of the claim on the 91st day, one day after the applicable 90-day deadline, warrants *de novo* review. Pls.' Opp. at 11-14. But as Gilbertson (positively cited by Plaintiffs) held, "inconsequential violations of the deadlines or other procedural irregularities [do] not entitle the claimant to *de novo* review."[1] 328 F.3d at 635 ("[n]ot every decision that comes on the 61st or 121st day following the claimant's notice of

---

[1]      Plaintiffs also cite Jebian v. Hewlett-Packard Co., 310 F.3d 1173 (9th Cir. 2003), which applied *de novo* review to an untimely claims determination. In Jebian, the *final decision on appeal* was untimely, leaving the plan administrator with no further authority or discretion under the plan. Here, by contrast, the allegedly untimely decision was made only at the initial level, and Plaintiffs have made no attempt to seek a review of that denial as required under the Plan's explicit claims procedures.

appeal must be subject to plenary review in federal court. Such a hair-trigger rule could inhibit collection of useful evidence and create perverse incentives for the parties."). Id. at 634-635.

Second, Plaintiffs complain that a Dun & Bradstreet Human Resources Consultant, rather than the fiduciaries named in the Plan, issued the denial letter of June 17, 2003. Pls.' Opp. at 14-15. The Plan expressly provides, however, that, "The Named Fiduciaries may from time to time . . . designate persons other than Named Fiduciaries to carry out fiduciary responsibilities under the Plan, and such persons shall be deemed to be fiduciaries under the Plan with respect to such delegated responsibilities." Ex. D to Defs.' Mem., Sec. 4.2 at 3. The Plan also expressly confers discretionary authority on such delegees. Id., Sec. 4.3 at 4. As a properly delegated representative, Dun & Bradstreet's Human Resources Consultant is entitled to deference. See Risenhoover v. Bayer Corp. Group Health Plan, 83 F.Supp.2d 408, 411 (S.D.N.Y. 2000) (plan provision permitting fiduciary to "appoint one or more individuals and delegate such of its power and duties as it deems desirable to any individual" was sufficient for delegation of fiduciary responsibilities and maintenance of deferential standard of review). Once again, Plaintiffs' bid for *de novo* review must fail.

Finally, Plaintiffs contend that the decision to deny severance benefits was tainted by a conflict of interest -- Dun & Bradstreet's alleged "enormous financial stake in the outcome." Pls.' Opp. at 17-19. Although the Second Circuit has recognized that a conflict of interest "may be 'inherent' to some extent when a plan is both administered and insured by a single entity," Fay v. Oxford Health Plan, 287 F.3d 96, 109 (2d Cir. 2002) (upholding deferential review), such inherent tension "is alone insufficient as a matter of law to trigger stricter review." Pulvers v. First Unum Life Ins. Co., 210 F.3d 89, 92 (2d Cir. 2000) (upholding deferential review). At most, therefore, any alleged "financial stake" Dun & Bradstreet may have had in denying

severance benefits is only "a factor to be weighed 'in determining whether there has been an abuse of discretion'"; it does not set aside the deferential standard of review in favor of *de novo* review. Pulvers, 210 F.3d at 92. Moreover, where, as here, the plan administrator's decision is reasonable on its face, *de novo* review is inappropriate. Id.; see also Whitney v. Empire Blue Cross & Blue Shield, 106 F.3d 475, 476 (2d Cir. 1997) (a reasonable interpretation of the Plan will stand unless the participants can show both a potential conflict of interest exists and that the conflict affected the reasonableness of the plan administrator's decision), citing Sullivan v. LTV Aerospace & Defense Co., 82 F.3d 1251 (2d Cir. 1996).

Therefore, the Court must uphold the Plan's express reservation of discretion and review the CTP plan administrator's decision under a deferential rather than *de novo* standard.

