## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

MCCARTHY, ET AL,                    :    DOC. NO. 03:CV 431 (SRU)

     Plaintiffs,                    :

     v.                              :

DUN & BRADSTREET, ET AL,            :

     Defendants.                    :    DECEMBER 15, 2003

### PLAINTIFFS' SURREPLY BRIEF IN OPPOSITION TO
### DEFENDANT'S MOTION TO DISMISS

## I.  INTRODUCTION.

In an attempt to force the present case into a posture suitable for Rule

12 (b)(6) dismissal, in its reply brief, Dun & Bradstreet makes a series of

extraordinary new demands on the Court, requiring it to hold: (1) Dun &

Bradstreet should be treated as though it complied with the law governing

timely claims decisions even though it did not comply, (2) the company is

excused from summarizing its actuarial assumptions in a SPD even though the

IRS Code and the terms of its own plan require it to do so, (3) plaintiffs'

interpretation of the CTP plan exceptions is unreasonable as a matter of law

even though concluding so would require the Court to read new language into

the plan, and (4) Dun & Bradstreet's interest rate is reasonable as a matter of

law even though it appears unreasonable when measured by Dun & Bradstreet's own suggested standard.

## II.    DUN & BRADSTREET'S DEFERENCE DEMAND.

In reply Dun & Bradstreet is far less categorical in claiming a right to deferential review, now arguing "...the Court need not reach the issue." (Def.'s Reply at 5).  Nevertheless, with respect to the CTP claim, Dun & Bradstreet argues its late decision should be excused and it should be granted deference because it says it made a decision on plaintiffs' claim on the 91st day, that this represents substantial compliance with the applicable 90-day deadline, and that substantial compliance is all that is required. In support, Dun & Bradstreet cites Gilbertson v. AlliedSignal, Inc., 328 F.3d 625 (10th Cir. 2003) for the proposition that denial on the 91st day of a 90-day deadline does not warrant de novo review and specifically cites the Court's observation that it would not "require that every decision that comes on the 61st or 121st day following the claimant's notice of appeal must be subject to plenary review in federal court." Id. at 634-5.  This ignores, however, what Dun & Bradstreet actually did and what Gilbertson actually holds.  The deadline Dun & Bradstreet had to meet was a deadline to notify plaintiffs of its decision, not a deadline to make a decision. See Pls.' Br. at 13.  Plaintiffs received no

2

decision on their claim on the 91st day or even an explanation of when a decision might be received. Plaintiffs did not receive a decision or even an indication of when one might be received when their counsel subsequently wrote Dun & Bradstreet to inform the company it had allowed the deadline to pass – indeed counsel received no response at all. Finally, even though the claim was put into suit, Dun & Bradstreet still did not respond to plaintiffs' claim in any way until 30 days after suit was commenced when the company finally forwarded a letter dated June 17, 2003. Id.  Having utterly ignored plaintiffs until suit was filed, Dun & Bradstreet cannot claim to meet Gilbertson's substantial compliance test for inconsequential deadline violations. Because the deadline relates to communication not decision,  Dun & Bradstreet's violation was a substantial 71-day violation, not a de minimis 1-day violation. Moreover, Gilbertson holds that substantial compliance cannot exist absent meaningful dialogue between the plan and the claimant:

> [I]n the context of an ongoing, good faith exchange of information between the administrator and the claimant, inconsequential violations of the deadlines or other procedural irregularities would not entitle the claimant to de novo review.
>
> ...
>
> It follows then, that an administrator who fails to render a timely decision can only be in substantial compliance with ERISA's procedural requirements if there is an ongoing productive

3

> evidence-gathering process in which the claimant is kept
> reasonably well-informed as to the status of the claim and the
> kinds of information that will satisfy the administrator.

328 F.3d at 635-6.  Dun & Bradstreet received plaintiffs' CTP claim on

March 18, 2003.  Having communicated <u>nothing</u> to plaintiffs for 160 days

after receiving the claim and only then because a lawsuit had been filed Dun

& Bradstreet can hardly contend it was engaged in an ongoing dialogue, or

productive evidence gathering process concerning which it kept plaintiffs

reasonably well-informed.

