UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARY McCARTHY, CLAYTON BOROWSKI, individually and on behalf of others similarly situated, and individually, GAIL ADAMS, DONALD BAKERT, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE DUN & BRADSTREET CORPORATION, THE DUN & BRADSTREET CORPORATION RETIREMENT ACCOUNT, and THE DUN & BRADSTREET CAREER TRANSITION PLAN, <br><br> Defendants. | CIVIL ACTION NO. 3:03 CV 0431 (SRU) <br><br><br> DECEMBER 23, 2003 |

**DEFENDANTS' OPPOSITION TO PLAINTIFFS'**
**MOTION FOR PERMISSION TO FILE SUR-REPLY BRIEF**

The Dun & Bradstreet Corporation, The Dun & Bradstreet Corporation Retirement Account, and The Dun & Bradstreet Career Transition Plan ("Defendants"), hereby object to and oppose Plaintiffs' motion to file a sur-reply brief. As set forth in detail below, the proposed sur-reply should not be considered by this Court because Defendants did not raise any "new" arguments in their Reply Memorandum and Plaintiffs' claim to the contrary is simply a

transparent excuse for Plaintiffs to present their own new arguments while affording Defendants' no opportunity to respond.[1]

    A.    <u>The Defendants have consistently argued that, under any standard of review, the Plan Administrator correctly interpreted "involving a participating company" to actually mean "involving a participating company."</u>

The Defendants initial brief clearly argued that Plaintiffs' Career Transition Plan ("CTP") Claim (Count One) is frivolous and subject to dismissal, under any standard of review, for the simple reason that the Plan Administrator correctly interpreted the unambiguous phrase "*involving* a participating company" to actually mean "*involving* a participating company." Therefore, the most egregious example of an unsupported attempt to advance new arguments is Plaintiffs' contention that Defendants are allegedly (i) "abandoning the Sale of Business rule rationale it employed when it denied plaintiffs benefits and when it sought dismissal in its opening brief," and (ii) "shift[ing] to new ground" with respect to the applicable Career Transition Plan ("CTP") exclusion. Pls.' Sur-Reply at 10-11. First, Defendants have never contended that the so-called "Sale of Business rule rationale" represented a stand-alone basis for denying severance benefits to Plaintiffs. Rather, the Plan Administrator and Defendants have

---

[1] For example, Plaintiffs continue to raise new and meritless challenges to Defendants' argument in favor of a deferential standard of review. Plaintiffs contend that the Court cannot consider the "General Information About Your Benefits" booklet, which sets forth the claims procedure for the Master Retirement Plan and other plans and grants discretionary authority to the plan administrator, because "it was not referred to in the complaint." Pls.' Sur-Reply at 6, n. 1. As previously discussed, however, the defendant "may introduce pertinent [documents] as part of his motion attacking the pleadings if the plaintiff has failed to either attach to the complaint or incorporate by reference documents upon which [he] relies in the complaint." 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1327, at 762-63 (1990) [internal citations omitted]. Defs.' Mem. at 3. Furthermore, deferential review of the Master Retirement Plan claim is appropriate because the claims procedure booklet was expressly incorporated by reference in the SPD and was automatically provided to Plaintiffs, in substantial compliance with 29 C.F.R. 2520.102-3(s) ("The plan's claims procedures may be furnished as a separate document that accompanies the plan's SPD, provided that . . . the SPD contains a statement that the plan's claims procedures are furnished automatically, without charge, as a separate document."). Notably, Plaintiffs don't contend that they did not automatically receive this booklet free of charge, but once again try to evade a deferential review by focusing on alleged hyper-technical violations. The Court should reject Plaintiffs' efforts and follow the prescribed deferential standard of review.

consistently stated that Plaintiffs were not eligible for severance benefits under the express terms of the plan's unambiguous sale-of-business exclusion. Plaintiffs' post-sale, continued employment with the acquiring company, RMS Corporation, was noted simply to underscore the logical consistency and equity of not providing severance benefits in those circumstances. <u>See</u> Ex. J to Defs.' Mem. ("An 'Eligible Termination' does not include . . . a termination that results from a 'sale (whether in whole or in part, of stock or assets) . . . involving a Participating Company.' Nonpayment of severance in the context of a sale is *consistent* with the purpose of the severance plan to provide assistance to employees whose employment terminates and who find themselves temporarily without compensation due to circumstances beyond their control."); Defs.' Mem. at 27 –28 ("Although the RMS division jobs at Dun & Bradstreet were certainly eliminated, they were eliminated as a result of the division's sale to RMS Corporation [the sale-of-business exclusion]. *Furthermore*, Plaintiffs' did not suffer a loss of income because they were immediately hired by the purchasing company.") (emphases added).

