# EXHIBIT C



# WRITTEN CONSENT OF THE
## MANAGEMENT EMPLOYEE BENEFITS COMMITTEE
## OF
## THE DUN & BRADSTREET CORPORATION

The undersigned members of the Management Employee Benefits Committee (the Committee ) of The Dun & Bradstreet Corporation, acting without a meeting in accordance with the Committee's established rules of procedure, do hereby authorize and consent, to the following preamble and resolutions:

WHEREAS, the Committee has duly considered the claims set forth in the November 12, 2002 letter of Thomas G. Moukawsher, Esq. on behalf of 48 former employees of the Receivables Management Services division of Dun & Bradstreet, Inc. under the Retirement Account of The Dun & Bradstreet Corporation;

NOW, THEREFORE, IT IS RESOLVED that acting as a majority of the Management Employee Benefits Committee we vote to deny the claims set forth in Mr. Moukawsher's November 12, 2002 letter for the reasons set forth in letter attached hereto.

Date: June 27, 2003

_____          _____
Patricia A. Clifford                David J. Slobodien

_____
Mary Jane Raymond.



June 27, 2003

**<u>Via Certified Mail</u>**
**<u>Return Receipt Requested</u>**
**<u>And Via Facsimile</u>**

Thomas Moukawsher
Moukawsher & Walsh, L.L.C.
328 Mitchell Street
Groton, Connecticut 06340

Re: Appeal of Claim Brought by RMS Corporation Employees

Dear Mr. Moukawsher,

The Management Employee Benefits Committee for the Dun & Bradstreet Master Retirement Plan, and the Dun & Bradstreet health and welfare plans (the "Plans") has reviewed your claim letter of November 12, 2002 (the "Claim"), as well as the response to the letter and your request for an appeal dated February 28, 2003 (the "Appeal").

You represent 48 former employees ("Claimants") of The Dun & Bradstreet Corporation ("D&B") who are currently employed by Receivables Management Services Corporation ("RMS Corporation"). RMS Corporation was established in May, 2001, when D&B sold its receivables management business ("RMS Business") to a team of senior management employees. RMS Corporation is not owned by D&B.

The Claim asserts a) that Claimants are common law employees of D&B; b) that D&B terminated their employment in connection with the sale of the RMS Business to prevent Claimants from becoming entitled to certain early retirement subsidies and c) that the plan terms regarding deferred vested reduction factors set forth in the plan cannot be enforced because they were not disclosed in the summary plan description ("SPD") for the Master Retirement Plan. The Appeal seeks the application of the subsidized early retirement factors for Claimants commencing benefits under the Master Retirement Plan before age 65, medical and dental coverage at early retirement at the same premium rates

claimants were charged while employed by D&B and reinstatement of vested and unvested D&B stock options and shares in D&B held in the employee stock purchase plan.

Common Law Employees

To effect the sale of the RMS Business to RMS Corporation, employees working in D&B's receivables management business were terminated from employment with D&B on the closing date of the sale with the understanding that they would be offered employment with RMS Corporation. All of the affected employees were, in fact, offered employment by RMS Corporation.

As a result of the sale, D&B is no longer engaged in the receivables management business. Although D&B licenses its name to RMS Corporation and provides access to the D&B databases under separate agreements with RMS Corporation, D&B exercises no control over the day to day operations of RMS Corporation or its employees. RMS Corporation is free to procure its clients with or without the assistance of D&B's marketing and to hire and terminate employees as its business needs require.

Because Claimants are employed by RMS Corporation, your reliance on *Nationwide Mutual Insurance Company, et al., v. Robert T. Darden, 503 U.S. 318 (1992)* is not relevant. *Darden* addressed whether Nationwide Insurance Company controlled the manner and means by which insurance agents with whom Nationwide had independent contractor agreements performed their work. Because RMS Corporation hired Claimants, D&B has no control over Claimants' jobs.

