# EXHIBIT F

# McCarthy

## versus

# Dun & Bradstreet

Prepared by:

Edward W. Brown, FSA, EA
Principal
Milliman
4 Corporate Plaza
250 Washington Avenue Extension
Albany, New York 12203-5401

August 4, 2004

McCarthy vs. Dun & Bradstreet

**Scope**

This report will render an opinion as to the following:

1. Is the D&B Master Retirement Plan's 6.75% interest rate used to reduce monthly early retirement payments to former employees consistent with accepted actuarial standards?

2. Is it consistent with current industry practice?

3. To what extent, if at all, was it reasonable under the circumstances of this particular case?

**Biographical Information**

Edward W. Brown is an expert with respect to the selection of interest rates for determining actuarial equivalence. My experience and education includes:

1. I am a Fellow of the Society of Actuaries, a Member of the American Academy of Actuaries, a Member of the Conference of Consulting Actuaries, and an Enrolled Actuary under ERISA.

2. I began my actuarial career in 1967 and have been consulting on pension plans since 1972.

3. From 1972 to 1984, I provided actuarial services to The New York State and Local Retirement Systems. From 1975 to 1984, I was chief actuary for the Systems. In this capacity I was responsible for the actuarial soundness of the Systems including recommending appropriate actuarial assumptions for determining actuarial equivalences and actuarial present values.

4. From 1984 to 1991 I was a principal and consulting actuary at Altman & Brown, Inc. which became a wholly owned subsidiary of Fleet Bank in 1985. At Altman & Brown, I provided clients with actuarial services on the actuarial and design aspects of all type of retirement plans, including defined benefit retirement plans.

5. In 1991, the Fleet subsidiary was sold to Milliman, Inc. I became a Principal and Manager of the Albany Office.

6. Milliman is one of the 10 largest actuarial consulting firms in the United States. It employs over 1,800 employees, including over 300 actuaries, in 30 offices in the United States.

7. I personally consult with over 50 clients and oversee the work on over 200 additional clients.

**McCarthy vs. Dun & Bradstreet**

8. My client consulting includes plan design, actuarial valuation, benefit certifications, and choosing actuarial assumptions for determining actuarial equivalence.

9. I have occasionally served as an expert witness in cases involving actuarial matters, such as dividing pension benefits in matrimonial cases, loss of income in disability cases, and common practices used to administer retirement plans.

10. My Milliman bio is attached to this report.

11. I testified as an Expert Witness in the case Chenango County Chapter NYSARC – Beverly J. Rothwell vs. CWS, New York State Supreme Court. Our report was dated March 31, 2004.

12. I have not authored any formal publications in the last 10 years.

13. Milliman is being compensated on an hourly basis for services rendered in connection with this case. My billing rate is $450 per hour.

**Documents**

In formulating this opinion, I relied on my professional experience and the following documents:

1. Defendant's motion to dismiss with prejudice, dated September 18, 2003.

2. Amended Complaint, dated June 30, 2003.

3. Affidavit of Zachary R. Osborne, dated September 18, 2003.

   Exhibit A: Master Retirement Plan of the Dun & Bradstreet Corporation, dated June 1994.

   Exhibit B: The Dun & Bradstreet Corporation, Your Retirement Plan, dated as in effect August 1, 1991.

   Exhibit C: Letter to Thomas Moukawsher from the D&B Management Employee Benefits Committee (Re: Appeal of Claim Brought by RMS Corporation Employees), dated June 27, 2003.

   Exhibit D: The Dun & Bradstreet Career Transition Plan (as in effect as of September 30, 2000).

   Exhibit E: Letter from Dun & Bradstreet Benefits Center at Fidelity to Lawrence Eder, dated July 16, 2001.

   Exhibit F: Letter to Dun & Bradstreet, Management Employee Benefits Committee from Thomas G. Moukawsher, dated November 12, 2002.

    Exhibit G: Letter to Thomas G. Moukawsher from James M. Gecker dated February 6, 2003.

    Exhibit H: Letter to James M. Gecker from Thomas G. Moukawsher dated February 28, 2003.

    Exhibit I: Letter to James M. Gecker from Thomas G. Moukawsher dated March 12, 2003.

    Exhibit J: Letter to Thomas G. Moukawsher from Gary Wiklund dated June 17, 2003.

    Exhibit K: IRS determination letter dated July 20, 1995 on the Master Retirement Plan of the Dun & Bradstreet Corporation.

4.   Plaintiffs Memorandum of Law in Opposition to defendant's motion to dismiss, dated November 7, 2003.

    Exhibit A: The Dun & Bradstreet Career Transition Plan Summary Plan Description.

