# EXHIBIT K

ORIGINAL

```
 1   UNITED STATES DISTRICT COURT

 2   DISTRICT OF CONNECTICUT

 3   ------------------------------------------- X

 4   MCCARTHY, ET AL,

 5                        Plaintiffs,

 6        - against -

 7   DUN AND BRADSTREET, ET AL,

 8
                          Defendants.
 9   -------------------------------------------X

10                        Examination of EDWARD W. BROWN
                          Milliman USA
11                        4 Corporate Plaza
                          250 Washington Ave. Ext.
12                        Albany, New York   12203

13                        October 6, 2004 at 10:00

14   APPEARANCES:         By Phone:
                          MOUKAWSHER & WALSH, LLC
15                        THOMAS MOUKAWSHER, Esq., of Counsel
                          21 Oak Street
16                        Hartford, Connecticut 06106
                          Attorneys for Plaintiffs
17
                          PAUL, HASTINGS, JANOFSKY & WALKER,
18                        PATRICK W. SHEA, Esq., of Counsel
                          1055 Washington Blvd - 9th Floor
19                        Stamford, Connecticut  06901-2217
                          Attorneys for Defendants
20

21

22

23

24

25
```

P.O. Box 12459
Albany, NY 12212-2459

ALLIANCE REPORTING SERVICE, LLC

Schenectady (518) 355-9216
Toll Free (800) 292-0224
Fax (518) 452-0610
alliancereporting@hotmail.com

1  Q. Have you ever been employed as an expert witness
2  in a case involving a challenge to an ERISA plan
3  actuarial assumption?
4  A. I don't believe so.
5  Q. Have you ever been an expert witness in a case
6  where a plan participant claimed the terms of their plan
7  violated ERISA?
8  A. No.
9  Q. Have you ever been retained as an expert witness
10 by a plan participant other than in a matrimonial
11 context?
12 A. I think the answer would be no with the exception
13 of matrimonial, but that's not really ERISA or a plan.
14 Q. Okay. Let's turn now to Exhibit 2, page five, if
15 you would.
16 A. Okay.
17 Q. And direct your attention to paragraph 8.
18 A. Okay.
19 Q. You say: In my opinion the 6.75 percent interest
20 rate used to reduce the monthly early retirement
21 payments to former employees is consistent with accepted
22 actuarial standards.  It represents a reasonable rate
23 based on the consensus view of expected returns of
24 numerous professional plan managers. It also reflects a
25 reasonable rate that has been approved by the IRS

P.O. Box 12459
Albany, NY 12212-2459
ALLIANCE REPORTING SERVICE, LLC
Schenectady (518) 355-9216
Toll Free (800) 292-0224
Fax (518) 452-0610
alliancereporting@hotmail.com

1  through the issuance of numerous determination letters.
2      I'm just trying to understand the gist of your
3  opinion here. If I wanted to know why you think it's
4  consistent with accepted actuarial standards, would I be
5  correct to say that, first, it's consistent with the
6  consensus view and that many professional plan managers
7  use these similar rates; and, two, that the rate has
8  been approved by the IRS in determination letters?
9          MR. SHEA:  Object to form.
10     Q.  Is that fair?
11         MR. SHEA:  Objection to form.  You can
12 answer.
13     A.  I think you said three things, not two things.
14     Q.  Well, I said if I wanted to understand why you
15 believe it's consistent with accepted actuarial
16 standards you think it's for two reasons. One, it's
17 consistent with the consensus view and that many
18 professional plan managers use similar rates. And two,
19 that the rate has been approved by the IRS from
20 determination letters, is that right?
21     A.  I don't think -- I wouldn't say it that way. I
22 would say there are three things for my opinion. Number
23 one is it's consistent with accepted actuarial
24 standards.  And that's independent of the other two. The
25 other two build on it.  Number two, it's also a

P.O. Box 12459
Albany, NY 12212-2459

ALLIANCE REPORTING SERVICE, LLC

Schenectady (518) 355-9216
Toll Free (800) 292-0224
Fax (518) 452-0610
alliancereporting@hotmail.com

