UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARY MCCARTHY, CLAYTON BOROWSKI, ET AL., | : | |
| Plaintiffs, | : | CIVIL ACTION NO. |
| | : | 3:03cv431(SRU) |
| v. | : | |
| | : | |
| THE DUN & BRADSTREET CORPORATION, THE DUN & BRADSTREET CORPORATION RETIREMENT ACCOUNT, and THE DUN & BRADSTREET CAREER TRANSITION PLAN, | : | |
| Defendants. | : | |

## RULING ON DEFENDANTS' MOTION TO DISMISS

This case arises out of a sale by The Dun & Bradstreet Corporation ("Dun & Bradstreet" or "the Corporation") of its Receivable Management Services ("RMS") division to a group of that division's managers. The sale resulted in the nominal termination of all the RMS division's employees, though they were immediately re-employed by the spun-off company. Plaintiffs, a group of those former employees, brought this lawsuit claiming that their termination improperly deprived them of all or part of the benefits to which they were entitled under two Dun & Bradstreet plans in which they participated. Defendants have moved to dismiss two of the four counts of this complaint, namely, Count One – alleging a failure to pay plaintiffs their severance benefits – and Count Three – alleging an improper reduction of plaintiffs' retirement benefits.[1] For the reasons set forth below, defendants' motion is granted, and those two counts are

---

[1] Defendants also moved to dismiss Count Four of the complaint, a count alleging that one of the plans used an unreasonably high interest rate. At oral argument, both parties agreed it would be appropriate for the court to convert that motion into one for summary judgment, with both sides being granted additional time to provide the court with relevant evidence.

dismissed.

**I.    Statement of Facts**[2]

Plaintiffs are forty-six individuals who were formerly employed by Dun & Bradstreet. As employees of the Corporation they participated in a variety of benefits plans, two of which are at issue in this litigation. The first, called the Career Transition Plan ("CTP"), provided severance benefits. The second, called the Master Retirement Plan ("MRP"), provided retirement benefits. Both plans are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"). Both plans, in their current incarnations, are defendants in this lawsuit.[3]

    A.    <u>Career Transition Plan Terms</u>

The CTP provides for severance benefits to participating employees upon the occurrence of an "Eligible Termination." Section 1.4 of the CTP provides:

> "Eligible Termination" shall mean (a) an involuntary termination of employment with a Participating Company by reason of a reduction in force program, job elimination or unsatisfactory performance in the execution of an Eligible Employee's duties or (b) a resignation mutually agreed to in writing by the Participating Company and the Eligible Employee. Notwithstanding the foregoing, an Eligible Termination shall not include (w) a unilateral resignation, (x) a termination by a Participating Company for Cause, (y) a termination as a result of a sale (whether in whole or in part, of stock or assets), merger or other combination, spinoff, reorganization or liquidation, dissolution or other winding up or other similar transaction involving a Participating Company; or (z) any termination where an offer of employment is made to the Eligible Employee of a comparable position at a Participating Company concurrently with his or her Eligible Termination.

---

[2] This statement of facts is drawn – as it must be – from the allegations of plaintiffs' complaint and the text of the benefit plans referenced therein.

[3] The Master Retirement Plan was replaced by The Dun & Bradstreet Corporation Retirement Account. This new Account is still responsible for the payment of benefits due under the MRP, and so is named as a defendant in this case.

B.  Master Retirement Plan Terms

The MRP provides participants with retirement benefits upon reaching the normal retirement age of 65. It also allows employees to retire as early as age 55 and receive their normal retirement benefits discounted at a rate of 3% a year.

Former employees, whose benefits under the MRP vested before they left the Corporation, are entitled to the same benefits upon retirement at 65 as current employees. Like current employees, former employees can also receive benefits if they retire early.[4] Unlike early retiring current employees, early retiring former employees do not receive their normal benefit reduced annually by 3%, instead they receive the "actuarial equivalent" of their normal benefit. Actuarial equivalence is defined under the MRP as a participant's normal retirement benefit, discounted by an annual rate of 6.5% and a mortality factor. The appropriate mortality factors are set forth in detail in the MRP.

As required by ERISA, Dun & Bradstreet provided MRP participants with a Summary Plan Description ("SPD"). The SPD describes the early retirement benefits of both current and former employees.

In a section entitled "Early Retirement Benefit," the SPD explains that current employees can retire as early as age 55. It explains that, if they do, their benefit will be "reduced 3% for

---

[4] This result is mandated by ERISA. See 29 U.S.C. § 1056(a) ("In the case of a plan which provides for the payment of an early retirement benefit, such plan shall provide that a participant who satisfied the service requirements for such early retirement benefit, but separated from service (with any noforfeitable right to an accrued benefit) before satisfying the age requirement for such early retirement benefit, is entitled upon satisfaction of such age requirement to receive a benefit not less than the benefit to which he would be entitled at the normal retirement age, actuarially reduced under regulations prescribed by the Secretary of the Treasury.").

each year that payments begin before age 65." The SPD then sets out a chart showing what percentage of normal benefits an employee would receive for all retirement ages between 55 and 65.

