# EXHIBIT E

# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MCCARTHY, ET AL, | ) | DOC. NO. 03:CV 431 (SRU) |
| Plaintiffs | ) | |
| v. | ) | |
| DUN & BRADSTREET, ET AL, | ) | |
| Defendants. | ) | |

- - -

## DECLARATION OF CLAUDE POULIN, F.S.A., M.A.A.A., E.A.

I, Claude Poulin, am over 21 years of age and based on personal knowledge, state as follows:

1. I am an Enrolled Actuary under ERISA, a Fellow in the Society of Actuaries, and a member of the American Academy of Actuaries. I have over 30 years of experience in designing, administering, and reviewing defined benefit pension plans, including providing advice to employers, unions, governments, employees and their representatives. My Curriculum Vitae is attached as Exhibit A.

1

2. At the time ERISA (The Employee Retirement Income Security Act) was enacted in 1974, I was the Senior Actuary for the United Automobile Workers ("UAW") and in that capacity I was responsible for the review and compliance under ERISA of approximately 3,000 pension plans the UAW had negotiated.

3. I have been an actuarial consultant to the AARP, the EEOC and the Internal Revenue Service. For the last twenty years, I have also served as the Actuarial Trustee of the Connecticut State Employees Retirement Commission.

4. I testified several times before Congressional Committees of both the U.S. House and Senate on matters related to ERISA.

5. I have attached as Exhibit B a list of the court cases in which I have testified as an expert at trial or at deposition within the last four years.

6. I have been retained in this matter to offer expert actuarial analysis on the appropriateness of the actuarial assumptions used by the Dun & Bradstreet Corporation Retirement Account (the "Plan") for the purpose of determining whether the optional forms of benefit payments, and in particular early retirement benefits, provide true actuarial equivalence.

7. To this effect, I have reviewed copies of the following relevant documents:

    - The Master Retirement Plan of the Dun & Bradstreet Corporation, as amended and restated effective January 1, 1994 (the 1994 Plan)

    - The Dun & Bradstreet Corporation Retirement Account, amended and restated as of December 31, 2001 (the 2001 Plan)

    - Plaintiffs' Amended Complaint, dated June 30, 2003.

2

- The Memorandum of Law in Support of Defendants' Motion to Dismiss.

8. A form of pension benefit is said to be the actuarial equivalent of another form of pension benefit when it has the same monetary value, computed on the basis of a specified mortality table and a specified interest rate.

9. Early retirement benefits are said to be "actuarially reduced" or "actuarially equivalent" when a pension plan calls for a reduction of the early benefits due to the facts that the benefit payments begin earlier than at the normal retirement age under the plan and therefore extend over a longer period of time, the assets supporting the benefits earn less investment income before payments commence, and there will be no "gains" to the plan from participants dying before benefit payments commence (the benefit of survivorship).

10. Section 1.1 of the 1994 Plan and Section 1.2(b) of the 2001 Plan both stipulate that for purposes of determining the actuarial equivalence of optional forms of benefits such as early retirement benefits, an interest rate of 6 ¾% will be used.

11. Section 1.42 of the 2001 Plan states that the Normal Retirement Age under the Plan is age 65.

12. Exhibit C presents the early retirement reduction factors based on the mortality rates found in Attachment Y of the 1994 Plan and interest rates of 5%, 6% and 6 ¾%. I understand the same mortality rates are used for computing actuarial equivalence under the 2001 Plan.

3

13. The Exhibit shows that for employees electing to receive their retirement benefits at age 55, normal retirement benefits under the Plan that would otherwise be paid at age 65 are reduced by more than 62%. If the interest rate used to compute "actuarial equivalence" had been 5% instead of 6 ¾%, the reduction would have been 57.4% instead of 62.6%. To the same extent that mathematically a 20% reduction is twice as large as a 10% reduction, the reduction in the early retirement factors from 57.4% to 62.6% is 9% greater using the Plan's interest rate of 6 ¾% than it would be using a 5% rate. In percentage terms, the reductions are even more substantial at higher ages being as much as 12.7% greater at age 64.

14. The fixed interest rates found in the Dun & Bradstreet 1994 Plan and 2001 Plan could have been acceptable twenty years ago and might even have then included a certain amount of subsidy. But not recently. The interest rate assumption is meant to represent the kind of investment return retiring plan participants would experience in the marketplace. Since at least the year 2000, no plan participants would have a reasonable prospect of investing their money with an annual yield of 6 ¾%.

15. A variable interest rate assumption, adjusted yearly on the basis of a recognized index, is the most effective way of dealing with the volatility of the interest rates: it would provide a more meaningful actuarially equivalent value of the accrued pension benefit to which the retiring plan participant is entitled.

16. Defendants assert that "[t]he Plan's 6.75% interest rate is also substantially similar to the reduction rate (6.6%) used to determine Social Security benefits commencing before age 65…" This is not the case. As Exhibit C indicates, the

reduction under the Plan exceeds 10% at age 64 and exceeds 20% (the Social Security reduction) at age 62.

