# EXHBIT I

LEXSEE 2002 U.S. DIST. LEXIS 8054

**J. DOUGLAS LECHLEITER, Plaintiff v. THE PROCTOR AND GAMBLE DISTRIBUTING CO., CLAIROL INCORPORATED, and BRISTOL-MYERS SQUIBB COMPANY**

Civil No. 3:01CV2200(EBB)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2002 U.S. Dist. LEXIS 8054

**March 27, 2002, Decided
March 27, 2002, Filed**

**DISPOSITION:** [*1] Defendant's motion to dismiss granted. Judgment entered for defendant.

**LexisNexis(R) Headnotes**

**COUNSEL:** For J. DOUGLAS LECHLEITER, plaintiff: Thomas W. Bucci, Willinger, Willinger & Bucci, Bridgeport, CT.

For PROCTER & GAMBLE DISTRIBUTING CO, CLAIROL, INC, BRISTOL MYERS SQUIBB CO., defendants: Edward R. Scofield, Jonathan B. Orleans, Zeldes, Needle & Cooper, Bridgeport, CT.

For PROCTER & GAMBLE DISTRIBUTING CO, CLAIROL, INC, BRISTOL MYERS SQUIBB CO., defendants: Glenn M. Kurtz, White & Case, New York, NY.

**JUDGES:** ELLEN BREE BURNS, SENIOR UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** ELLEN BREE BURNS

**OPINION:**

### RULING ON MOTION TO DISMISS THE COMPLAINT

Plaintiff J. Douglas Lechleiter ("Plaintiff") brings this one-count Complaint against the three above-named Defendants, alleging a violation of Section 204(g) of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. Section 1054(g). He alleges that the sale of Clairol, Inc. ("Clairol"), his employer, by Bristol-Myers Squibb Co. ("BMS"), its parent company, to The Proctor and Gamble Distributing Co. ("P&G") violated this Section of ERISA, as former employees of BMS [*2] or its subsidiaries can no longer accrue certain disability benefits under the BMS Retirement Plan (the " BMS Plan").

### STATEMENT OF FACTS

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, this Motion. The facts are culled from the Complaint and the Plan.

Plaintiff, an employee of Clairol, alleges that he became incapacitated on January 1, 1999, and remains unable to work to date. He asserts that he receives long-term disability benefits under a health and benefit plan of BMS, Clairol's then-parent.

On or about November 16, 2001, BMS sold Clairol to P&G. Consequently, Clairol's employees, including Plaintiff, can accrue no further benefits under the BMS Plan, though they will receive all vested and accrued benefits for past service with BMS and its subsidiaries or affiliated corporations. Plaintiff and the other Clairol employees will not continue to accrue further benefits going forward because they are no longer employed by a BMS subsidiary or affiliated corporation. Specifically, under the BMS Plan, accruals are limited to "Hours of Service," which is defined in relation to "performance of duties [*3] for the Company," which in turn is defined as "Bristol-Myers Squibb and any subsidiaries or affiliated corporations.. . ."

Each of Clairol's employees, including Plaintiff, has become eligible to participate in the P&G benefit plans, which provide comparable benefits ("P&G Plans"). Plaintiff, however, alleges that there are some differences between the benefits he formerly received under the BMS Plan and those he will receive under the P&G plans, including the Retirement Plan. In particular, Plaintiff alleges that "periods of disability" were counted in determining retirement credits under the BMS Plan, but are not so counted in the P&G Plan.

Plaintiff alleges that the "transfer" of Plaintiff from the BMS Plan to the P&G Plan violates ERISA Section 204(g). Notwithstanding Plaintiff's use of the word "transfer", the allegations of the Complaint and the Plans themselves demonstrate that neither Plaintiff nor the Plaintiff's accrued benefits under the BMS Plan were "transferred" to the P&G Plan. Rather, Plaintiff remains a participant in the BMS Plan and has also become a participant in the P&G Plan.

Plaintiff does not allege that P&G is required to provide different benefits. Rather, [*4] Plaintiff essentially alleges that he is entitled to continue to accrue years of service at BMS, though he does not work for BMS or a subsidiary or affiliated corporation.

**LEGAL ANALYSIS**

**I. The Standard of Review**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. Spalding, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984). "The function of a motion to dismiss is merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof." Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984) *quoting* Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980).

Pursuant to a Rule 12(b)(6) analysis, the Court takes all well-pleaded allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996). *See also* Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99, [*5] (1957)(Federal Rules reject approach that pleading is a game of skill in which one misstep by counsel may be decisive of case). The proper test is whether the complaint, viewed in this manner, states **any** valid ground for relief. Conley, 355 U.S. at 45-46.

**II. The Standard As Applied**

**A. ERISA Section 204(g)**

"Not infrequently, the best guide to what a statute **means** is what it **says**." Stewart v. National Shopmen Pension Fund, 235 U.S. App. D.C. 122, 730 F.2d 1552, 1560-61, (D.C, Cir. 1984)(emphasis in original). Section 204(g) provides, in pertinent part:

> (1) The accrued benefit of a participant under a plan may not be decreased by an **amendment** of a plan, other than by **amendment** described in section 1082(c)(8) or 1441 of this title.
>
> (2) For purposes of paragraph (1) a plan **amendment** which has the effect of
>
> > (A) eliminating or reducing an early retirement benefit or a retirement-type subsidy (as defined in the regulations) or
>
> > (B) eliminating an optional form of benefits attributable to service before the **amendment** shall be treated as reducing accrued benefits. In the [*6] case of a retirement-type subsidy, the preceding sentence shall apply only with respect to a participant who satisfied (either before or after the **amendment**) the **preamendment** conditions for the subsidy.

