# EXHIBIT L

LEXSEE 2003 U.S. DIST. LEXIS 5664

**SONDRA MILLS v. STATE OF CONNECTICUT, JUDICIAL DEPARTMENT**

**NO. 3:00 CV 935 (SRU)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT**

**2003 U.S. Dist. LEXIS 5664**

**April 7, 2003, Filed**

**DISPOSITION:** Defendant's motion for summary judgment granted in part and denied in part.

**LexisNexis(R) Headnotes**

**JUDGES:** [*1] Stefan R. Underhill, United States District Judge.

**OPINIONBY:** Stefan R. Underhill

**OPINION:**

### RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Sondra Mills ("Mills") brings this action seeking damages and other relief under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, for claims of deprivation of rights secured by the laws of the United States. The defendant, the State of Connecticut, Judicial Department ("Judicial Department"), has moved for summary judgment on all of the remaining claims raised in Mills' complaint. For the reasons set forth below, the defendant's Motion for Summary Judgment (Doc. 32) is denied in part and granted in part.

*Background*

Mills, an African-American female, was hired by the Judicial Department on September 12, 1975 as a clerk typist. Dep. Of Sondra Mills (doc. # 36, Exh. B) at 18. Over the following twenty-four years, she remained an employee of the Judicial Department.

During her tenure at the Judicial Department, Mills applied for several vacant positions. Each time, she was not selected. On October 10, 1985, Mills filed a complaint with the Connecticut Commission on Human Rights [*2] and Opportunities ("CHRO") and the Equal Employment and Opportunity Commission ("EEOC") claiming that she was denied a promotion to Assistant Clerk on the basis of her race, in violation of Connecticut General Statutes § 46a-60(a)(1) and Title VII of the Civil Rights Act of 1964, as amended. Mills' CHRO complaint was dismissed in December 1986. Sometime prior to 1999, she received a notice of right to sue from the EEOC dismissing her complaint for lack of reasonable cause and informing her that she had 90 days from receipt of the notice to sue. Mills did not file a lawsuit in federal or state court.

In March 1987, Mills was promoted to the position of Assistant Clerk. Def's Statement of Material Facts, 6 9 (doc. # 34). A few months later, the position was changed to Court Room Clerk II. In 1993, Mills applied for the position of Caseflow Coordinator, but was not promoted to that position. She applied again in 1995 and 1999. The Caseflow Coordinator position is classified as a "professional" position, requiring six years of professional experience in public administration, court operations, law, or a related field. Completion of a college degree or an advanced degree in public administration, [*3] criminal justice, or a related field may be substituted for the required professional experience. Mills, a member of the non-professional Judicial Employee Unit, AFSCME, Local 749, was not considered to have the requisite professional or educational experience to qualify for the position. Beginning in 1997, Mills also made three attempts to be promoted to the position of Deputy Clerk. Each time, she was not selected.

On or about September 13, 1999, after she was denied the Caseflow Coordinator position for the third time, Mills filed a complaint with the CHRO and the EEOC alleging that she was not promoted on the basis of race in violation of Connecticut General Statute § 46a-60(a)(1) and Title VII. In that complaint, Mills stated that she had applied for positions throughout her tenure at the Judicial Department and was rejected in favor of a Caucasian candidate each time. On February 1, 2000,

Mills received a letter from the CHRO dismissing her complaint on the grounds that the Judicial Department had provided undisputed documentation to verify that the candidates selected for the Caseflow Coordinator position in July of 1999 had greater qualifications than Mills. The CHRO also [*4] found that any promotional opportunities denied in 1997 or before were untimely and not considered for the purposes of the 1999 complaint.

On May 2000, Mills filed this lawsuit, alleging discrimination in violation of Title VII and Connecticut General Statutes § § 46a-58(a), 46a-60. On September 13, 2001, the defendant filed a motion seeking judgment on the pleadings in favor of the defendant on Mills' state law claims. (Doc. # 25). On October 16, 2001, this court granted the defendant's motion and dismissed Count Two of the plaintiff's complaint without prejudice.

*Summary Judgment Standard*

Summary judgment is appropriate when the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the non-moving party and must resolve [*5] all ambiguities and draw all reasonable inferences against the moving party. Anderson, 477 U.S. at 255; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970); see also Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"), *cert. denied*, 506 U.S. 965, 121 L. Ed. 2d 359, 113 S. Ct. 440 (1992). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of her pleadings, but rather must present significant probative evidence to establish a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 327, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986); Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is [*6] summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991), *cert. denied*, 502 U.S. 849, 116 L. Ed. 2d 117, 112 S. Ct. 152 (1991); see also Suburban Propane v.

