ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARY McCARTHY, CLAYTON BOROWSKI, individually and on behalf of others similarly situated, and individually, GAIL ADAMS, DONALD BAKERT, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE DUN & BRADSTREET CORPORATION, THE DUN & BRADSTREET CORPORATION RETIREMENT ACCOUNT, and THE DUN & BRADSTREET CAREER TRANSITION PLAN, <br><br> Defendants. | CIVIL ACTION NO. 3:03 CV 0431 (SRU) <br><br><br><br><br> JANUARY 11, 2005 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
(1) CONSENT MOTION TO VACATE JANUARY 4, 2005 ORDER GRANTING
PLAINTIFFS' MOTION TO AMEND AND FOR RECONSIDERATION OF SAME, AND
(2) OPPOSITION TO PLAINTIFFS' MOTION TO AMEND**

A.    **Plaintiffs' Motion to Amend Gave the Mistaken Appearance of Being
Unopposed and Was Granted Before Defendants Could File Their
Opposition, Therefore, The Court Should Vacate the Order and Reconsider
the Issue in Light of Defendants' Timely Opposition.**

Pursuant to D. Conn. Rule 7(c), Defendants respectfully request that the Court reconsider

its January 4, 2005 order granting Plaintiffs leave to amend the Complaint. Plaintiffs filed a

"Motion to Join Party Plaintiffs and Amend Complaint" ("Pls.' Mot. to Amend.") on December

21, 2004, which was granted before Defendants' time to respond had expired. [1] The motion was

likely granted in this manner because it gave the appearance of being unopposed. Specifically,

the motion stated that Plaintiffs were seeking to add additional parties, dismiss three counts of the Complaint, and "to correct a typographical error and otherwise clarify the allegations of the remaining count in the complaint." Pls.' Mot. to Amend. at 1. The motion goes on to state that, "The plaintiffs represent that the addition of the parties is unopposed and that the changes to the remaining count are necessary to correct a typographical error in the interest rate stated and to clarify the allegations of the complaint in light of plaintiffs' expert report and testimony concerning the relationship between interest rates and mortality tables when seeking actuarial equivalence." Id. The Motion to Amend does not otherwise indicate that Plaintiffs have proposed to make substantive amendments to the Complaint.

While Defendants certainly did not oppose the addition of individual plaintiffs, the dismissal of Counts 1-3, and the correcting of a typographical error in the Complaint, Defendants have vehemently objected to Plaintiffs' late attempt to add a new claim challenging the Master Retirement Plan's (the "Plan") use of certain mortality assumptions.[2]  Therefore, Defendants oppose Plaintiffs' Motion to Amend in that regard, and respectfully submit that that motion should not have been granted without giving Defendants an opportunity to file their opposition.[3] Defendants thus respectfully request that the Court (1) vacate its January 4, 2005 Order granting

---

[1]    As the docket indicates, Defendants' time to respond did not expire until January 11, yet the Court granted the motion on January 4.

[2]    Defendants objected to the introduction of new claims, specifically, challenges to the reasonableness of the mortality assumptions, in Mr. Brown's deposition. See infra at 6.

[3]    In telephone communications with counsel for Defendants, Plaintiffs' counsel has expressly stated that he does not oppose this motion to vacate and reconsider the Motion to Amend given that Defendants did not have the opportunity to file an opposition before the Motion to Amend was granted. Furthermore, Plaintiffs' counsel has indicated that he did not intend to convey to the Court that the Motion to Amend was unopposed in its entirety.

the Motion to Amend and reconsider[4] the issue in light of Defendants' opposition to the Motion

to Amend as set forth below, and (2) deny Plaintiffs' Motion to Amend.

> **B.**    **On Reconsideration, the Court Should Deny Plaintiffs' Eleventh-Hour Attempt to Add a New Claim Challenging the Plan's Mortality Assumptions.**

Federal Rule of Civil Procedure 15(a) provides that a party may amend a pleading "only

by leave of court or by written consent of the adverse party; and leave shall be freely given when

justice so requires." Fed. R. Civ. P. 15(a).  Nevertheless, "[w]hile [the Rule] provides that leave

to amend should "be freely given," "it is within the Court's discretion 'to deny leave to amend

where the motion is made after an inordinate delay, no satisfactory explanation is offered for the

delay, and the amendment would prejudice the defendant. The burden is on the party who wishes

to amend to provide a satisfactory explanation for the delay.'" Victor G. Reiling Assocs. and

Design Innovation, Inc., No. 3:02CV222(JBA), 2004 WL 2381719, at *4 (D. Conn. Sept. 30,

2004)(attached hereto as Exh. A)(citing Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d

