Not Reported in F.Supp.2d
2004 WL 1171208 (D.Conn.)
**(Cite as: 2004 WL 1171208 (D.Conn.))**

Page 1

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Connecticut.

Michelle MARTIN, Plaintiff,
v.
DUPONT FLOORING SYSTEMS, INC. and Dupont Commercial Flooring Systems, Inc., Defendants.

**No. Civ.A. 301CV2189SRU.**

May 25, 2004.

*RULING ON PLAINTIFF'S MOTION FOR RECONSIDERATION*

UNDERHILL, J.

**\*1** On April 9, 2004, Michelle Martin ("Martin") filed a motion for reconsideration of the March 31, 2004 ruling granting the motion for summary judgment filed by Dupont Flooring Systems, Inc. and Dupont Commercial Flooring Systems, Inc. ("Dupont"). [FN1] Martin files her motion pursuant to Rule 7(c) of the Local Rules of Civil Procedure for the United States District Court for the District of Connecticut. For the reasons discussed below, Martin's motion for reconsideration (doc. # 62) is DENIED.

> FN1. In her motion for reconsideration, Martin also requested additional time to further argue the issues raised by the court's ruling. Because Martin filed a reply on May 10, 2004, thirty-five days after receiving the court's ruling on the summary judgment motion, that request for extension of time will be considered moot.

Rule 7(c) provides that:
> Motions for reconsideration shall be filed and served within ten (10) days of the filing of the decision or order from which such relief is sought, and shall be accompanied by a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order.

L.R. Civ. P. 7(c) (D.Conn.). Rule 7(c), previously codified under Rule 9(e), requires the moving party to meet "stringent standards." *Gold v. Dalkon Shield Claimants Trust,* No. 5:82-CV-383 (EBB), 1998 WL 422900 at \*2 (D.Conn. July 16, 1998). Motions under Rule 7(c) are "as a practical matter the same things as motions for amendment of the judgment under Fed.R.Civ.P. 59(e) ... and must be treated the same as a motion under Rule 59." *City of Hartford v. Chase,* 942 F.2d 130, 133 (2d Cir.1991). Such motions "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transportation, Inc.,* 70 F.3d 255, 257 (2d Cir.1995).

In order to prevent "wasteful repetition of arguments already briefed, considered and decided," a motion for reconsideration is granted only in a narrow range of circumstances. *Schonberger v. Serchuk,* 742 F.Supp. 108, 119 (S.D.N.Y.1990). The only permissible grounds on which to grant a motion for reconsideration are: (1) an intervening change in the law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice. *Doe v. New York City Dep't of Social Services,* 709 F.2d 782, 789 (2d Cir.), *cert. denied sub nom. Catholic Home Bureau v. Doe,* 464 U.S. 864 (1983); *Gold,* 1998 WL 422900 at \*2.

Martin appears to rely on the third of these grounds, arguing that the court overlooked: (1) ambiguities in Martin's employment contract; (2) Dupont's responsiveness to questions from Martin and promises to Martin; (3) Martin's alleged automatic entitlement to a salary increase; (4) an evaluation of the credibility of Dupont witnesses; (5) Martin's alleged detrimental reliance; (6) Martin's misunderstanding of the term "closed out;" (7) Martin's allegations of sex discrimination and disparate treatment; (8) Martin's allegations of constructive discharge; and (9) Martin's allegations of disparate impact. None of these arguments has merit.

**\*2** A motion for reconsideration "is not simply a second opportunity for the movant to advance arguments already rejected." *Shrader,* 70 F.3d at 257. Martin presents no new evidence nor controlling precedent to suggest that reconsideration in this case is warranted. With regard to Martin's contract claim, in my March 31, 2004 ruling, I explained that the evidence presented by Martin demonstrated that the only possible lapses in DuPont's contractual obligations to Martin included its delay in

Not Reported in F.Supp.2d  
2004 WL 1171208 (D.Conn.)  
**(Cite as: 2004 WL 1171208 (D.Conn.))**

Page 2

considering her for a raise, failure to provide her with training, and delay in outlining the terms of her compensation. Assuming that DuPont exhibited each of these shortcomings, Martin must also show that she suffered resulting damages in order to make out a legitimate breach of contract claim. *Chem-Tek, Inc. v. General Motors Corp.,* 816 F.Supp. 123, 131 (D.Conn.1993). Drawing all inferences in a light most favorable to Martin, she has failed to prove that she suffered damages from any of the possible instances of breach.

Martin presented, and continues to present, insufficient evidence to support a conclusion that DuPont engaged in any additional breach. Although a DuPont employee indicated to Martin that a job reached "level 6" when it was "closed out," Martin has presented no evidence to suggest that her misinterpretation of that word is attributable to DuPont, nor that the meaning of the term has changed over time. Similarly, as noted in the March 31, 2004 ruling, Martin presents inadequate evidence that she was entitled to an automatic raise or that she detrimentally relied on her employment offer from DuPont. The bottom line is clear. Martin has failed to make a sufficient breach of contract claim beyond those claims I have previously recognized and found to be inadequate for want of damages, and therefore her breach of contract claim cannot survive summary judgment.