**B.    Count Three Fails Because The Master Retirement Plan SPD Summarized And Disclosed All Material Plan Terms.**

Count Three must be dismissed because the Master Retirement Plan SPD, in full compliance with ERISA § 102, clearly states that early retirement benefits for former employees will be actuarially reduced and that such reductions will result in lower benefits.[2]

---

[2]     While, like the CTP claim, the Master Retirement Plan SPD claim fails under any standard of review, a deferential review is appropriate here as well. Contrary to Plaintiffs' assumption that *de novo* review applies, the Second Circuit has noted that "the standard of review to be applied when the question of whether the SPD complies with ERISA's disclosure requirements is not so clear." Burke, 336 F.3d at 110. In the absence of authority to the contrary, the Court should apply the deferential standard of review because the Plan and the SPD expressly reserve discretionary authority for the plan administrator. See Defs.' Mem. at 22-23. In this regard, Plaintiffs are incorrect in contending that the SPD did not set forth Dun & Bradstreet's discretionary authority. The SPD directs participants to refer to a "General Information About Your Benefits" booklet for "important administrative information about the Plan." Ex. B to Defs.' Mem. at 21. This booklet, which was distributed with and incorporated by express reference into the SPD, sets forth the applicable claims procedures and advises that the plan administrator has "the discretionary right to interpret the provisions of the Plan and policies under which insured benefits are provided" and that such decisions are "conclusive and binding." Ex. L, attached hereto, at 12. Therefore, the deferential standard of review applies.

**(1)    The SPD Appropriately Summarized The Master Retirement Plan; If Plaintiffs Wanted More Information, They Knew How To Obtain It.**

Plaintiffs do not dispute that they knew they would receive lower, actuarially reduced early retirement benefits.  See Pls.' Opp. Brief at 26-27; Amend. Compl. ¶ 91.  They contend only that they did not know exactly how much lower those benefits would be.  In this regard, Plaintiffs argue that the SPD should have included a "simple chart" setting forth the actuarial reductions for each year of early retirement, and that the failure to include such rates caused them to assume (arbitrarily, it seems) that actuarially reduced benefits would be "lower but close to" those provided for subsidized early retirement.  Pls.' Opp. at 20, 28.

First, as a fundamental practical matter, Plaintiffs could not have calculated their early retirement benefits even if the SPD had included a chart of actuarial reductions.  Plaintiffs have pled that none of them was eligible for early retirement at the time of the sale (Amend. Compl. ¶ 79), so none of them knew exactly what amounts would even be subject to actuarial reduction by the time they became eligible for retirement.  Furthermore, calculating actuarially reduced benefits involves a complex formula that computes Average Final Compensation figures, years of Credited Service, compounded interest rates, and mortality rates (which varies depending on age and whether the employee is disabled or healthy), and also requires a computation of Social Security offsets.  See Ex. B to Defs.' Mem. at 4-7, 9; Ex. A to Defs.' Mem., Sec. 1.1 at 4, Attachs. X and Y to Ex. A.  No chart of actuarial reductions, therefore, could have given each Plaintiff, whose ages, compensation levels, years of service, and years before eligibility for early retirement all varied, an accurate assessment of his or her early retirement benefits.

If Plaintiffs had wanted to know the assumptions used to calculate actuarial reductions, they could have, as the SPD advised them, contacted their local Human Resources representative

or manager (Ex. B to Defs.' Mem. at 21), asked to review the Plan itself[3] (Ex. L, attached hereto, at 16), or directed any questions about the Plan to Employee Benefits & Payroll Services (id. at 17). In addition, Plaintiffs could have contacted Dun & Bradstreet's Benefits Center at Fidelity, just as Lawrence Eder did (Ex. E to Defs.' Mem.), to obtain a current or forecasted estimate of their individual benefits. Not having bothered to inquire or use the informational mechanisms Dun & Bradstreet provided, Plaintiffs now seek to reap a tremendous windfall by claiming entitlement to more than double their retirement benefits because the SPD allegedly should have included information which they did not consider worth the effort of making one phone call.

In insisting that the SPD could easily have included a chart of actuarial reductions, Plaintiffs misconstrue the fundamental purpose and function of a summary plan description. The adequacy of an SPD does not hinge on what could have been included or whether it "could have warned [a participant] more specifically" about a particular rule. Stahl v. Tony's Bldg. Materials, Inc., 875 F.2d 1404, 1408 (9th Cir. 1989) See also Fuller v. FMC Corp., 4 F.3d 255, 261 (4th Cir. 1993) (although "the SPD could have made the termination benefit crystal clear by using the same language as that used in the plan itself," that is not the legal requirement for an SPD; otherwise, "the purpose of the summary would be frustrated"). Rather, a summary plan description is meant to be a "brief restatement" of the plan, Pompano v. Michael Schiavone & Sons, Inc., 680 F.2d 911, 914 (2d Cir. 1982), and is adequate if it "reasonably apprise[s]" participants of their rights and obligations under the plan and sets forth the "circumstances which