Dun & Bradstreet's position also ignores the position of the Department

of Labor on this subject.  As recently described by the Eleventh Circuit:

> The Labor Department has taken the position that a denial
> occurring without the minimum procedural safeguards provided
> in the ERISA statutes and regulations should not be reviewed
> deferentially.
>
>                             ...
>
> [T]he Labor Department said that, where an ERISA plan
> administrator denies benefits without providing a timely and
> complete notice of decision comporting with ERISA
> requirements, "it is the Department's view that, in such a case,
> any decision      that may have been made by the plan with
> respect to the claim is not entitled to the deference that would be
> accorded to a decision based upon a full and fair review that
> comports with the requirements of (the ERISA statute)."

<u>Torres v. Pittson Company</u>, 346 F.3d 1324, 1333 n. 11 (11th Cir.

2003)(quoting Employee Retirement Income Security Act of 1974; Rules and

Regulations for Administration and Enforcement; Claims Procedure, 63 Fed.

Reg. 48,39,48,397 (Sept. 9, 1998); Id. at 65 Fed. Reg. 70246, 70255

(November 21, 2000).

Finally, Dun & Bradstreet's argument that plaintiffs should have treated

its silence as a claim denial and filed with it a request for review ignores the

language of the current regulations which eliminated the "deemed denied"

language of the former regulations and substituted for it the conclusion that

"a claimant shall be deemed to have exhausted the administrative remedies

available under the plan and shall be entitled to pursue any available

remedies...." Torres 346 F.3d at 1332 (citing 29 C.F.R. §2560.503-1(k)(1).

For all of these reasons, Dun & Bradstreet's failure to issue a timely decision

entitles plaintiffs to de novo review of their claim for CTP benefits.

The CTP claim was decided by "Gary Wiklund, Human Resources

Consultant" and not the body actually granted discretion under the CTP. Dun

& Bradstreet claims this should be excused because the plan provided that

fiduciary responsibilities can be delegated under the terms of the plan.

Because the SPD and the Plan have conflicting provisions on the name of the

body that is granted discretion, the SPD controls. Heidgard v. Olin Corp.,

906 F.2d 903 (2d Cir.1990). The SPD expressly makes a delegation of

authority from a board of directors subcommittee to the "Administrative Committee" and grants no authority for further delegation. Moreover, even if it could further delegate its authority, Dun & Bradstreet offers no evidence that the Administrative Committee actually did delegate its authority over claims adjudications to "Gary Wiklund, Human Resources Consultant". Because Dun & Bradstreet failed even to address plaintiffs' claims concerning the SPD delegation language and because it failed to show evidence the delegation it claims was even made, its argument for deference on this basis must fail.

Dun & Bradstreet seeks to excuse its failure to include a grant of discretion in its MRP SPD by noting that the SPD also refers plan participants to a separate 20-page "General Information About Your Benefits" document, a broad description of the benefits provided under a wide variety of company benefit programs.[1] Dun & Bradstreet claims this excuses its failure because this separate document contains a grant of discretion in interpreting all company plans. This ignores, however, that for claims procedures to be both enforceable and contained in a document separate from the SPD, ERISA

---

[1] Because this document is not referred to in the complaint, Dun & Bradstreet's use of it clearly exceeds what is permissible to use in a motion to dismiss.

specifically requires: (1) the document be a claim procedures document, and (2) that the SPD contain a statement that "the plan's claims procedures are furnished automatically, without charge, as a separate document." 29. C.F.R. § 2520.102-3(s). Because Dun & Bradstreet complied with neither requirement it cannot seek to enforce the terms of this separate document over a SPD that lacks the terms at issue.[2] The CTP SPD grant of deference amply illustrates that Dun & Bradstreet knew that language granting deference belongs in the SPD itself. Without complying with the applicable regulation with respect to the MRP SPD, it cannot excuse its failure to include a similar provision by pointing to a separate document.

Dun & Bradstreet ignores plaintiffs remaining arguments that deference is not granted where a claims decision involves issues of law or unambiguous plan language and ignores plaintiffs' claim that the impact of a conflict of interest on a claims decision cannot be resolved without discovery. Pls.' Br. at 15-20. Defendant notes that the conflict must be shown to have influenced the outcome of its decision without addressing plaintiffs' claimed right to discovery on this topic. Dun & Bradstreet leaves each of these contentions

---

[2] A separate claims procedures document makes the information easier to get when needed. Referring participants to a lengthy separate document generally about benefits has the opposite effect.

uncontested. As previously expressed, the conflict of interest issue alone

prevents a final determination concerning the standard of review and necessitates denial of Dun & Bradstreet's entire motion.