> B. <u>The Defendants' fundamental argument that Plaintiffs are ineligible for CTP benefits because Dun & Bradstreet was undisputedly "involved" in the RMS sale as the seller is not new. It has been Defendants' position from day one.</u>

Plaintiffs further attempt to justify their sur-reply by contending that, in a "shift[ ] to new ground . . . Dun & Bradstreet now claims that because Dun & Bradstreet was involved as the seller in the RMS sale that plaintiffs are ineligible for benefits." Pls.' Mem. at 11. Plaintiffs cannot seriously claim that this is a new argument or that anyone has been confused about who was the seller or whether Dun & Bradstreet was "involved" in the sale. As discussed previously, both the Plan Administrator's denial letter and Defendants' Motion to Dismiss discussed this very point in clear and extensive detail. <u>See</u> Ex. J to Defs.' Mem. at 1; Defs.' Mem. at 2, 6-9, 26-28. Indeed, the Amended Complaint itself recognizes that Dun & Bradstreet was involved as the seller. Amend. Compl. ¶ 80 ("Dun & Bradstreet announced that it would sell its RMS

-3-

operations to the managers of these operations."); ¶ 85 (it was "Dun & Bradstreet's decision to sell the RMS operations").

Faced with clear plan language that forecloses their CTP claim as a matter of law, Plaintiffs' new sur-reply argument asks the Court to re-write the CTP so that the broad severance disqualification for sale-related terminations applies only to a sale <u>from</u> a Participating Company <u>to</u> another Participating Company. Blithely ignoring that the plan clearly does not say this, Plaintiffs' contend that such a construction is necessary because, otherwise, the "involving a Participating Company" language would be "superfluous," since there is allegedly no situation in which a termination could result from a sale that did not involve a Participating Company either as the seller or buyer.

Plaintiffs are wrong. There are, in fact, many plausible situations where employees may be terminated as the result of a sale that did not involve a Participating Company as either the buyer or the seller. For example, if one of Dun & Bradstreet's largest clients sold all of its assets and went out of business, Dun & Bradstreet could have to lay off hundreds of employees. Without the limiting effects of the term "involving a Participating Company," those employees would arguably not be entitled to any severance benefits, a result that Dun & Bradstreet plainly did not intend. The term "involving a Participating Company" was thus logically intended to limit the exclusion to sales in which a Participating Company was the buyer or seller, and is

therefore not superfluous. That is, in fact, the *only* reading that makes sense and the *only* reading that gives effect to all of the plan provisions.[2]

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Defendants' Memorandum and Reply Brief In Support Of Their Motion To Dismiss With Prejudice, Defendants respectfully request that the Court DENY Plaintiffs' Motion for Permission to File Sur-Reply Brief, GRANT Defendants' Motion to Dismiss, and DISMISS WITH PREJUDICE Counts One, Three and Four of the Amended Complaint.

DATED: December 23, 2003

Respectfully submitted,
THE DEFENDANTS
THE DUN & BRADSTREET CORPORATION,
THE DUN & BRADSTREET CORPORATION
RETIREMENT ACCOUNT, and
THE DUN & BRADSTREET CAREER
TRANSITION PLAN

By: _____
Patrick W. Shea (ct07071)
Zachary R. Osborne (ct19988)
Paul, Hastings, Janofsky & Walker, LLP
1055 Washington Boulevard
Stamford, CT 06901-2217
Telephone: (203) 961-7400
Facsimile: (203) 359-3031
patrickshea@paulhastings.com
Counsel for the Defendants

---

[2] Plaintiffs' sur-reply also wrongly claims that Defendants have suggested that the variable rate imposed by Internal Revenue Code Section 417(e) is the standard for the determining reasonableness of the Plan's 6.75% interest rate. Defendants cited the Section 417(e) variable rate as one of a number of benchmarks for determining appropriate actuarial interest rate assumptions, but they did so primarily to point out that the variable rate mandated by Congress in that section only applies to payments made as a lump sum, not to the long-term stream of early retirement payments at issue here. If Congress wanted to require qualified plans to use variable rates for early retirement payments, it could have and would have done so directly through legislation. Therefore, Plaintiffs have no basis for claiming that the Section 417(e) rate is the sole benchmark for determining the reasonableness of the 6.75% interest rate, or for claiming that this rate does not fall well within the range of reasonable interest rates.

## CERTIFICATE OF SERVICE

This is to certify that on this 23rd day of December, 2003, a copy of the foregoing Defendants' Opposition to Plaintiffs' Motion for Permission to File Sur-Reply Brief was served by overnight express mail on the following counsel of record:

>Thomas G. Moukawsher, Esq.
>Moukawsher & Walsh, LLC
>21 Oak Street, Suite 100
>Hartford, Connecticut 06106

_____
Patrick W. Shea

STM/265523.2