As stated in the February 6, 2002 letter to you, Claimants have not asserted that they are independent contractors of D&B. In the absence of any such allegations, the question is not whether independent contractors are in substance common law employees of D&B; the issue is whose employees are they. Since RMS Corporation hired Claimants, pays Claimants and supervises Claimants and because RMS Corporation also decides who to discipline or to terminate from their employment, it is RMS Corporation and not D&B that employs the Claimants.

Although the Claim and Appeal stress that Claimants job functions did not change, the mere continuation of the Claimants' jobs in the same manner as they were performed before the sale is irrelevant. In any sale of a business, the former employees of seller can be expected to continue in the same jobs they had before the sale; such continuation is at the heart of a transfer of business operations to the buyer. Continuation of job functions does not support the conclusion that the seller remains the employer of the former employees.

Based on the foregoing, the Committee is unable to find sufficient facts to support a conclusion that the employees of RMS Corporation are common law employees of D&B. Accordingly the request to reinstate the Claimants under D&B's benefit programs based on a common law theory are denied.

ERISA 510 Claim

The U.S. Circuit Courts of Appeals are split on whether Claimants must exhaust their administrative remedies before bringing a suit under Section 510 of ERISA. Several courts hold that exhaustion of administrative remedies is not required. See, for example, *Zipf v. American Telephone and Telegraph Co.*, 799 F.2d 889 (3rd Cir. 1986). The Seventh and Eleventh U.S. Circuit Courts of Appeal hold that exhaustion of administrative remedies under ERISA is required. *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647 (7th Cir. 1996) (exhaustion is generally required); *Mason v. Continental Group, Inc.*, 763 F.2d 1219 (11th Cir. 1985); cert. denied, 474 U.S. 1087 (1986).

Given the split among the Circuit Courts, and because the remedies sought by Claimants under Section 510 of ERISA could be construed as having attributes of a claim for the denial of benefits, the Committee has decided to address the substance of the Claim under the D&B plan claims procedure.

Claimants contend that D&B's purpose in terminating their employment was motivated by an improper purpose, evidenced by statements in announcements of the sale to the effect that the sale would increase D&B' financial flexibility and enhance shareholder value. The Committee has reviewed *Gitlitz v. Compagnie Nationale Air France*, 129 F.3d 554 (11th Cir. 1997), cited by Claimants. However, *Gitlitz* does not support the Claim. *Gitlitz* states that Claimants must introduce evidence suggesting that interference with ERISA rights was a motivating factor. "The plaintiff, however, *cannot establish a prima facie case merely by showing that, as a result of the termination, he was deprived of the opportunity to accrue more benefits.*" The Court added that

> measures designed to reduce costs in general that also result in an incidental reduction in benefit expenses do not suggest discriminatory intent. Instead the employee must introduce evidence suggesting that the employee's decision *was directed at ERISA rights in particular.* [Emphasis added.]

When reviewed in light of these principles, Claimants' contentions fall well short of an ERISA Section 510 claim. Claimants' quotations which they attribute to D&B representatives reveal, at best, an intention to make D&B more profitable and to increase shareholder value. None of the statements make reference to targeting benefits. While future benefit cost savings would be expected in the case of a sale of a business as large as D&B's receivables management division, they are incidental to the larger and more immediate objective of reorganizing D&B's business lines to enhance shareholder value as reflected in the statements.

Because Claimants have not produced any evidence that the sale to RMS Corporation was directed at ERISA rights in particular, the Committee has determined that the Section 510 claim has no merit and that Claimants will not be entitled to reinstatement in the D&B plans.

Disclosure of Reduction Factors

The last theory for recovery of benefits is based on the contention that D&B, by failing to disclose both sets of reduction factors in the SPD, is bound to use the subsidized reduction factors. For the reasons set forth below, the Committee also rejects this claim.

The SPD is required to set forth a summary of the important plan terms and conditions. In drafting the SPD, the Committee hires outside consultants who are experts in the legal requirements for drafting and disseminating the SPDs.