    Exhibit B: The Dun & Bradstreet Corporation, Your Retirement Plan.

    Exhibit C: Certified mail receipt.

    Exhibit D: Letter to Thomas G. Moukawsher from James M. Gecker dated April 10, 2003.

    Exhibit E: Letter to James M. Gecker from Thomas G. Moukawsher dated June 30, 2003.

    Exhibit F: Fax cover sheet to Tom Moukawsher and Sandra Lalli from Samuel T. Brkich dated August 25, 2003.

    Exhibit G: Letter to Thomas G. Moukawsher from Gary Wiklund dated June 17, 2003.

    Exhibit H: Letter to Thomas Moukawsher from David J. Slobodien dated June 27, 2003.

    Exhibit I: The Dun & Bradstreet Career Transition Plan (as in effect as of September 30, 2000).

    Exhibit J: Master Retirement of the Dun & Bradstreet Corporation dated June 1994.

McCarthy vs. Dun & Bradstreet

Exhibit K: Letter to James M. Gecker from Thomas G. Moukawsher dated November 7, 2003.

5. Defendants Reply Brief in Further Support of their motion to dismiss with prejudice, dated December 9, 2003.

6. The Dun & Bradstreet Corporation – General Information About Your Benefits.

7. Plaintiff's Sur-reply Brief in Opposition to Defendant's Motion to dismiss, dated December 15, 2003.

8. Defendants' Opposition to Plaintiffs' motion for Permission to file Sur-reply brief.

9. Plaintiff's Expect Disclosure dated May 3, 2004 and attached report.

10. Deposition of Claude Poulin, dated May 27, 2004.

**Is the Dun & Bradstreet Retirement Plan's 6.75% interest rate used to reduce monthly early retirement payments to former employees consistent with accepted actuarial standards?**

1. In order to be consistent with accepted actuarial standards, the interest rate used to determine early retirement benefits must be reasonable and in compliance with ERISA and the Internal Revenue Code (IRC).

2. Neither the IRS or any actuarial organization has published guidance on what constitutes a reasonable interest rate for determining early retirement payments.

3. The Internal Revenue Service has issued a determination letter, dated July 20, 1995 on the Master Retirement Plan of the Dun & Bradstreet Corporation. The IRS determination process involves the review of the plan provision including the methods and formulas used for determining benefits. Thus, a review of the early retirement benefit provisions would have been included in the IRS review. There was no indication that the 6.75% interest rate was unacceptable or unreasonable.

4. Accepted actuarial standards require that the methods and assumptions used to determine actuarial equivalence be reasonable. Actuarial equivalent means that two benefits have an approximate equal value based on a given set of actuarial assumptions.

5. In determining an appropriate interest rate, the actuary considers the value of the plan liabilities for all participants covered by the plan. This means that, on average, the plan liabilities should be the same regardless of which of the alternate benefits a participant elects. Determining liabilities requires an actuary to discount to present value the future benefits that must be paid by the plan using an interest rate that is based on an assumed rate of return for plan assets. In establishing an appropriate interest rate, an actuary will typically consider the mix of plan assets and the returns historically enjoyed by pension plan portfolios. The Dun & Bradstreet's 6.75% interest rate fits comfortably within the range of returns enjoyed by such assets.

McCarthy vs. Dun & Bradstreet

6. Of course, for a specific participant, the value of one benefit versus another may be greater because of the participant's unique circumstances. For example, a participant may be an expert investor and expect to earn more than the plan's investment manager.

7. In choosing an appropriate interest assumption, the actuary must determine the average investment return that the plan may reasonably expect to earn over the long term. The fact that some participants may be able to earn more or less than the plan return may play a role in an individual participant's decision as to which benefit to elect, but does not affect the selection of an appropriate interest rate for purposes of actuarial equivalence. I am not aware of any standard that requires a risk free rate for determining actuarial equivalence.

8. In my opinion the 6.75% interest rate used to reduce the monthly early retirement payments to former employees is consistent with accepted actuarial standards. It represents a reasonable rate based on the consensus view of expected returns of numerous professional plan managers. It also reflects a reasonable rate that has been approved by the IRS through the issuance of numerous determination letters.

**Is the 6.75% interest rate consistent with current industry standards?**

1. I have been designing pension plans and performing actuarial calculations for clients since 1972. When ERISA was enacted in 1974, all plans had to be redesigned to comply with ERISA. Approximately every 5-7 years since then, plans had to be restated to comply with new legislation. Each time a plan was restated, it was submitted to the IRS for a determination letter.