1  reasonable rate based on the consensus view.  And number
2  three, it's been approved by IRS.
3      Q.  So in paragraph eight, when you say:  Used to
4  reduce the monthly early retirement payments to former
5  employees is consistent with accepted actuarial
6  standards, you're not explaining why it's consistent
7  with the actuarial standards in the next two sentences,
8  is that right?
9      A.  That's right. I think they're independent.
10     Q.  This is three points.  Consistent with actuarial
11 standards.  It's a reasonable rate because of the
12 consensus view.  And it's reasonable because it's been
13 approved by IRS in determination letters.  Is that
14 correct?
15     A.  That's correct.
16     Q.  With respect to choosing interest rates for
17 purposes of creating actuarial equivalency in early
18 retirement benefits, can we agree that the higher the
19 interest rate a company uses the smaller the pension it
20 produces?
21         MR. SHEA:  Object to form.  You can answer.
22     A.  I think that we can agree on that, yes.
23     Q.  And would you also agree with me the interest
24 rate that a company chooses for this purpose is supposed
25 to reflect what a reasonable return would be in the

P.O. Box 12459
Albany, NY 12212-2459
ALLIANCE REPORTING SERVICE, LLC
Schenectady (518) 355-9216
Toll Free (800) 292-0224
Fax (518) 452-0610
alliancereporting@hotmail.com

1  periodically changing the interest rate assumption in
2  the plan as opposed to simply adopting a variable rate
3  in a plan?
4           MR. SHEA: Objection to form, vague. You can
5  answer if you understand.
6       A.  What are the advantages of changing a rate
7  periodically versus adopting a variable rate?
8       Q.  Yes. I guess what I was giving you is a
9  hypothetical in which you have volatile interest rates,
10 they're going way up and way down.  And the question is,
11 how is it best to react to that?  Is it best to
12 periodically simply change a fixed rate in the plan or
13 is it best to adopt a variable rate?  Give your choice
14 and explain what your choice is.
15      A.  My choice would be definitely to adopt a fixed
16 rate and change it from time to time. The reason being
17 that this is part of a benefit calculation, and IRS
18 requires -- and you need it for proper plan
19 administration -- to be able to definitely determine
20 what a person's benefit is. A fixed rate allows you to
21 do that. A variable rate does not allow you to do that,
22 and it causes confusion among giving benefit estimates
23 and predicting what benefits would be paid from a plan.
24 So my preference would definitely be to have a fixed
25 rate and if it becomes unreasonable, to then change it.

P.O. Box 12459
Albany, NY 12212-2459

ALLIANCE
REPORTING SERVICE, LLC

Schenectady (518) 355-9216
Toll Free (800) 292-0224
Fax (518) 452-0610
alliancereporting@hotmail.com

1  Q. In those circumstances, though, you're saying
2  there's some legal obstacle? You seemed to suggest
3  that.
4  A. And I'm not a lawyer, I'm an actuary. But one
5  requirement that IRS has is that benefit be definitely
6  determinable. That means you can calculate them with
7  precision. And a fixed rate allows you to do that. A
8  variable rate does not.
9  Q. But don't, in fact, plans confront that kind of
10 projection and calculation issue all the time when
11 they're asked to give estimates of what a person's lump
12 sum retirement would be?
13 A. They do. And it creates a lot of problems. But
14 IRS has specific rules for dealing with that. That the
15 lump sum that you quote, that I might quote today in
16 October for a benefit being paid out next March might in
17 fact end up being lower next March because I'm using
18 today's rate. And IRS says that's okay. But that's one
19 of the few instances. If we gave a person an estimate
20 of their early retirement benefit today and then decided
21 to use a different interest rate next March, I don't
22 believe that would be a permissible reduction in
23 benefits.
24 Q. Okay. So wouldn't that problem happen if you
25 simply decided on a new fixed rate, too?

P.O. Box 12459
Albany, NY 12212-2459
ALLIANCE REPORTING SERVICE, LLC
Schenectady (518) 355-9216
Toll Free (800) 292-0224
Fax (518) 452-0610
alliancereporting@hotmail.com

1    A.  Right.

2    Q.  You run into the exact same problem, wouldn't

3 you?