Later, in a section entitled "Vesting," the SPD explains that vested employees are entitled to retirement benefits even if they have left the company. It then explains that:

> If you choose, the payment of your deferred vested benefit can begin as early as age 55, but the amount of the benefit will be reduced actuarially, resulting in a lower Plan benefit than if the reduction table in the 'Early Retirement Benefit' section was used.

### C.    Sale of RMS Division

In 2001 Dun & Bradstreet sold its RMS division to a group of that division's managers. Though, as a practical matter, the plaintiffs did not lose their jobs, after the sale they were employees of the RMS spin-off, not Dun & Bradstreet. Thus, at least nominally, all the plaintiffs had been terminated from Dun & Bradstreet's employment.

The CTP, however, did not pay plaintiffs severance benefits because their termination was deemed to fall under the section 1.4 subsection (y) exception to "Eligible Terminations" – termination as a result of sale.

Furthermore, under the MRP, plaintiffs were no longer current employees. Consequently, if they chose to retire early, they were not entitled to receive their normal retirement benefit discounted by the favorable 3% discount rate, but instead would receive it discounted by 6.5% per year plus a mortality factor.

## II.    Discussion

### A.    Standard of Review

As a preliminary matter, there is some question about what standard of review to apply in resolving this matter. Defendants contend that, because plaintiffs' claims for benefits were denied by an authorized representative of each plan, the court only reviews this denial to determine whether it was arbitrary or capricious. Plaintiffs disagree; they believe that this court's review is *de novo*. They present a number of arguments in support of this position, including: (a) that one of the plan's decisions was not timely, (b) that the person who denied the benefits was not authorized, (c) that some of the issues are purely legal, and (d) that the plans' decisions were tainted by conflict of interest. None of these issues needs to be addressed because under either standard my decision would be the same.

  B.  CTP Benefits

In the absence of any limiting provision, plaintiffs would presumably be entitled to severance benefits under the CTP because they were terminated without cause. The CTP, however, excludes benefits for employees whose termination is "as a result of a sale (whether in whole or in part, of stock or assets), merger or other combination, spinoff, reorganization or liquidation, dissolution or other winding up or other similar transaction involving a Participating Company." A Participating Company is defined as any of a number of listed companies, including Dun & Bradstreet.

Plaintiffs argue that this exception is inapplicable to them. They argue that the phrase "involving a Participating Company" means that all parties to the specified transaction must be Participating Companies. Specifically plaintiffs contend that, although the RMS division was sold *by* a Participating Company (Dun & Bradstreet), because it was not sold *to* a Participating Company (but instead to a group of managers), terminations resulting from that sale are not

excepted from the definition of eligible terminations. In other words, plaintiffs contend that the word "involving," in this context, means "consisting only of." The word plainly has no such meaning in ordinary usage, and there is nothing that indicates the parties intended the word to have that meaning in the CTP. On the contrary, when the drafters of the CTP wished to express the meaning "by" or "to," they simply used those prepositions. In short, the CTP is unambiguous; terminations as a result of the sale by Dun & Bradstreet (a Participating Company) of its RMS division – a sale that *involved* Dun & Bradstreet – are not "Eligible Terminations."

Plaintiffs are entitled to no severance benefits under the plain language of the CTP. Consequently, Count One of the Amended Complaint is dismissed.

### C.     MRP Benefits

As former employees, plaintiffs are entitled to receive all of their vested retirement benefits upon retirement at age 65. They can also retire as early as age 55, but their benefit amount will be "actuarially reduced" by 6.5% per year plus a mortality factor. Thus, they will receive a lower benefit than early retiring current employees, who only have their benefits reduced by 3% per year.

For example, a current employee who retires at age 60 would receive 85% of his age-65 retirement payout. A former employee retiring at the same age would receive approximately 60% of his age-65 retirement payout.

Plaintiffs do not dispute this interpretation of the MRP. Neither do they dispute that they are former employees for the purpose of an MRP payout. They argue that the provision of the plan that provides for "actuarial reduction" of benefits for early retiring former employees cannot be enforced against them, because it was not adequately disclosed in the Summary Plan

Description.  Instead, they contend, they should receive the same discounted payout as current employees, a payout discounted using the more favorable rate of 3% per year.