17. Defendants also state that the "Plan's 6.75% is below the 6.95% average annual yield on 30-year Treasury securities for the 15-year period ending December 31, 2002 and below the 8.41% average for the 25-year period ending December 31, 2002." While this may be true historically, plan participants are not in the position to experience these rates today and therefore do not receive a true actuarial equivalent of their normal retirement benefits.

18. I also noted that the mortality table used by the Plan in the calculation of the actuarial reduction factors is an old table that overestimates the mortality rates currently applicable to the affected plan participants. Over the last decade, two more recent mortality tables have been widely used by actuaries in the calculation of lump sums actuarially equivalent to the accrued pension benefits payable at normal retirement age, as required by Section 417(e)(3) of the Internal Revenue Code. These two mortality tables are called the GATT table based on the 1983 Group Annuity Mortality table and the GAR 94 Table.

19. The attached Exhibit D reveals that the early retirement reduction factors are much lower under the Plan's mortality table than they would be under either the GATT or the GAR94 tables, calculated with any interest rate assumption.

20. While there are no prescribed interest rate or mortality table assumptions for the calculation of early retirement reduction factors, the rates used for the calculation of lump sums give an indication of what ERISA and the Internal Revenue Code prescribe as reasonable actuarial assumptions for the purpose of determining

5

actuarial equivalence in general. Since the passage of the GATT legislation in 1994, the interest rate that must be used in the computation of lump sums is the 30-year Treasury rate. This rate has been below 5% for most of the last several years. Currently, the prescribed mortality table for lump sum calculation purposes is the GAR 94 table. The attached Exhibit D shows that if these two actuarial assumptions were used for computing the early reduction factors under the Plan, the reductions would be much lower, as much as 22% lower in the case of a participant electing to receive benefit payments commencing at age 64.

21. A large number of pension plans still use outdated interest rate and/or mortality assumptions in determining the amounts of optional forms of benefits. Earlier this month, the American Benefits Council, an organization advocating employer-sponsored benefit programs, presented its views to the IRS on the recently-proposed Relative Value Regulations. In the context of early reduction factors, their submission read as follows: "In addition, many retirement plans list early retirement factors than can result in *a reduction of the annuity by as much as 6 percent per year* or alternatively based on a 6 percent interest rate and a reasonable mortality table. If plan sponsors decide to update these factors, it is likely that will be done in connection with updating all retirement plan factors (which, in many cases, have not been updated in more than 20 years)." (Emphasis added). Needless to say, the early retirement reductions under the Dun & Bradstreet retirement plan are much greater than 6% a year.

22. In summary, my opinion is that a fixed interest rate of 6 ¾% is an unreasonable rate of interest because it is incapable of providing at all times a truly actuarially

6

equivalent value of the normal retirement benefit payable at age 65. In an ever-fluctuating money market rate environment, a variable interest rate based on a recognized index, such as the 30-year Treasury rate, would be an alternative approach which, unlike the Dun & Bradstreet approach, would perform the function it is intended to accomplish in providing actuarially equivalent benefits to plan participants.

I declare under penalty of perjury that the foregoing is true to the best of my knowledge.

Signed: /s/ Claude Poulin

Claude Poulin

Date: April 30, 2004

7

**Exhibit A**

**CURRICULUM VITAE**
**OF CLAUDE POULIN**

| | |
|---|---|
| EDUCATION: | Fellow of the Society of Actuaries, Chicago, 1972 |
| | Laval University, School of Business Administration Quebec City, 1966, Degree in Actuarial Science |
| | University of Montreal, 1963, B.A., Mathematics |
| EMPLOYMENT: Since 1980 | POULIN ASSOCIATES, INC. 11083 John Marshall Highway Delaplane, VA 20144 (540) 364-6901 |
| | Founder and president of Poulin Associates, Inc., an independent actuarial and employee benefit consulting firm with offices in Washington, D.C., Virginia and Montreal, Canada; special expertise as a consultant and actuarial expert witness in ERISA cases (pension and welfare benefits). |
| 1969 to 1980 | UNITED AUTOMOBILE WORKERS (UAW), Detroit, Michigan |
| | Senior Actuarial Consultant and Assistant Director of the UAW Social Security Department; responsible for monitoring over 3,000 pension and welfare plans for the Union |
| 1966 to 1969 | SUN LIFE ASSURANCE COMPANY, Montreal, Canada |
| | Actuarial Assistant, pensions and group insurance operations |
| PROFESSIONAL CREDENTIALS: | Member of the American Academy of Actuaries |
| | Enrolled Actuary under ERISA |
| | Fellow of the Canadian Institute of Actuaries |
| | Member of the International Actuarial Association |
| | Appointed by the Governor of the State of Connecticut as Actuarial Trustee of the Connecticut State Employees' Retirement Commission |

| | |
|---|---|
| PROFESSIONAL CREDENTIALS (continued) | Member of the 1979 Panel of Actuaries and Economists to the Social Security Advisory Council, members of which were appointed by President Carter. |

Member of the Pension Benefit Guaranty Corporation (PBGC) 1977 Panel on Contingent Employer Liability Insurance.