> The Secretary of the Treasury may by regulations provide that this subparagraph shall not apply to a plan **amendment** described in subparagraph (B)(other than a plan **amendment** having an effect described in subparagraph (A).

It is beyond cavil, then, that Section 204(g) applies only to amendments, not otherwise approved by ERISA, which would change benefits. *See* Dooley v. American Airlines, Inc., 797 F.2d 1447, 1451 (7th Cir. 1986)("Thus, the essential elements of a Section 204(g) violation are (I) a plan amendment and (II) a reduction in benefits."); Richardson v. The Pension Plan of Bethlehem Steel Corp., 112 F.3d 982, 987 (9th Cir. 1997)("Congress did not state that any change would trigger [Section 204(g)]; it stated that any change by amendment would do so."(emphasis in original).

Plaintiff does not, and cannot allege, any amendment to the BMS Plan. Plaintiff alleges merely that, following the sale of Clairol, [*7] he is no longer able to accrue further years of service for BMS, based on his disability, pursuant to the BMS Plan. However, Plaintiff is not able to accrue these benefits due to the fact that he no longer works for BMS, a subsidiary thereof or an affiliated corporation. Because the sale of Clairol was in no way an amendment to the BMS Plan, his argument must fail.

The Court agrees with Defendants that Andes v. Ford Motor Co., 315 U.S. App. D.C. 120, 70 F.3d 1332 (D.C.Cir. 1995) is on point. There, Ford sold a subsidiary providing computer services to a third party, in a transaction characterized by the plaintiff as an "outsourcing." *Id.* at 1334. Following the sale, the employees of the subsidiary did not receive benefits they otherwise would have received under the Ford Plan. In particular, as here, the employees could no longer accrue years of service because they were no longer employed by Ford or a Ford subsidiary. The former employees brought suit under Section 204(g), alleging that the sale constituted an amendment to the Ford Plan. The court dismissed the action, holding that Section 204(g) is limited to "actual amendments" and that "it is clear that a [*8] sale of [a] subsidiary does not constitute an actual amendment." *Id.* at 1336. This Court agrees with such analysis and holds that the sale of Clairol was not an amendment to the BMS Plan.

### B. Disability Benefit/Retirement Subsidy

In Rombach v. Nestle U.S.A., Inc, 211 F.3d 190 (2d Cir. 2000), the Second Circuit rejected the plaintiff's argument, the same as the Plaintiff's herein, and specifically held that a disability plan was not subject to Section 204(g):

> It does not matter that [defendant] called the disability retirement pension portion of its plan a "pension benefit" and made it part of its master "pension plan." Its meaning and function remain clear; it was a benefit triggered by disability. And, under the plain language of the statute, "to the extent" that [defendant's] pension plan provides benefits that are triggered by disability, that portion of the plan is a welfare plan under Section 1002(1). As a result, [defendant] did not need to comply with Section 204(g) and did not violate ERISA when it modified it pension plan in 1990.

*Id.* at 194. *Accord* S. Rep. No. 98-575 at 30, *reprinted in* 1984 [*9] U.S.C.A.N. 2547, 2576 ("[a] qualified disability benefit . . . will not be considered a retirement-type subsidy"); T.D. 8360, 56 Fed. Reg 47524, 47531 (1991)("A benefit attributable to the period of a disability continues to be characterized as a qualified disability benefit. . . ."). This Court will follow this controlling authority and now holds that Plaintiff's disability benefits were not subject to Section 204(g).

### C. The Conditions of the Plan

Regardless of the fact that there was no amendment and that there is no accrued benefit at issue, Plaintiff's claim also fails because he cannot satisfy the BMS Plan condition for the disability benefit. Section 204(g) expressly applies only if the participant "satisfies (either before or after the amendment) the preamendment conditions for the subsidy." 29 U.S.C. 1054(g)(2). The BMS Plan counts periods of disability as "Hours of Service", which is defined in relation to "performance of duties for the Company", which in turn is defined as "Bristol-Myers Squibb Company, and any subsidiary or affiliated corporations." Here, there is no dispute that Plaintiff ceased to be employed by BMS and [*10] it subsidiaries and affiliated corporations as of November 16, 2001. Accordingly, Plaintiff cannot satisfy the express terms of the BMS Plan relating to the accrual of future benefits. For this reason, too, Plaintiff's claim fails.

### CONCLUSION

Even viewing the Complaint in Plaintiff's favor, his allegations fail to state a claim upon which relief may be granted. Resultingly, the Motion to Dismiss [Doc. No. 6] is hereby GRANTED. The Clerk is directed to close this case. Each party is to bear its own costs and fees.

SO ORDERED

ELLEN BREE BURNS

SENIOR UNITED STATES DISTRICT JUDGE

Dated at New Haven, Connecticut this 27Th day of March, 2002.

JUDGMENT - FILED MAR 28 02; EOD: 4/1/02

This action came on for consideration on the defendants' motion to dismiss, before the Honorable Ellen Bree Burns, Senior United States District Judge. The Court has reviewed all of the papers filed in conjunction with the motion and on March 27, 2002, a Ruling on Motion to Dismiss Complaint entered granting the relief.

It is therefore ORDERED and ADJUDGED that judgment is entered for the defendants and the case is closed.

Dated at New Haven, Connecticut, this 28th day of March,  [*11]  2002.