Proctor Gas, Inc., 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. Anderson, 477 U.S. at 249-50. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 247-48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." Id. at 248. [*7]

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. Celotex, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-23; *accord*, Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied by showing if it can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. Celotex, 477 U.S. at 323.

*Discussion*

1. Timeliness of Plaintiff's Title VII Claims

As a preliminary matter, we must determine which claims made by Mills are timely for the purposes of bringing a Title VII claim. The statute's requirements for timely filing are clear and unequivocal:

> [In the case of a claim for] an unlawful [*8] employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the

State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

42 U.S.C. § 2000e-5(e)(1). This statutory provision "functions as a statute of limitations in that discriminatory incidents not timely charged before the EEOC will be time-barred upon the plaintiff's suit in district court." Quinn v. Green Tree Credit Corp., 159 F.3d 759, 765 (2d Cir. 1998).

Mills filed a complaint with the CHRO and the EEOC in October 1985 regarding Assistant Clerk promotion applications made in 1976 and 1985. On September 13, 1999, Mills filed the [*9] CHRO and EEOC complaint on which this lawsuit is based. Thus, for the purposes of this lawsuit, only incidents that occurred within three hundred days before September 13, 1999- that is, on or after November 15, 1998- are considered timely. With this in mind, the discrimination alleged to have occurred in 1976 and 1985, when Mills applied for and was denied the Assistant Clerk promotion, is well beyond this three-hundred-day limit. Similarly, the alleged discrimination that accompanied her failed bid for the Caseflow Coordinator position in 1993 and 1995, and the Deputy Clerk position in 1997, are also beyond the statutory period. Only promotion denials that occurred after November 15, 1998 are eligible for review in this lawsuit. Of the claims presented in Count One of Mills' complaint, only the denial of the Caseflow Coordinator position in 1999 and the Deputy Clerk position in 1999 fall within the statutory period.

Mills argues that the denials of promotions prior to November 1998 should be considered by this court under the continuing violation doctrine, which provides an exception to the statutory period specified under 42 U.S.C. § 2000e-5(e)(1). This [*10] argument is unpersuasive. "The continuing-violation exception extends the limitations period for all claims of discriminatory acts committed under an ongoing policy of discrimination even if those acts, standing alone, would have been barred by the statute of limitations." Id. at 765 (internal citations omitted). It is well settled in this circuit that "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." Lambert v. Genesee Hosp., 10 F.3d 46, 53 (2d Cir.1993), cert. denied, 511 U.S. 1052, 128 L. Ed. 2d 339, 114 S. Ct. 1612 (1994) (internal citations omitted). The continuing violation exception applies only where there is evidence of *specific* discriminatory practices, id., and "a relationship" between such actions and an invalid,

underlying policy. Connecticut Power & Light Co. v. Sec'y of U.S. Dep't of Labor, 85 F.3d 89, 96 (2d Cir. 1996).

Moreover, recent caselaw on this issue suggests that promotion denials "constitute separate and distinct acts that are not continuing in nature." Roberts v. Judicial Dep't, 2001 U.S. Dist. LEXIS 14354, 2001 WL 777481 *4 (D. Conn. 2001), [*11] ; see also Choi v. Chemical Bank, 939 F. Supp. 304, 311 (S.D.N.Y. 1996) (the continuing-violation exception does not apply to discrete incidents of nonpromotion). Accordingly, to avoid summary judgment, Mills must produce evidence that the promotion denials resulted from some underlying policy or mechanism of discrimination. See Lightfoot v. Union Carbide Corp., 110 F.3d 898, 907 (2nd Cir. 1997); Lambert, 10 F.3d at 53. The incidents alleged by Mills in her pleadings and supporting documents do not evidence the required discriminatory policy. Although the candidates who were promoted were Caucasians, Mills has presented no evidence revealing a policy of discrimination in the promotion process. The application procedures detailed by the Judicial Department and by Mills in her complaint and deposition indicate that the promotion process was conducted with considerable attention towards fairness and merit. The available positions had minimum qualifications that each candidate was required to meet or exceed in order to be promoted. See, e.g., Def. Stat. Of Material Facts (Doc. # 34), Exh. 1, Att. A. Candidates were required to complete applications detailing [*12] their interest in the position, qualifications, and current job responsibilities. Id. Exh. 6, Att. A. Many of the positions required completion of a scored written examination and an oral interview. Interviews were conducted by a panel that often included an affirmative action officer, responsible for ensuring that the process was conducted in a fair and objective manner. See, e.g., id. Exh. 6 (Aff. of Louis P. Fagnani, Jr.); id. Exh. B., Att. B. Furthermore, candidates submitted resumes that did not provide any indication of race or ethnicity. Id. Exh. 6, Att. C; id., Exh. 6, Att. D.