Cir.1990)).  See also Jin v. Metropolitan Life Ins. Co., 310 F.3d 84, 101 (2d Cir. 2002) ("Leave

to amend should be freely granted, but the district court has the discretion to deny leave if there is

a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing

party."); Spanierman Gallery, PSP v. Love, 320 F. Supp. 2d 108, 113 (S.D.N.Y. 2004) (several

---

[4]    Motions for reconsideration should be granted where "the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" Martin v. Dupont Flooring Systems, Inc., No. 301CV2189SRU, 2004 WL 1171208, at *1 (D. Conn. May 25, 2004) (attached hereto as Exh. B) (citing Shrader v. CSX Transportation, Inc., 70 F.3d 255, 257 (2d Cir.1995)).  Since the Court's granting of the motion appears to have been premised on the belief that the motion was unopposed, the Court should reconsider its ruling to "prevent manifest injustice." U.S. v. Mills, No. 3:03CR00032(DJS), 2004 WL 57282, at *1 (D. Conn. Jan. 8, 2004) (attached hereto as Exh. C).

factors . . . permit a Court to deny [a motion to amend], in spite of the permissive standard: undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.") (citations omitted); Augustus v. MSG Metro Channel, 217 F. Supp. 2d 458, 464 (S.D.N.Y. 2002) ("The most common reasons [why] courts have denied leave to amend are that amendment will result in undue prejudice to the other parties, it is unduly delayed, or it is offered in bad faith or for a dilatory purpose.") (citations omitted).

In addition, courts in the Second Circuit routinely deny motions to amend that are filed during summary judgment briefing, after discovery has closed. As this Court has recognized, "The classic situation where courts deny a leave to amend arises when a party files a Rule 15(a) motion after discovery has been completed or the nonmoving party has filed for summary judgment." Messier v. Southbury Training Sch., No. 3:94-CV-1706, 1999 WL 20907, at *4 (D. Conn. Jan. 5, 1999) (attached hereto as Exh. D) . See also Clark v. World Cable Communications, Inc., 166 F.3d 1199, **3 (2d Cir. 1998) (affirming district court's denial of motion to amend complaint to add new count where discovery had closed and where permitting new count "would require additional discovery"); Juncewicz v. Patton, No. 01-CV-0519E(SR), 2002 WL 31654957, at *6 (W.D.N.Y. Oct. 8, 2002) (attached hereto as Exh. E) (denying motion to amend complaint to include new claim where amendment was sought two months after close of discovery and plaintiffs "offer no adequate justification" for the delay) (citing Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990) (affirming denial of leave to amend

complaint where plaintiff offered no satisfactory explanation for moving to amend one month after discovery had been completed and after defendant had moved for summary judgment)).

The original Complaint in this case was filed on March 11, 2003. Plaintiffs amended the Complaint once (the First Amended Complaint ("FAC")) on June 30, 2003 to include a claim for severance benefits. The First Amended Complaint thus set forth the following four claims: Count One for severance benefits to which Plaintiffs were allegedly entitled under the severance plan; Count Two for alleged interference with protected benefits under ERISA Section 510 ("Section 510 claim"); Count Three for alleged failure to include an actuarial reduction table in the Master Retirement Plan summary plan description; and Count Four for allegedly applying an unreasonable rate of interest (6.75 percent) to actuarially reduce early retirement benefits. In neither the original Complaint nor the FAC did Plaintiffs even reference the Master Retirement Plan's mortality assumptions, much less challenge those assumptions as unreasonable. Rather, Plaintiffs challenged only the reasonableness of the interest rate used in the Plan.

On September 18, 2003, Defendants moved to dismiss all but the Section 510 claim (Count 2) and, on February 27, 2004, the Court held a hearing on the motion. In opposing the motion to dismiss, Plaintiffs again never raised any challenge to the Plan's mortality assumptions. During the hearing, the Court indicated that it did not believe it would be appropriate to resolve the interest rate issue (Count 4) on a motion to dismiss and instead ordered the parties to conduct expert discovery with respect to that issue, to be followed by the filing of a summary judgment motion. Because the reasonableness of mortality assumptions had never been raised in the Complaint or otherwise appropriately made an issue in the case, Defendants'

discovery focused exclusively on the reasonableness of the Plan's interest rate – the only question at issue in Count 4.