Likewise, as discussed in the March 31, 2004 ruling, in order for Martin to make a legitimate claim for promissory estoppel, negligent misrepresentation or fraud, she must show both that she relied on statements by DuPont and that she suffered a loss as a result. *See Cyberchron Corp. v. Calldata Sys. Dev.,* 47 F.3d 39, 44 (2d Cir.1995); *Foy v. Pratt & Whitney Group,* 127 F.3d 229, 233 (2d Cir.1997); *Law v. Camp,* 116 F.Supp.2d 295, 308 (D.Conn.2000). Prior to summary judgment, Martin identified five instances of potential detrimental reliance. Each of these arguments was considered and rejected in the March 31, 2004 ruling. The only argument not specifically addressed in the earlier ruling dealt with the numbers of jobs possibly available to Martin in her field. Martin notes that she had no trouble securing job offers after leaving DuPont, but this fact is irrelevant to the numbers of jobs available to Martin before or during her stint with DuPont, the only times during which she could possibly have suffered detrimental reliance. Ultimately, Martin presents the court with no additional arguments nor any other reason for reevaluating its original decision.

**\*3** As was made clear in the March 31, 2004 ruling, in order to establish a *prima facie* case for sex discrimination under Title VII, a plaintiff must show that she suffered an adverse employment action. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506-07 (1993); *see also Rosen v. Thornburgh,* 928 F.2d 528, 532 (2d Cir.1991). An adverse employment action is a "materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.,* 202 F.3d 636, 640 (2d Cir.2000) (internal citations omitted).

The fact that Martin may have been "treated differently than her male colleagues" does not stand alone to create a legitimate claim for sex discrimination. (Martin Motion for Reconsideration at 11.) Martin correctly points out that a "material decrease in earning potential may qualify as an adverse employment action," but fails to point to evidence on which reasonable jurors could conclude that Martin suffered such injury. (Martin Motion for Reconsideration at 12.) Assuming that Martin had a hard time securing labor to complete the jobs she sold, there is no evidence on which a jury could find that such difficulties impacted her earnings. As Martin is eager to indicate, she was employed as a salaried employee, not a commissioned employee. From the time Martin began working with DuPont until the time she left, her salary only went up. If the argument relates to her bonus compensation, that territory is well covered in the March 31, 2004 ruling. Martin wants to argue that her transfer caused her to lose overtime compensation, but Martin makes no connection at all between securing labor and her transfer.

Martin also argues that her supervisor's effort to obtain all sales referrals amounted to an adverse employment action. Absent any evidence that referrals were *actually* monopolized by Martin's supervisor *and* that such behavior damaged Martin's earning potential, this evidence has no bearing on whether Martin suffered an adverse employment action. Failure to provide Martin with company policies and speculation about how much more money Martin could have made with additional training are equally unpersuasive.

Martin makes no additional arguments on the constructive discharge claim. The case law to which Martin cites does not change the legal axiom that constructive discharge necessitates a showing of working conditions that are "so difficult or unpleasant

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2004 WL 1171208 (D.Conn.)  
**(Cite as: 2004 WL 1171208 (D.Conn.))**

Page 3

that a reasonable person in the employee's shoes would have felt compelled to resign." *Chertkova v. Connecticut Gen. Life Ins. Co.,* 92 F.3d 81, 89 (2d Cir.1996). Martin has failed to provide the court with evidence that an employee in Martin's situation had no choice but to leave DuPont.

With regard to the disparate impact claim, again, Martin provides no additional law or facts that enhance the strength of her argument. Martin fails to identify a "particular employment practice that causes a disparate impact on the basis of ... sex," as required to make out a disparate impact claim. 42 U.S.C. § 2000e-2(k)(1)(A). She attempts to bolster her claim with reference to statistical data. The Second Circuit has held that "to make out a prima facie case the statistical disparity must be sufficiently substantial to raise an inference of causation." *Smith v. Xerox Corp.,* 196 F.3d 358, 365 (2d Cir.1999). Martin's single statistic is inadequate to create such inference. In her present motion, Martin felt that it was important to note that the statistical information she cited to is "not *from* the U.S. census, but rather *derived from* that data *by the Defendant."* (Martin Motion for Reconsideration Memorandum at 18). It is unclear, however, why this fact is noteworthy. On this issue, as on all other issues, Martin provides no additional relevant factual or legal information that would necessitate reconsideration.

**\*4** For all the reasons stated above, Martin's motion for reconsideration (doc. # 62) is DENIED.

It is so ordered.

2004 WL 1171208 (D.Conn.)

**Motions, Pleadings and Filings (Back to top)**

• 3:01CV02189 (Docket) (Nov. 26, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.