---

[3]     The "General Information About Your Benefits" booklet, which was distributed along with the Master Retirement Plan SPD, informed participants that the SPD "do[es] not attempt to cover all details," and that the details "are contained in the individual Plan documents," which "are available for review by Plan participants or their representatives" by contacting Dun & Bradstreet's Employee Benefits & Payroll Services. Ex. L, attached hereto, at 16.

may result in disqualification, ineligibility, or denial or loss of benefits." 29 U.S.C. § 1022(a)(1) and 29 U.S.C. § 1022(b).

Here, the Plan stated that early retirement benefits for former employees would be actuarially reduced; so did the SPD. The Plan set forth the actuarial assumptions (applicable interest and mortality rates) used to calculate early retirement benefits for former employees. See Ex. A to Defs.' Mem., Sec. 9.3 at 56, Sec. 1.1 at 4-5, and Attachs. X and Y to Ex. A. The SPD, in turn, disclosed that, "us[ing] tables provided by an independent actuarial firm to determine equivalent payment values, based on life expectancies at various ages," early retirement benefits for former employees "will be reduced actuarially, resulting in a lower Plan benefit than if the [three percent] reduction table in the 'Early Retirement Benefit' section was used." Ex. B to Defs.' Mem. at 4, 1. Indeed, such language is no less specific or informative than the Second Circuit's own example of adequate disclosure language in an SPD: "The SPD could have given sufficient notice, for example, by stating something like, 'Any future benefit *will be offset* by the *appreciated value* of any prior distribution assuming that amount remained in the plan.'" Layaou v. Xerox Corp., 238 F.3d 205, 211 (2d Cir. 2001) (emphases in original). There can be no question, therefore, that the SPD fully met the requirements of its job, which was to summarize the contents of the Plan.

And as discussed below, because no actuarial reduction rates were required or included in the Plan, none was required or included in the SPD.

### (2)    *Neither ERISA Nor The Internal Revenue Code Requires A Plan Document To Specify Actuarial Reduction Rates.*

While the Master Retirement Plan set forth the actuarial assumptions used to calculate early retirement benefits, it did not include a calculation of any actuarial reductions; likewise, the SPD did not include such reductions. Contrary to Plaintiffs' misinterpretation of Stamper v.

<u>Total Petroleum, Inc. Retirement Plan</u>, 188 F.3d 1233 (10th Cir. 1999), a chart of actuarial reductions is not required in a pension plan, either under ERISA or the Internal Revenue Code. <u>Stamper</u> held that, while the absence of specific actuarial *assumptions* in a pension plan might disqualify the plan from tax-exempt status under I.R.C. § 401(a)(25), such absence did not give rise to an ERISA violation. <u>Stamper</u> at 1240 (ERISA imposes only "a more general requirement that pension plans put [participants and] beneficiaries on notice of the principles under which plan payouts are determined."). Plaintiffs argue that because the Master Retirement Plan expressly "requires the company to administer the MRP plan in accordance with the [Tax] Code provisions, . . . Dun & Bradstreet can hardly argue now that it is freed by the <u>Stamper</u> decision from carrying out its freely adopted contractual obligations." Pls.' Opp. at 24-25.

Plaintiffs' accusations are misplaced. Defendants are not contending that <u>Stamper</u> "frees" them from any Plan commitments, simply that ERISA does not require any specific actuarial information in a plan, much less in a brief restatement of the plan. Even assuming, however, that the Second Circuit were to reject <u>Stamper</u> (as Plaintiffs speculate) and read the Tax Code into ERISA, I.R.C. § 401(a)(25) requires only that any actuarial assumptions in a pension plan "be specified . . . in a way which precludes employer discretion" -- a requirement that the Master Retirement Plan fully met.[4] The Tax Code does *not* require a plan to specify or chart out actuarial reductions, and Plaintiffs are unable to cite a single case either under ERISA or the Tax Code holding that charts of actuarial reductions must be included in either the Plan or the SPD.