## III.  DUN & BRADSTREET'S INADEQUATE SUMMARY PLAN DESCRIPTION.

Dun & Bradstreet appears to claim that it is unimportant for a SPD to state what benefits the plan provides. According to Dun & Bradstreet, benefits are too complicated to be described in SPDs and if participants want to know what their benefits are they should just ask the company. This view makes a mockery of the SPD requirement. Dun & Bradstreet also mischaracterizes plaintiffs' claim as a demand for a chart when plaintiffs claim the law and the plan requires the SPD to include the plan's actuarial assumptions and that a chart (like the one the company maintained but without explanation left out of the SPD) illustrates how easily the company could have complied. The company further ignores that if the actuarial assumptions were stated in the SPD or the chart was used to illustrate them, plan participants could then use the SPD explanation of normal retirement benefit to calculate what they would receive if they retired early. Exhibit "B" (MRP SPD at 9).[3]

_____

[3] All exhibit references in this brief refer to exhibits filed with Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion To Dismiss.

With respect to the issue of prejudice caused by the inadequate SPD, plaintiffs are in the awkward position faced with a Rule 12 (b)(6) motion where they are unable to provide the Court with evidence with respect to how they were harmed by Dun & Bradstreet's failure to disclose and that because of the lack of disclosure plaintiffs were more likely to believe their benefits were far higher than they were.  Burke v. Kodak Retirement Income Plan, 336 F.3d 103, 114 (2d Cir. 2003)("Due to Kodak's omission, the Burkes were more likely to believe that there was no affidavit prerequisite for SIB."). They cannot now testify as to how it affected among other things attitudes and decisions with regard to the negotiations and ultimate sale of Dun & Bradstreet's RMS operations. However, Dun & Bradstreet must at this stage accept as true the allegations of the complaint which go far beyond the requirements of Burke:

> In accepting and continuing their employment at Dun & Bradstreet, plaintiffs reasonably relied upon the SPD disclosures and its omissions. Each plaintiff was materially harmed by the failure to disclose set forth above and by the application of undisclosed reduction rates for former employees seeking early retirement benefits.

Amended Complaint ¶92.  Accordingly, at a minimum, Dun & Bradstreet cannot base its motion to dismiss on the assumption of facts inconsistent with the allegations in its complaint.

## IV.    PLAINTIFF'S INTEREST RATE CLAIMS.

Regardless of the usefulness of expert testimony, Dun & Bradstreet has suggested that a suitable interest rate to support its claim that the 6.75% interest rate it uses is reasonable as a matter of law is the IRS Code §417 (e)(3) mandated rate of "the annual rate of interest on 30-year Treasury securities for the month before the date of distribution." Dun & Bradstreet ignores, however, that the rate it points to (roughly 5.13%) is substantially less than Dun & Bradstreet's rate. Contradicted by its own comparable rate, Dun & Bradstreet can hardly argue that further inquiry into appropriate rates and their role in plan calculations is unnecessary as a matter of law. Accordingly, its attempt to dismiss plaintiffs' interest rate claim should fail.

## V.    PLAINTIFFS' CLAIM FOR CTP SEVERANCE BENEFITS.

Too late, Dun & Bradstreet addresses the claim plaintiffs actually make with respect to the CTP Severance Benefits.  Apparently abandoning the Sale of Business rule rationale it employed when it denied plaintiffs benefits and

when it sought dismissal in its opening brief, D&B shifts to new ground.[4]

Dun & Bradstreet now claims that because Dun & Bradstreet was involved as the *seller* in the RMS sale that plaintiffs are ineligible for benefits.

Subsection 3 of the applicable language provides:

"Eligible Termination shall not include (3) a termination as a result of a sale (whether in whole or in part, of stock or assets), merger or other combination, spinoff, reorganization or liquidation, dissolution or other winding up or other similar transaction involving a Participating Company."

Exhibit "A" (CTP SPD at 2). Dun & Bradstreet claims that since by definition a Participating Company is a party to every transaction the company or its subsidiaries engage in, every transaction must be seen as "involving a Participating Company" and thus benefits are denied for every transaction the company engages in. This however renders the modifier "involving a Participating Company" superfluous since Dun & Bradstreet's meaning would

---

[4]    "Nonpayment of severance in the context of a sale is consistent with the purpose of the severance plan to provide assistance to employees whose employment terminates and who find themselves temporarily without compensation due to circumstances beyond their control. Assistance is not required where, as in the instant Claim, employees do not incur an interruption in their compensation after the sale of a business."