The plan document and SPD for the Master Retirement Plan describe two types of benefits for employees who terminate from D&B prior to normal retirement age (age 65). Those benefits consist of a) deferred vested benefits and b) early retirement benefits. Participants who terminate employment prior to attaining age 55 with the required years of service are entitled to commence their benefits at any time after attaining age 55, but if benefits begin prior to age 65, the monthly payments are reduced in order to reflect the longer period of time over which benefits are expected to be paid. The reductions are based on actuarial assumptions set forth in the Master Retirement Plan documents.

Participants who terminate employment with D&B on or after age 55 and who have been credited with specified amounts of service may be entitled to have their monthly benefit calculated using a subsidized early retirement reduction table. In the case of such early retirements, the participants receive a monthly benefit that is greater than the actuarially reduced benefits available to deferred vested participants.

The SPD describes the requirements for eligibility for deferred vested as well as the more favorable subsidized early retirement benefits under the Master Retirement Plan. The Summary Plan Description for the Master Retirement Plan effective January 1, 1994 states as follows (at p. 17):

> If you terminate employment after becoming vested, you will be entitled to receive a deferred vested retirement benefit from the Plan. Your deferred benefit is calculated in the same way as a normal retirement benefit assuming benefit payments begin at age 65.
>
> If you choose, the payment of your deferred vested benefit can begin as early as age 55, but the amount of the benefit will be reduced actuarially, resulting in a lower Plan benefit than if the reduction table in the "Early Retirement Benefit" section was used.

It is not necessary for the SPD to set forth the actuarial tables in full, only to put Claimants "on notice of the principles under which plan payouts are determined," *Stamper v. Total Petroleum Inc. Retirement Plan*, 188 F.3d 1233, 1240 (10th Cir. 1999).

Claimants also cannot cite the absence of the actuarial equivalent factors from the SPD as a justification for applying the subsidized early retirement table. The SPD clearly states

the eligibility rules for early retirement. Had claimants read the eligibility requirements for subsidized early retirement benefits, they would have been put on notice that they did not meet these requirements as of the date of the sale to RMS Corporation.

Even if Claimants were not familiar with all aspects of the SPD, D&B could not be said to have concealed the reduction factors either before or after the sale. The attachment to the Claim, a letter from the Plan's actuaries, could have been obtained by any participant in the Master Retirement Plan before or after the sale to RMS Corporation. In addition, any RMS Corporation employee, before or after the sale to RMS Corporation could have contacted the plan's claims processor through the plan's automated voice response system and requested a calculation of their monthly retirement benefit.

Because the Committee finds that the disclosure of the reduction factor table is not a requirement of the SPD rules and because current benefit information was made available to participants at all times before and after the sale of assets to RMS Corporation, the Committee denies Claimant's request for application of the early retirement subsidies to their benefits.

Stock-Based Plans

The Committee does not have authority to resolve disputes arising under the D&B Employee Stock Purchase Plan or the D&B Stock Option Plan (collectively, the "Stock Plans"). The Employee Stock Purchase plan is administered by a Committee appointed by the Board of Directors of D&B. The Stock Option Plan is administered by members of the Compensation Committee of the Board of Directors of D&B. The Committee also notes that the Stock Plans are not governed by the Employee Retirement Income Security Act of 1974 ("ERISA") and therefore ERISA does not control the resolution of any disputes regarding participation in the Stock Plans.

Conclusion

The claim for common law employee status is denied on the grounds that Claimants are, in fact, employed by RMS Corporation.

The claim for interference with future benefit accruals is denied on the grounds that specific intent to interfere with ERISA rights has not been supported by the facts presented. Claimants have not demonstrated that a sale of an entire operating division is a pretext for an attempt to deprive Claimants of retirement benefits.

The third claim for failure to disclose is denied because the SPD language is sufficiently clear to place Claimants on notice as to what their benefits would be if they terminated prior to early retirement age. D&B also provides an interactive voice response service which participants may call at any time to ascertain their present benefit entitlements. The Committee therefore believes the SPD and other resources provided by D&B are sufficient to apprise Claimants of any entitlement they may have to an early retirement subsidy.

Please let us know if you wish for us to refer this claim to the Appeals Committee for final review.

MANAGEMENT EMPLOYEE BENEFITS COMMITTEE

By: _____
     David J. Slobodien, a member