2. I have personally been involved in the pension plan design for approximately 200 clients and have had oversight responsibility for hundreds of others.

3. The interest assumption I have chosen to determine actuarial equivalence of optimal forms of benefits has generally been in the 5% to 8% range.

4. Currently I am responsible for about 84 defined benefit clients. Most (75 plans) clients use a formula reduction factor for early retirement benefits. Nine plans use an actuarial reduction. The interest rate used by the nine plans are:

| Number of Plans | Interest Rate |
|---|---|
| 4 | 7.0% |
| 3 | 6.0% |
| 2 | 5.5% |

Another 11 plans use a reduction of 6% per year prior to age 65 which results in a 60% reduction at age 55. This is approximately the same as the 62.5% reduction in the D&B plan.

McCarthy vs. Dun & Bradstreet

5. Based on an informal survey of Milliman consulting actuaries, we received responses for another 149 plans. Eighteen of these plans use actuarial equivalence to determine early retirement benefits. The interest rates used by these plans are:

| Number of Plans | Interest Rate |
|---|---|
| 2 | 8.0% |
| 4 | 7.5% |
| 5 | 7.0% |
| 3 | 6.0% |
| 4 | 5.0% |

6. Generally, when we need to calculate a benefit at an age younger than the earliest retirement age, Milliman uses an interest rate of 7.5% to determine actuarial equivalency in plans which specify formula reduction factors to the earliest retirement age.

7. I am not aware of any traditional defined benefit pension plan that uses a variable interest rate or an interest rate tied to a specific index to determine early retirement benefits.

8. I also reviewed the "**Hewitt SpecBook for United States 2002-2003**" for information on the interest rates used by non-Milliman clients. This survey did not specifically address if a plan used actuarial equivalence as its early retirement factors but gave information in a set of tables. The survey indicated many plans used 1/15, 1/30 or 6% per year as their early retirement factors. Some plans used two sets of factors, one for current active employees and another for former terminated vested employees. This survey indicates that plan sponsors have a great deal of flexibility in defining the early retirement reductions. As discussed above, the 6% per year approach produces similar results to those used by the D&B plan.

**To what extent, if at all, was 6.75% reasonable under the circumstances of this particular case?**

In my opinion, 6.75% is a reasonable interest rate for this particular case for the following reasons:

1. It is reasonable based on accepted actuarial standards.

2. It is consistent with IRS laws, rules, and regulations.

3. It is consistent with current industry practices. Milliman plans use interest rates in the 5% to 8% range.

Prepared by:

*[signature]*

Edward W. Brown, FSA, EA
Principal
Milliman
4 Corporate Plaza
250 Washington Avenue Extension
Albany, New York 12203-5401
(518) 869-8378

# Edward W. Brown, FSA, Principal
*Milliman*



Milliman
4 Corporate Plaza
250 Washington Avenue Extension
Albany, New York  12203-5401
Phone:  (518) 869-8378
FAX:    (518) 869-8379
E-Mail:  ed.brown@milliman.com

***Current Responsibility:***  Ed is a Principal in the firm and co-manages the Employee Benefits Practice of the New York metro office of Milliman which includes offices in New York City, New Jersey and Albany.  He has more than 35 years of actuarial experience.

***Experience:***  Ed's specific area of expertise is employee retirement programs.  His consulting activities primarily focus on the design, communication, implementation and ongoing administration (data management, valuation, benefit calculations, etc.) of a wide range of retirement programs (both defined benefit and defined contribution).  Ed has also served as an expert witness in cases involving actuarial calculations and opinions.

***Professional Designations:***
- Fellow, Society of Actuaries (FSA), 1975
- Member, American Academy of Actuaries (MAAA), 1975
- Enrolled Actuary under ERISA, (EA), 1975
- Member, Conference of Consulting Actuaries, 1998

***Affiliations:***  Ed is a frequent speaker at client and professional seminars.  He has made presentations at the Enrolled Actuaries Meetings, New York State Employee Benefits Conference, and the Adirondack Actuaries Club.  He participates on several internal Milliman Committees, including the Pension Steering Committee, the Professional Development Committee, the Mentoring Committee, the Marketing Committee, the Retirement Committee, the Investment Committee, and the Employee Benefits Committee.

***Employment History:***
1991-Present:  Principal and Manager of the Milliman Albany office.

1984-1991:  Altman & Brown, Inc.  Purchased by Fleet Bank in 1985 and re-named Fleet Employee Benefit Services, Inc.  Senior Vice President and Consulting Actuary.

1967-1984:  Various actuarial positions at the New York State Insurance Department and Retirement System.  Chief Actuary of the State Retirement Systems from 1975 to 1984.