4    A.  You would, but you would plan ahead. You would

5 know far in advance when you're going to change it. You

6 have to make sure you don't cut anybody's benefit.

7    Q.  Where you're changing responses to volatile

8 interest rates, where you're changing the actual fixed

9 rate in the plan, you have to do that by a plan

10 amendment, wouldn't you?

11    A.  That's right.

12    Q.  If you had a variable rate and it simply changed

13 because, let's say you're following the 30 year Treasury

14 rate, you wouldn't have to have a plan amendment, would

15 you?

16    A.  You would have to have a plan amendment to adopt

17 that variable rate, number one, right.

18    Q.  Right.

19    A.  And then every time that that variable rate

20 changed in a way that a participant's benefit went down.

21 I believe if you did this -- I've never seen this, and I

22 don't think IRS would approve it, in my experience.  So

23 it's kind of a hypothetical answer here.  But I would

24 think that if the benefit went down because of the

25 exercise of that variable rate, that you would be in

P.O. Box 12459
Albany, NY 12212-2459


ALLIANCE
REPORTING SERVICE, LLC

Schenectady (518) 355-9216
Toll Free (800) 292-0224
Fax (518) 452-0610
alliancereporting@hotmail.com

1  violation of IRS rules that prohibit reduction in
2  accrued benefits.  And you would have to pay the higher
3  rates.
4      Q.  Those reductions in benefits refer specifically
5  to plan amendments that do that?
6      A.  No.  To my understanding this variable rate would
7  apply as well.
8      Q.  So, in other words, you believe that it would be
9  a forfeiture of benefits, an unlawful forfeiture of
10 benefits every time a variable interest rate changed?
11     A.  I wouldn't say that. And I wouldn't use the word
12 forfeiture.  I would say if the exercise of that
13 variable rate resulted in a lower benefit, that it would
14 be very likely that the higher benefit would have to be
15 paid.
16     Q.  Okay. So you don't make any distinction between a
17 reduction of benefits that is caused by a plan amendment
18 and a reduction of benefits that would be caused under
19 that circumstance by the use of a variable rate?
20     A.  In your hypothetical case. If the variable rate
21 is required by law then there's other rules that deal
22 with that.
23     Q.  You think despite the fact that the IRS has
24 approved, and mandates in fact, the use of variable rate
25 elsewhere that reduces other peoples' benefits, it would

P.O. Box 12459
Albany, NY 12212-2459
ALLIANCE REPORTING SERVICE, LLC
Schenectady (518) 355-9216
Toll Free (800) 292-0224
Fax (518) 452-0610
alliancereporting@hotmail.com

1  happen over the next long period of time during a period
2  of historically low interest rates it would be true that
3  one of the things that you should consider is the fact
4  that current rates are extremely low?
5      A.  That would be one factor.
6      Q.  Okay. So when you have any period where there's
7  dramatic changes in rates like that, it wouldn't be
8  reasonable to look solely at rates that predated the
9  interest rate downturn, would it?
10     A.  No, not to look solely at some other period.
11     Q.  Okay. Because the job, of course, is to predict
12 future rates, not past rates?
13     A.  It is easy to predict past rates.
14     Q.  The point is, the job is to predict the future
15 rates, correct?
16     A.  That's right.
17     Q.  Now, I ask you to turn to page six of your
18 report. And you state in paragraph two, where you're
19 summarizing your ultimate opinion, it's consistent with
20 IRS laws, rules and regulations.  What IRS laws, rules
21 and regulations did you consider in forming your
22 opinion?
23     A.  You know, I can't like quote you chapter and
24 verse on the whole Internal Revenue Code and
25 regulations, they fill many volumes of books. But the

P.O. Box 12459
Albany, NY 12212-2459


ALLIANCE REPORTING SERVICE, LLC

Schenectady (518) 355-9216
Toll Free (800) 292-0224
Fax (518) 452-0610
alliancereporting@hotmail.com