ERISA requires that all participants in covered plans be provided with Summary Plan Descriptions describing the terms of the plan.  29 U.S.C. § 1022.  To the extent an SPD conflicts with its plan, the SPD controls.  See Heidgerd v. Olin, 906 F.2d 903, 908 (2d Cir. 1990).

ERISA provides some guidance concerning what constitutes adequate disclosure in an SPD.  It must, among other things, set out "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits."  29 U.S.C. § 1002(b).  Labor Department regulations further explain that the SPD must not be "misleading" or "misinform" participants, and that "[a]ny descriptions of exceptions, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant."  29 C.F.R. § 2420.102-2(b).

The question before the court is whether the following sentence from the SPD, describing benefits available to former employees, satisfies ERISA's requirements:  "If you choose, the payment of your deferred vested benefit can begin as early as age 55, but the amount of the benefit will be reduced actuarially, resulting in a lower Plan benefit than if the reduction table in the 'Early Retirement Benefit' section was used."

Plaintiffs contend that this disclosure is inadequate.  They argue that ERISA requires that the SPD give a more detailed explanation of how the reduction of benefits would be calculated, and not merely the general statement that benefits will be "actuarially reduced."

There is nothing in the language of the relevant ERISA statute indicating that an SPD must disclose how a benefit reduction is calculated.  On the contrary, the statute specifically says

that the SPD must set out "*circumstances* which may result in ... loss of benefits." 29 U.S.C. § 1022 (emphasis added). Perhaps acknowledging this, plaintiffs point, not to the statute, but to interpretive case law that they believe imposes a more stringent disclosure requirement on SPDs.

Plaintiffs rely primarily on the case of Layaou v. Xerox, 238 F.3d 205 (2d Cir. 2001). Though I agree that this case is on point, it does not support plaintiffs' position. Layou had left his employment at Xerox, received a lump-sum distribution, and later been re-employed. Under the terms of Xerox's retirement plan, when he finally retired, Layou's ultimate payout was offset by a "phantom account." The "phantom account" offset was basically equal to the amount his initial payout (from when he first left Xerox) would have been had it been left in the plan.

The Layou Court identified two problems with the way the offset was described in the SPD. First, the SPD only stated that benefits "*may* be reduced if you receive amounts before age 65 or receive amounts from another Xerox retirement plan" (emphasis added). This, the Court held, was insufficient to apprise Layou of the fact that his benefits *would* be reduced. Second, Layou had received an estimate from Xerox stating that his benefits would be $924 per month when, in fact, he was only to receive $145 per month, after the "phantom account" offset. The Court determined that this compounded the confusion caused by the SPD disclosure.

This case is quite different. The MRP's SPD states that benefits for early retiring former employees "*will be* reduced ... resulting in a lower Plan benefit." There is simply no way that a former employee reading that section could be under the impression that he was to receive the same benefits as current employees. Additionally, unlike in Layou, there is no indication here that plaintiffs who requested estimates of their benefit reductions were provided with inaccurate disclosures. In fact, plaintiffs do not dispute that at least one of them did request such an

estimate and was given a correct description of his benefits.

The Layou Court also provided an example of what it would consider to be an adequate disclosure. It indicated that the following would suffice: "Any future benefit *will be offset* by the *appreciated value* of any prior distribution assuming that amount remained in the plan" (emphasis in original). This language is similar to the language actually used in the MRP's SPD, specifically that "the amount of the benefit will be reduced actuarially, resulting in a lower Plan benefit than if the reduction table ... was used." Both statements inform participants that their benefits will certainly be reduced, and both generally describe how they will be reduced, neither providing much detail about the latter step (compare "offset by the appreciated value" with "actuarially reduced, resulting in a lower Plan benefit").

Other cases in which courts have found summary disclosures inadequate all deal with much more serious omissions. See, e.g., Burke v. Kodak Retirement Income Plan, 336 F.3d 103, 111 (2d Cir. 2003) (failure to disclose that domestic partnership affidavit was required); Ruotolo v. Sherwin-Williams Co., 622 F. Supp. 546, 549 (D. Conn. 1985) (failure to disclose that disability benefits would be reduced by 70% of earnings received from paid employment). No case has ever held that a mere failure to include the specific methodology used to calculate a benefit is an ERISA violation.

Cases in this Circuit have all consistently interpreted ERISA's requirements as meaning what they say, that an SPD must disclose *the circumstances* under which a benefit may be reduced or lost. Because the MRP's SPD complied with that requirement, Count Three of the Amended Complaint is dismissed.

Defendants' motion to dismiss Counts One and Three (doc. #18) of the Amended Complaint is GRANTED.

It is so ordered.

Dated at Bridgeport, Connecticut, this 30th day of November 2004.

                                                /s/ Stefan R. Underhill
                                               Stefan R. Underhill
                                               United States District Judge