Member of the 1977 Task Force of the Financial Accounting Standards Board (FASB) on Accounting and Reporting for Employee Benefit Plans.

Member of the Bureau of National Affairs (BNA) Pension Reporter Advisory Board (1981-1987).

Testified before Committees of the United States House and Senate on ERISA and related matters.

Testified before several Canadian Commissions on pension reform.

Frequent radio and television commentator on economic and social affairs.

# Claude Poulin
# Prior Expert Testimony

Malloy v. Ameritech, Case No. 98-488-GPM, filed in the United States District Court for the Southern District of Illinois.

Eaton v. Onan Corp., No. IP 97-814-C H/G, filed in the United States District Court for the Southern District of Indiana.

Mueller, et al. v. CBS, Inc f/k/a Westinghouse, Inc., Case No 00-CV-1431, filed in the United States District Court for the District of Maryland (Greenbelt); Docket No 99-CV-1310, filed in the United States District Court for Western District of Pennsylvania (Pittsburgh).

Cooper v. IBM Personal Pension Plan, Civil Action No. 99-829-GPM, filed in the United States District Court for the Southern District of Illinois.

Jamal Kifafi, et al. v. Hilton Hotels Retirement Plan, Civil Action No. 98-1517, filed in the United States District Court for the District of Columbia.

Janice C. Amara, et al. v. CIGNA Corp. and CIGNA Pension Plan, Civil Action No. 3:01-CV-2361(DJS) in the United States District Court for the District of Connecticut.

Engers, et al. v. AT&T and AT&T Management Pension Plan, Civil Action No. 98-CV-3660, in the United States District Court for the District of New Jersey (Newark)

# DUN & BRADSTREET CORPORATION PENSION PLAN
## Comparison of Early Retirement Reduction Factors

|  | Early Retirement Reduction Factors Based on Attachment Y to 1994 Plan | | |
|---|---|---|---|
| Age | **6.75%** | 6.00% | 5.00% |
| 64 | **10.3%** | 9.8% | 9.2% |
| 63 | **19.3%** | 18.4% | 17.2% |
| 62 | **27.2%** | 26.0% | 24.4% |
| 61 | **34.2%** | 32.8% | 30.8% |
| 60 | **40.4%** | 38.7% | 36.5% |
| 59 | **45.9%** | 44.1% | 41.6% |
| 58 | **50.8%** | 48.8% | 46.1% |
| 57 | **55.2%** | 53.1% | 50.3% |
| 56 | **59.1%** | 56.9% | 54.0% |
| 55 | **62.6%** | 60.4% | 57.4% |

Exhibit D

## DUN & BRADSTREET CORPORATION PENSION PLAN
### Comparison of Early Retirement Reduction Factors
### Impact of Mortality Table

| Age | 6.75% GAR94 | 6.75% GATT | 6.75% D&B | 6.00% GAR94 | 6.00% GATT | 6.00% D&B | 5.00% GAR94 | 5.00% GATT | 5.00% D&B |
|-----|-------|------|------|-------|------|------|-------|------|------|
| 64 | 9.2%  | 9.4%  | 10.3% | 8.7%  | 8.9%  | 9.8%  | 8.1%  | 8.2%  | 9.2%  |
| 63 | 17.4% | 17.7% | 19.3% | 16.5% | 16.8% | 18.4% | 15.3% | 15.6% | 17.2% |
| 62 | 24.8% | 25.1% | 27.2% | 23.5% | 23.9% | 26.0% | 21.8% | 22.2% | 24.4% |
| 61 | 31.3% | 31.7% | 34.2% | 29.8% | 30.2% | 32.8% | 27.7% | 28.1% | 30.8% |
| 60 | 37.2% | 37.7% | 40.4% | 35.4% | 35.9% | 38.7% | 33.0% | 33.5% | 36.5% |
| 59 | 42.5% | 43.0% | 45.9% | 40.5% | 41.0% | 44.1% | 37.8% | 38.4% | 41.6% |
| 58 | 47.3% | 47.8% | 50.8% | 45.1% | 45.7% | 48.8% | 42.2% | 42.8% | 46.1% |
| 57 | 51.6% | 52.1% | 55.2% | 49.3% | 49.9% | 53.1% | 46.2% | 46.8% | 50.3% |
| 56 | 55.4% | 56.0% | 59.1% | 53.1% | 53.7% | 56.9% | 49.9% | 50.5% | 54.0% |
| 55 | 59.0% | 59.5% | 62.6% | 56.6% | 57.2% | 60.4% | 53.3% | 53.9% | 57.4% |