In sum, the alleged incidents dating from 1976 to 1999 do not constitute a series of discriminatory practices undergirded by a discriminatory policy, as required to satisfy the continuing-violation exception. Consequently, Mills' claims that pre-date November 1998 are time-barred under Title VII. The only claims that are timely, and thus, eligible for consideration by this court are Mills' claims relating to the 1999 denial of the promotion to Deputy Clerk and the 1999 denial of the promotion to Caseflow Coordinator.

2. Exhaustion of Administrative Remedies

The defendant argues [*13] that Mills' claims alleging discrimination in the denial of a promotion to

Caseflow Coordinator in 1993, 1995, and 1999 are ineligible for consideration by this court because they were not raised in her EEOC complaint. "A district court only has jurisdiction to hear Title VII claims that either are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is 'reasonably related' to that alleged in the EEOC charge." Butts v. New York Dep't of Hous. Preservation & Dev., 990 F.2d 1397 (2d Cir. 1993). Mills asserts that the claims regarding the denial of a promotion to the position of Caseflow Coordinator is reasonably related to the allegations raised in her 1999 EEOC complaint. The Second Circuit has recognized that there are "situations where claims not alleged in an EEOC charge are sufficiently related to the allegations in the charge that it would be unfair to civil rights plaintiffs to bar such claims in a civil action." Id. at 1402. One such situation "is essentially an allowance of loose pleading. Recognizing that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary [*14] purpose is to alert the EEOC to the discrimination that a plaintiff claims she is suffering, we have allowed claims not raised in the charge to be brought in a civil action where the conduct complained of would fall within the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" Id.

Mills, proceeding without the benefit of legal counsel, filed a complaint with the CHRO and the EEOC on September 13, 1999. The complaint alleged that Mills had applied for the position of Deputy Clerk in 1999 and was rejected. Although Mills did not allege discrimination with regard to her 1999 application for the position of Caseflow Coordinator, it is reasonable to conclude that an EEOC investigation of the Deputy Clerk application would have included an examination of other promotion opportunities for which Mills applied. Thus, the claims of discrimination alleged in Mills' application for promotion to Caseflow Coordinator will be considered by this court.

3. Analysis of Plaintiff's Title VII Claims

After applying the foregoing analysis, the claims that remain to be addressed on the merits are plaintiff's claims against the Judicial [*15] Department under Title VII for race discrimination in connection with the failure to promote her to Deputy Clerk and to Caseflow Coordinator in 1999. These claims are analyzed using the three-step, burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973). See Sorlucco v. New York City Police Dep't, 888 F.2d 4, 6-7 (2d Cir. 1989). Mills must first establish a prima facie case by showing (1) that she was member of a protected class, (2) that she was qualified for the position for which she applied, and (3) that she was denied the position (4) in circumstances giving rise to an inference of discrimination. See Brown v. Coach Stores, 163 F.3d 706, 709-10 (2d Cir. 1998); Austin v. Ford Models, Inc., 149 F.3d 148, 152 (2d Cir. 1998). Defendants must then articulate "a legitimate, nondiscriminatory reason" for giving the positions to the successful applicants. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000). If such a reason is provided, Mills bears the ultimate burden [*16] of proving that it is a pretext for illegal discrimination. See id.

It is clear on the face of the pleadings that Mills has established a prima facie case sufficient to shift the burden to the defendant. In response, the defendant states that there were legitimate, non-discriminatory reasons for not promoting Mills to the positions of Caseflow Coordinator and Deputy Clerk. Defendants contend that Mills did not meet the minimum qualifications for the Caseflow Coordinator position and was not the most qualified applicant for the Deputy Clerk position.

a. Caseflow Coordinator

The job specification in effect in 1999 for the position of Caseflow Coordinator required that a candidate have six years of "professional experience in public administration, court operations, law or a related field." Def. Stat. of Material Facts (Doc. # 34), Exh. 2, Att. A. Candidates were permitted to substitute college credit, a bachelor's degree, or an advanced degree in law, Public Administration, Criminal Justice or a related field for the required professional experience. Id.