The first time that the issue of mortality assumptions came up was obliquely in Plaintiffs' expert report during discovery on Count 4.[5]  Even then, however, Plaintiffs did not move to amend the Complaint to include such allegations.  Therefore, when Plaintiffs' counsel attempted to discuss mortality assumptions during the October 6, 2004 deposition of Defendants' expert, Edward Brown, counsel for Defendants objected to the appropriateness of such questions:

> I object.  The witness is not here to express any opinion on mortality tables.  I think, therefore, that exceeds the scope of the report.  I'll let you go on with it a little bit.  At some point I have [to move for] a protective order if you turn it into a deposition not about the opinion the witness has been retained to testify on, but on a separate issue that is not mentioned in the complaint, not mentioned at the motion to dismiss stage that led to this round of briefing, and is not in the case.

Brown Dep. at 74 (attached hereto as Exh. F)

After the completion of expert discovery on October 6, Defendants, on November 19, filed their motion for summary judgment as to Count 4.  Shortly thereafter, on November 30, the Court issued a ruling granting the motion to dismiss.  Plaintiffs now found themselves in a precarious situation.  They had one count remaining[6] – Count 4 on the interest rate issue – and expert discovery had confirmed that there was no merit to the claim that the Plan's interest rate was unreasonable.  No doubt as a result of this realization, Plaintiffs, after nearly two years of

---

[5]    Plaintiffs' May 3, 2004 expert report stated, "I also noted that the mortality rate used by the Plan in the calculation of the actuarial reduction factors is an old table that overestimates the mortality rates currently applicable to the affected plan participants."  Expert Disclosure of C. Poulin at 5 ¶ 18.  While the report opined on the reasonableness of the Plan's interest rate, the report never similarly stated that the Plan's mortality assumptions were unreasonable.

litigation and over two months after discovery had closed, moved to add a new claim challenging the alleged unreasonableness of the Plan's mortality assumptions.    Specifically, Plaintiffs' proposed Second Amended Complaint alleges that:

> In violation of ERISA Section 206(a) and 26 C.F.R. 1.411 (a)-4T the M[aster] R[etirement] P[lan] assumes an unreasonably high rate of interest <u>and an unreasonably high rate of mortality when calculating early retirement benefits</u>, . . ..  The difference between the early retirement benefits that the plan pays and the early retirement benefits that the plan would pay using a reasonable rate of interest <u>and a current mortality table</u> is a prohibited forfeiture of benefits . . ..

Second Amended Complaint ¶ 84 (emphasis added).

Plaintiffs' attempt to add these eleventh-hour allegations, after years of litigation, motion briefing, and discovery, is not only untimely, but would unfairly prejudice Defendants, who have long proceeded with their defense of Count Four on the understanding that Plaintiffs were challenging only the Plan's interest rate and no other assumption.    At a minimum, if the amendment were permitted, the Court would have to reopen discovery, Defendants would have to obtain an expert to provide additional testimony on the mortality assumptions issue, and the parties would have to submit further summary judgment briefing on that issue, thereby short-circuiting the process that this Court established in February 2004 to resolve Count 4. Defendants should not be put to this burden, particularly as Plaintiffs have offered <u>no</u> excuse – much less a satisfactory one – for their substantial delay.  Plaintiffs' Motion to Amend should therefore be denied.

### C.    Conclusion.

---

[6]    After the ruling on the motion dismiss, Plaintiffs voluntarily dismissed Count 2.

For the foregoing reasons, Defendants respectfully request that that Court  (1) VACATE

its January 4, 2005 Order granting the Motion to Amend and RECONSIDER the issue in light of

Defendants' Opposition to the Motion to Amend, and (2) DENY Plaintiffs' Motion to Amend.

DATED:  January 11, 2005

Respectfully submitted,
THE DEFENDANTS
THE DUN & BRADSTREET CORPORATION,
THE DUN & BRADSTREET CORPORATION
RETIREMENT ACCOUNT, and
THE DUN & BRADSTREET CAREER
TRANSITION PLAN

By: _____

Patrick W. Shea (ct07071)
Sandra K. Lalli (ct25805)
Paul, Hastings, Janofsky & Walker, LLP
1055 Washington Boulevard
Stamford, CT  06901-2217
Telephone:  (203) 961-7400
Facsimile:  (203) 359-3031
patrickshea@paulhastings.com

Counsel for the Defendants

## CERTIFICATE OF SERVICE

This is to certify that on this 11th day of January, 2005, a copy of the foregoing

DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR (1) CONSENT MOTION TO

VACATE JANUARY 4, 2005 ORDER GRANTING PLAINTIFFS' MOTION TO AMEND

AND FOR RECONSIDERATION OF SAME, AND (2) OPPOSITION TO PLAINTIFFS'

MOTION TO AMEND was served by overnight express mail on the following counsel of record:


Thomas G. Moukawsher, Esq.
Moukawsher & Walsh, LLC
21 Oak Street, Suite 100
Hartford, Connecticut 06106


Sandra K. Lalli

STM/288566.1

-i-