---

[4]    The Master Retirement Plan included actuarial assumptions (i.e., interest and mortality rates) with enough specificity to "preclude[] employer discretion," and thereby qualified for tax-exempt status under the Tax Code. Ex. A to Defs.' Mem., Sec. 9.3 at 56, Sec. 1.1 at 4-5, and Attachs. X and Y to Ex. A; Defs.' Mem. at 12 n.8, 19; Ex. K to Defs.' Mem. By contrast, the pension plan in <u>Stamper</u> was no more specific than to provide that early retirement benefits would be actuarially reduced "in accordance with [ ] standard actuarial reduction tables". 188 F.3d at 1236.

Therefore, even applying the more stringent requirements of the Tax Code, Plaintiffs cannot establish that the Plan, much less the SPD, violated ERISA by not including actuarial reductions.

### (3)    *Plaintiffs Cannot Demonstrate Prejudice.*

Even if the Court finds that the SPD should have included a chart of actuarial reductions, Plaintiffs still cannot prevail because they cannot show (and have not even suggested) that they suffered any prejudice or "likely harm" as a result of the SPD not including such a chart. Burke, 336 F.3d at 113 (requiring "for a showing of prejudice, that a plan participant or beneficiary was *likely* to have been harmed as a result of a deficient SPD.") (emphasis in original).

Plaintiffs' reliance on wholly distinguishable cases is unpersuasive in this respect. For example, in Burke v. Kodak Retirement Income Plan, 336 F.3d 103 (2d Cir. 2003), the SPD failed to disclose a requirement in the plan that, in order for a participant's domestic partner to receive survivor income benefits, the participant must have submitted a joint domestic partnership affidavit. Because of this non-disclosure, the participant died without ever having filed such an affidavit. The Second Circuit found that but for the non-disclosure, the plaintiff would likely have received domestic partner survivor benefits. Id. at 112-14. Similarly, in Leyda v. AlliedSignal, 322 F.3d 199 (2d Cir. 2003), the employer failed to properly distribute the SPD, causing an employee to be unaware that his life insurance coverage had decreased. The Second Circuit found that this non-disclosure led the employee to forego opportunities for additional coverage. Id. at 209.

Unlike Burke and Leyda, where benefits would have been available *but for* the SPD's failure to disclose a material plan provision, Plaintiffs here have not lost any benefits to which they otherwise would have been entitled had the SPD included a chart of actuarial reductions. In other words, including a chart of actuarial reductions in the SPD would not have changed by a single dollar the amount of early retirement benefits available to Plaintiffs under the Plan. See

Fuller v. FMC Corp., 4 F.3d 255, 262 (4th Cir. 1993) (even if the SPD failed to adequately inform plaintiffs that they could not elect higher early retirement benefits after termination, plaintiffs could not show prejudice:  Plaintiffs "were separated from FMC by reasons beyond their control, leaving them with only the termination benefit provided by the plan.  Thus, even if we were to construe the SPD as [plaintiffs] propose, they would receive no greater benefit.").  Therefore, Count Three must be dismissed as a matter of law.

## C.    The Plan Interest Rate Of 6.75 Percent Is Reasonable As A Matter Of Law.

Plaintiffs' argument that the Plan uses an unreasonably high interest rate assumption for determining early retirement benefits is puzzling, given that the purpose of actuarial reductions is merely to ensure that the early retirement benefit is of equivalent value as the later commencing benefit from which it is derived.[5]   The Court should take judicial notice that the Plan's 6.75% interest rate is reasonable as a matter of law and dismiss Count Four.

The IRS has issued a determination letter approving the Plan, including its 6.75% interest rate.  Ex. K to Defs.' Mem.  Although Plaintiffs dismissively contend that the IRS determination letter is not conclusive (Pls.' Opp. at 34), courts recognize that such letters do have "some weight".  Amato v. Western Union Int'l, Inc., 773 F.2d 1402, 1412-13 (2d. Cir. 1985);  Esden v. Bank of Boston, 229 F.3d 154, 175-76 (2d. Cir 2000), quoting Amato.  Plaintiffs' reliance on Esden is misplaced in this respect.  In Esden, the determination letter was based on conflicting or misleading representations by the applicant and was not the only "pertinent guidance" that the IRS had issued, leading the court to defer to an Internal Revenue Notice rather than the determination letter.  229 F.3d at 175-76.  By contrast, the determination letter in this case is the

---

[5]    STEVEN J. SACHER ET AL., EMPLOYEE BENEFITS LAW 585 (BNA Books 2d ed. 2000).

only guidance that the IRS has issued with respect to the Plan and there is no allegation that the letter was based on any misrepresentations by Defendants.