Op. Br. at 27 (quoting Exhibit "F" (letter dated June 17, 2003)). In opposition, plaintiffs debunked the rule and pointed out that unemployment was not a condition of the exception. Dun & Bradstreet is silent on both points in its reply.

have been better achieved if the modifier had been omitted. Consider if subsection 3 of the relevant SPD paragraph were written without it:

> Eligible Termination shall not include (3) a termination as a result of a sale (whether in whole or in part, of stock or assets), merger or other combination, spinoff, reorganization or liquidation, dissolution or other winding up or other similar transaction.

Without the language, the subsection would plainly mean what Dun & Bradstreet claims. But the modifying language is there, and to be given some meaning in the subsection it must limit the kinds of transactions where this exception applies to something less than all transactions – the meaning that would be achieved if the modifying language were *not* used. See e.g. Mertens v. Hewitt Associates, 508 U.S. 248, 257-8, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993)("equitable relief must mean *something* less than all relief" because to read it otherwise would "render the modifier ["equitable"] superfluous."). "The law of contract interpretation militates against interpreting a contract in a way that renders a provision superfluous." United Illuminating Co. v. Wisvest-Connecticut, L.L.C., 259 Conn. 665, 674 (2002)(citing, Kelly v. Figueiredo, 223 Conn. 31, 36 (1992).  The only reasonable way to give the modifying words meaning is to assume they were used not included uselessly, but were intended to indicate a transaction that involves a Participating

12

Company on the receiving end of the transaction.

Dun & Bradstreet claims if the company meant sales to or transactions between Participating Companies it could easily have said "*to* a Participating Company" or "*between* Participating Companies" instead of "involving a Participating Company".[5] If Dun & Bradstreet had chosen to place easy to understand (but unnecessary) words into the CTP SPD to exclude *any* transaction "by" a Participating Company it could have simply employed the words "by a participating company" in place of the words "involving a participating company". If that was the company's intent, however, placing these words into the text only highlights that the words are superfluous and deserve omission.[6]

Plaintiffs' view of the language can be seen as especially rational against the backdrop of the complaint, which alleges the plan was adopted

---

[5] Dun & Bradstreet shows the company's familiarity with the use of the words "to" and "by" but not "between".

[6] If the Court finds that the company failed to use easy to understand words, Dun & Bradstreet not participants must bear the consequences. Layou v. Xerox Corp., 238 F.3d 205, 209-10 (2d Cir. 2001)(participants must be provided a "thorough and easy to understand summary");Moriarity v. United Technologies Corp., 947 F.Supp. 43, 52 (D. Conn. 1996)("It is the employer, not the employee who must bear the cost of a poorly drafted SPD"). The CTP SPD could also have made the subsection 3 words easier to understand by complying with the ERISA requirement that it use a clarifying example. Layou, 238 F.3d at 209-210 (citing 29 C.F.R. §2420.102-3(l)).

following the company's acquisition of several functionally independent companies. Complaint at ¶61 (Donnelly, Moody's, etc). It is logical to assume that having spun the companies in, Dun & Bradstreet would certainly not want to pay these companies' employees severance pay if they were spun out again (exactly what happened). See Complaint at ¶77-78. Moreover, as previously pointed out, it is logical to assume that regardless whether one of the enumerated transactions occurred, the company would want to be free to transfer employees among Participating Companies without paying them severance and that is why subsection 4 of the applicable plan language excludes from severance *any* terminations that result in a "comparable offer" at a Participating Company. Exhibit "A" (CTP SPD at 2).[7] Unlike under the facts assumed for plaintiffs' CTP claim, in both these instances the

---

[7] "Eligible Termination shall not include...(4) any terminations where an offer of employment is made to the Eligible Employee of a comparable position at a Participating Company." The modifier "at a Participating Company" functions much like "involving a Participating Company" in that it limits what goes before it to a specific class of terminations *from* Participating Companies – in section 4's case it means the subset where the terminated employee is offered a comparable position at a Participating Company. If in the prior section the words "involving a Participating Company" were necessary to indicate that a Participating Company would be the *seller* in a sale transaction (instead of that being obviously the case) the same logic should have held true for section 4 which then should have included language indicating that the section applied to any terminations "from a Participating Company".... Such language would have been obviously superfluous and was thus omitted.

fundamental relationship between the employee and his immediate employer remains unchanged. There is no reason in such an instance for Dun & Bradstreet to view the severance as a parting of the ways meriting a severance payment. Plaintiffs' explanation of the plan's purpose and the function of its exceptions contrasts with Dun & Bradstreet's explanation of its purpose as a kind of unemployment compensation and its exceptions as barring benefits for those who continue employment. While perhaps a logical explanation of some severance programs, plaintiffs have proven that this version of the plan's function is untenable under the plan language, and plaintiffs' proof is notably un-rebutted in Dun & Bradstreet's reply brief. Pls.' Br. at 49-51.