1  referenced, you don't know what it is?
2      A.   That's right.
3      Q.   Okay. But do you agree with me that it's an
4  assumption underlying your report that adjustments in
5  excess of reasonable actuarial reductions can result in
6  benefits being forfeitable?  In other words, interest
7  rate adjustments.
8      A.   Again, my understanding is that if you do have
9  unreasonable assumptions resulting in benefits that
10 become unreasonably low because of those assumptions,
11 that that would be a non permissible forfeiture of
12 benefits.
13     Q.   Are you familiar with the ERISA section 206(a)?
14     A.   I don't know the chapter and verse off the top of
15 my head, again.  But if you showed it to me --
16     Q.   If I cite the section you don't know what it is,
17 right?
18     A.   No.
19     Q.   How about ERISA Section 203(a)?
20     A.   Again, if you showed it to me I probably would
21 be.  But not off the top of my head, I don't know the
22 section and chapter and verse.
23     Q.   How about IRS Code 417(e)(3)?
24     A.   I know 417(e), in general, maximum benefit.
25     Q.   All right. Are you aware of any provision in that

P.O. Box 12459
Albany, NY 12212-2459

ALLIANCE REPORTING SERVICE, LLC

Schenectady (518) 355-9216
Toll Free (800) 292-0224
Fax (518) 452-0610
alliancereporting@hotmail.com

1  subsection that deals with interest rates?
2      A.  Not off the top of my head.
3      Q.  But you know that the IRS requires that lump sum
4  defined benefits have to be calculated using the annual
5  interest rate on 30 year Treasury securities for the
6  month before the date of distribution, right?
7      A.  I wouldn't state it that way. Could be the year
8  before the date of distribution.  Could be some other
9  period.  But, yes, it's a variable rate that changes
10 probably at least once a year. Could change monthly like
11 you said.
12     Q.  You don't know whether you're supposed to refer
13 to the month or the year before the date of
14 distribution?
15     A.  I know you have the option. There are different
16 options you can choose.
17     Q.  You can choose between the month or year, is that
18 right?
19     A.  That's my understanding. And you can choose the
20 month of the year in about a three month range that you
21 want to use.
22     Q.  Do you know what the 30 year Treasury rate is
23 today?
24     A.  Well, of course, 30 year Treasury aren't issued
25 anymore.  But there's still a rate that's disclosed.

P.O. Box 12459
Albany, NY 12212-2459

ALLIANCE
REPORTING SERVICE, LLC

Schenectady (518) 355-9216
Toll Free (800) 292-0224
Fax (518) 452-0610
alliancereporting@hotmail.com

1   Q.   Right.

2   A.   I don't know what it is today. I think it's

3   something like four to five percent. Maybe a little

4   more.

5   Q.   Can you tell me any long term security as safe as

6   a government security that's currently yielding 6.75

7   percent?

8   A.   Well, government securities are the most secured

9   securities, so there's no security that would be as safe

10  as a government security.

11  Q.   Do you know any, including municipal bonds, do

12  you know any municipal bonds paying a rate around 6.75

13  percent?

14  A.   Not off the top of my head.

15  Q.   Any 30 year publicly traded mortgages paying that

16  rate?

17  A.   Again, off the top of my head I don't know of

18  any. I just don't know.

19  Q.   Can you name any specifically safe, virtually

20  safe as government securities?

21          MR. SHEA:   Objection to form.

22  Q.   Long term security yielding a rate of 6.75

23  percent.

24  A.   Again, you know, I haven't checked the paper

25  today and they vary. But right off, I couldn't name any.

P.O. Box 12459
Albany, NY 12212-2459
ALLIANCE REPORTING SERVICE, LLC
Schenectady (518) 355-9216
Toll Free (800) 292-0224
Fax (518) 452-0610
alliancereporting@hotmail.com

1  Q.  Would you agree with me that the 30 year Treasury
2  rate that's now extrapolated is based on an issue that
3  the intent of using it is to indicate a likely interest
4  rate environment over the next 30 years?
5          MR. SHEA:  Objection to form.
6  A.  And I wouldn't agree with you. It is the likely
7  rate to be paid on long term Treasury bonds, but that's
8  all.
9  Q.  What is it supposed to reflect?
10 A.  It reflects the rate on long term Treasury bonds.
11 Q.  What do long term Treasury bonds do?  What is the
12 return of them supposed to be?
13         MR. SHEA:  Objection to form.
14 A.  What is it supposed to be or what is it?
15 Q.  Tell me what it is.
16 A.  I don't know. I think, as I said before, I think
17 it's around --
18 Q.  I don't mean what the rate is.
19         MR. SHEA:   That was part of the objection.
20 It's pretty vague.
21 Q.  I'll withdraw it. The 30 year Treasury rate is
22 frequently referred to as an economic indicator, isn't
23 it?
24         MR. SHEA:   Objection as to form.
25 A.  It is one economic indicator, yes.