The State contends that, at the time of her application, Mills was a member of a non-professional collective bargaining [*17] unit, and thus did not have "professional" experience as required for the Caseflow Coordinator position. Section 5-270(c) of the Connecticut General Statutes defines a professional employee as:

(1) Any employee engaged in work (A) predominantly intellectual and varied in character as opposed to routine mental, manual, mechanical or physical work; (B) involving the consistent exercise of discretion and judgment in its performance; (C) of such a character that the output produced or the result accomplished cannot be standardized in relation to a given time period; (D) requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual

instruction and study in an institution of higher learning or a hospital, as distinguished from a general academic education or from an apprenticeship or from training in the performance of routine mental, manual or physical processes; or (2) any employee who has completed the courses of specialized intellectual instruction and study described in subsection (c)(1)(D) and is performing related work under the supervision of a professional person to qualify himself to become [*18] a professional employee as defined in subsection (c)(1).

Based on the definition of a "professional employee" provided by the statute, it is by no means clear that Mills' lengthy tenure with the Judicial Department was limited to non-professional activities. As Court Room Clerk II, Mills worked in the courtroom, provided assistance to litigants and counsel, performed office duties, and served as a liaison between judicial officers and courthouse staff. See Pl. Local Rule Stat., Exh. B, p. 29. In order to perform these duties, Mills was required to learn the intricacies of courtroom rules and procedures and case management, and charged with exercising discretion when interacting with the public. Her duties were not, as the defendant suggests, unequivocally "non-professional." Indeed, whether her experience should be characterized as professional or non-professional is a material fact that is very much in dispute, and therefore, is appropriate to reserve for decision by the jury.

### b. Deputy Clerk

Although Mills met the minimum qualifications for the position of Deputy Clerk, ultimately, she was rejected in favor of a candidate deemed more qualified. The four candidates [*19] for the position were evaluated on their work experience, educational experience, and performance in an interview before a panel of three interviewers, one of whom was an affirmative action officer. Def. Stat. of Material Facts (Doc. # 34), Exh. 2, Depo. of Louis P. Fagnani, Jr. Mills received the lowest score in the interview and had no prior experience in small claims, the area for which the position was to be filled. Id. In contrast, the successful applicant garnered the highest interview score, was a licensed attorney, and had experience in small claims. Id.

The Judicial Department has identified legitimate, non-discriminatory reasons for its promotion decisions. This shifts the burden to Mills to prove that these reasons were pretextual and that her race was the true basis for the defendant's failure to promote her. A reasonable jury could conclude that the defendant's reasons are pretextual.

Mills's deposition testimony suggests that promotion opportunities were not uniformly communicated throughout the entire Judicial Department, a fact that ensured that the applicant pool for available positions would be limited to candidates who were specifically informed of the [*20] available job opportunity. Loc. Rule 9(c)(1) Stat., Exh. 3, p. 42. Moreover, the interview component of the evaluation process carried great potential for subjectivity. Judicial Department officials contend that the interviews were conducted fairly, a fact underscored by the presence of an affirmative action compliance officer at all of the interviews. Loc. Rule 9(c)(1) Stat., Exh. 4, p. 2, 6 6. However, the same officials concede that the participating affirmative action officer's input "did not count towards a candidate's total score." Id. Mills also argues that she was qualified for the position because she had temporarily assumed and satisfactorily performed the duties of Deputy Clerk for almost a year. Pl. Brief in Opp., at 1. Finally, Mills asserts that the position of Deputy Clerk has *never* been given to a minority. Id. at 2.

Although each of these assertions individually may not rise to the level necessary to demonstrate that the defendant's decision was pretextual, taken in the aggregate, a reasonable jury could find that they support Mills' claim that Judicial Department's rationale was merely a pretext for racial discrimination. In order to survive a motion [*21] for summary judgment, a plaintiff must demonstrate that genuine issues of material fact exist. That is, the plaintiff must present contradictory evidence "such that a reasonable jury could return a verdict" in her favor. Anderson, 477 U.S. at 248. Here, Mills has established a prima facie case for discrimination and has presented sufficient circumstantial evidence that a reasonable jury could find that the defendant's rationale was a pretext. It is well settled that, if the jury disbelieved the defendant's rationale, the jury reasonably could "infer the ultimate fact of discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000). Accordingly, genuine issues of material fact exist regarding the circumstances of Mills' application for the position of Deputy Clerk, and those issues should be reserved to the jury.

### CONCLUSION

For the foregoing reasons, the defendant's Motion for Summary Judgment (Doc. # 32) is DENIED with respect to the plaintiff's claims relating to the 1999 applications for the positions of Caseflow Coordinator and Deputy Clerk, and GRANTED with respect to plaintiff's [*22] other claims.

It is so ordered.                                                    Stefan R. Underhill

Dated at Bridgeport, Connecticut this    day of April      United States District Judge
2003.