In addition, the Plan's 6.75% interest rate is well within the range of rates that numerous federal agencies (including the Social Security Administration) have determined to be reasonable in analogous contexts and well below historical market rates.[6]  Defs.' Mem. at 20-22.  Plaintiffs imply that these rates are irrelevant for purposes of determining whether the 6.75% interest rate is reasonable.  Pls.' Opp. at 33.  However, each of these rates have been deemed reasonable for determining the present value of a future benefit, even though they might be used in a slightly different context (i.e., present value calculations to determine whether employee plans discriminate against low-compensated employees).

Plaintiffs' only argument against dismissal is that their claim allegedly cannot be dismissed without expert testimony.  Plaintiffs rely on one unpublished case that would support the opposite conclusion and a second with substantially different facts.  Pls.' Opp. at 32. In the former case, the court took judicial notice of market interest rates and concluded that the plan's rate was reasonable.  Dooley v. American Airlines, Inc., Civ. A. No. 81 C 6770, 1993 U.S. Dist. LEXIS 15667, at *7 (N.D. Ill. 1993).  This case does not refer to (or seem to hinge on) expert analysis.  In the latter case, District 65, UAW v. Harper & Row Publishers, Inc., 696 F. Supp. 29, 31 (S.D.N.Y. 1988), the interest rate in dispute was an aggressive 15%, compared to the Plan's rate of 6.75%.  While expert testimony might be helpful for determining the upper-limit of reasonable interest rates, it is unnecessary where the rate in question is below historical market

---

[6]    Plaintiffs imply that the Plan must use the variable interest rate under Internal Revenue Code Section 417(e) (Pls.' Opp. at 33-34), but this rate applies to plan payments made as a lump sum, not early retirement payments.  If Congress wanted to require qualified plans to use variable rates for early retirement payments, it would have done so directly through legislation.

rates and within the range of analogous government rates. Moreover, Plaintiffs acknowledge that the reasonableness of the Plan's 6.75% rate is a question of law.[7] Given that the reasonableness of the 6.75% rate is a question of law, and judicially noticeable facts establish that this rate is reasonable, Count Four should be dismissed without expert testimony.

In short, expert testimony is not required to determine whether the 6.75% interest rate is reasonable. Plaintiffs would, no doubt, hire an expert witness to testify that the Court should re-write tax law to require that the Plan use variable interest rates. And Defendants would appoint experts to rebut this evidence. But no such testimony would shed further light on the fact that the Plan has selected a fixed interest rate within a reasonable range. Because Congress has thus far declined to specify any more rigorous requirements, the Court should dismiss Count Four.

.

---

[7]     Pls. Opp. at 17: "[D]e novo review is specifically required where the decision turns on a question of law. Accordingly, the question . . . whether the MRP interest rate violates ERISA §206(a) and its regulations and causes and ERISA § 203 (Count Four) are questions that must be reviewed de novo."

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Defendants' Memorandum In Support Of Their Motion To Dismiss With Prejudice, Defendants respectfully request that the Court GRANT Defendants' Motion and DISMISS WITH PREJUDICE Counts One, Three and Four of the Amended Complaint.

DATED:  December 9, 2003

Respectfully submitted,
THE DEFENDANTS
THE DUN & BRADSTREET CORPORATION,
THE DUN & BRADSTREET CORPORATION
RETIREMENT ACCOUNT, and
THE DUN & BRADSTREET CAREER
TRANSITION PLAN

By: _____
Patrick W. Shea (ct07071)
Zachary R. Osborne (ct19988)
Paul, Hastings, Janofsky & Walker, LLP
1055 Washington Boulevard
Stamford, CT 06901-2217
Telephone: (203) 961-7400
Facsimile: (203) 359-3031
patrickshea@paulhastings.com
Counsel for the Defendants

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 9th day of December, 2003, a copy of the foregoing

Defendants' Reply Brief in Further Support of Their Motion to Dismiss With Prejudice was

served by overnight express mail on the following counsel of record:

Thomas G. Moukawsher, Esq.
Moukawsher & Walsh, LLC
21 Oak Street, Suite 100
Hartford, Connecticut 06106

_____
Zachary R. Osborne

STM/264404.1