Rather than defend its explanation of the plan's purpose or attack plaintiffs' explanation of its purpose, the company argues that if plaintiffs were entitled to benefits under subsection 3, subsection 3 would be redundant because the sale of a business to a Participating Company would already be covered by the "comparable offer" exclusion in subsection 4. This would be true however only if subsection 3 applied exclusively to sales of business where comparable offers are made. Indeed, to support this argument, Dun & Bradstreet sneaks this assumption into a parenthetical: "(a transaction [the sale of a business] that almost invariably produces comparable job offers from the

15

acquiring company)." Def. Br. at 2-3. Plainly, a sale (or other enumerated transaction) not involving a comparable offer is covered by subsection 3 but not subsection 4. Equally clear, a termination not involving one of the enumerated transactions but involving a comparable offer at a Participating Company is covered under subsection 4 but not subsection 3. Under plaintiffs' view, the two provisions have separate purposes and separate effects.[8]

Plaintiffs' CTP arguments have been consistent and rational. Plaintiffs have demonstrated that Dun & Bradstreet's CTP argument depends on rendering language of the plan superfluous. Dun & Bradstreet's attack on the rationality of plaintiffs' interpretation fails because it depends upon reading extra language into the plan. It follows the company's failure to render a timely decision on plaintiffs' claims. It is also accompanied by Dun & Bradstreet's casual abandonment of one plan interpretation argument repeatedly made (the Sale of Business claim) and the adoption of a second in a reply brief. Consistent patterns of ERISA plan interpretation have been held to be "significant evidence" that a plan administrator acted reasonably.

---

[8] Moreover, if the sale at issue here were covered under Subsection 4 and not subject to Subsection 3, plaintiffs would have an additional argument because they were not offered comparable positions, their benefits were significantly reduced. Complaint ¶83-84.

<u>Hensley v. Northwest Permanente P.C. Ret. Plan & Trust</u>, 258 F.3d 986, 1002 (9th Cir. 2001).   The opposite must be true as well. Inconsistent interpretations are surely significant evidence that a plan administrator acted *unreasonably*.

Under the de novo review standard where a plan participant has proposed a reasonable language interpretation, the burden shifts to the plan administrator to prove it unreasonable; if the administrator fails to carry this burden the Court is correct to adopt the plan participant's version.  <u>Kosakow v. New Rochelle Radiology Assocs., P.C.</u>, 274 F.3d 706, 739-740 (2d Cir. 2001). Plaintiffs respectfully represent that Dun & Bradstreet has failed to rebut plaintiffs' rational interpretation or present one of its own, leaving the Court free to adopt plaintiffs' understanding as the unambiguous meaning of the subsection.[9]

## VI.    CONCLUSION

In its reply brief Dun & Bradstreet asks the Court for a number of new

---

[9]On the other hand, if the Court finds the language sufficiently ambiguous discovery concerning past practices, intent, industry custom and usage and plan participants' interpretations should be permitted.<u>Taylor v. Continental Group Change in Control Severance Pay Plan</u>, 933 F.2d 1227, 1232 (3d Cir. 1991). If this inquiry proves fruitless the Court should construe the plan against its drafter. <u>Id</u>. at 1233.

and inappropriate holdings to help it twist this claim into one appropriate for Rule 12 (b)(6) dismissal. For all the reasons stated above, plaintiffs respectfully represent that the company should not be given the extraordinary facility it seeks and that its motion should be denied.

THE PLAINTIFFS

BY _____

Thomas G. Moukawsher (ct08940)
Ian. O. Smith (ct24135)
Moukawsher & Walsh, LLC
21 Oak Street; Suite 100
Hartford, CT 06106
(860) 278-7000

THEIR ATTORNEYS

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was mailed, postage prepaid, on this 15th day of December, 2003, to:

Zachary Osborne, Esq.
Paul, Hastings, Janofsky & Walker, LLP
1055 Washington Boulevard
Stamford, CT 06901-2217

_____

Thomas G. Moukawsher