P.O. Box 12459
Albany, NY 12212-2459


ALLIANCE
REPORTING SERVICE, LLC

Schenectady (518) 355-9216
Toll Free (800) 292-0224
Fax (518) 452-0610
alliancereporting@hotmail.com

1  Q. And it's supposed to be an indicator, in part, of
2  investments that are made over the long term, 30 years,
3  right?
4  A. In government securities, yes.
5  Q. Would you agree with me that the IRS' choice of
6  the 30 year Treasury rate for calculating lump sum
7  reflected its judgment that the 30 year Treasury rate is
8  a reasonable rate of interest for determining actuarial
9  equivalency?
10 A. I would disagree with that.
11 Q. You think they chose it as an unreasonable rate?
12 A. No.
13 Q. They deliberately chose it to be an unreasonable
14 rate to determine actuarial equivalency?
15 A. No.
16 Q. What are you saying?
17 A. They chose it as a rate to determine a benefit.
18 They never said this is actuarial equivalent. They don't
19 use those words. They said we want you to use this rate
20 because we want plans to pay out higher lump sum
21 benefits. It was a policy decision.  It was a benefit
22 decision.  I don't think it involved actuarial
23 equivalence matters, as far as I know.
24 Q. As far as you know a lump sum payout of a normal
25 retirement benefit doesn't have to be the actuarial

P.O. Box 12459
Albany, NY 12212-2459

ALLIANCE
REPORTING SERVICE, LLC

Schenectady (518) 355-9216
Toll Free (800) 292-0224
Fax (518) 452-0610
alliancereporting@hotmail.com

1  equivalent of the normal retirement benefit, is that
2  your understanding?
3      A.   That's absolutely my understanding.
4           MR. MOUKAWSHER: Let's take a break.
5           (Whereupon a short recess was taken.)
6  BY MR. MOUKAWSHER:  (Continuing.)
7      Q.   Why don't we go back on the record.  Mr. Brown, I
8  ask you to turn to Exhibit 2, page five of your report.
9      A.   Okay.
10     Q.   You refer there in paragraph four to nine plans
11 that use an actuarial reduction. See that in paragraph
12 four?
13     A.   I see it.
14     Q.   Can you tell me whose plans are the nine plans
15 that you list on that page?
16          MR. SHEA:   I think that's going to have the
17 same issue we raised previously in terms of confidential
18 information of Milliman clients. I think if you look at
19 the spreadsheet, Tom, they have been identified in
20 Exhibit 3, when it comes through by the client code,
21 which is in the left-hand column.
22          MR. MOUKAWSHER:  But if I understand what
23 this witness has done, he's examined these plans and
24 he's relied on them in his opinion.
25          MR. SHEA:   He has.

P.O. Box 12459
Albany, NY 12212-2459

ALLIANCE
REPORTING SERVICE, LLC

Schenectady (518) 355-9216
Toll Free (800) 292-0224
Fax (518) 452-0610
alliancereporting@hotmail.com

STATE OF NEW YORK                COUNTY OF RENSSELAER

      I, Maryann Rizzi Francis, a Shorthand Reporter and Notary, in and for the State of New York, do hereby CERTIFY that I recorded the foregoing testimony at the time and place herein stated and that the preceding statements are a true and correct transcript thereof to the best of my knowledge and ability.

*Maryann Rizzi Francis* (signature)



P.O. Box 12459
Albany, NY 12212-2459

ALLIANCE REPORTING SERVICE, LLC

Schenectady (518) 355-9216
Toll Free (800) 292-0224
Fax (518) 452-0610
alliancereporting@hotmail.com