Not Reported in F.Supp.2d  Page 1
2002 WL 31654957 (W.D.N.Y.)
**(Cite as: 2002 WL 31654957 (W.D.N.Y.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.

Annette A. JUNCEWICZ and Gregory B. Olma, Plaintiffs,
v.
Mark G. PATTON, individually and in his official capacity as a Commissioner of
the Erie County Water Authority, Robert Lichtenthal, individually and in his
official capacity as a Commissioner of the Erie County Water Authority, Acea
Mosey-Pawlowski, individually and in her official capacity as a Commissioner of
the Erie County Water Authority, and Erie County Water Authority, Defendants.

No. 01-CV-0519E(SR).

Oct. 8, 2002.

County water authority employee and her husband employee brought action against water authority and certain commissioners for eliminating her position as a contract monitor in violation of her First and Fourteenth Amendment rights. Upon defendants' motions for summary judgment, the District Court, Elfvin, J., held that: (1) husband lacked standing to assert a section 1983 claim for the violation of his wife's rights; (2) employee's allegations that she was retaliated against for political and/or adverse patronage reasons failed to state claim under section 1985(3); (3) genuine issue of material fact existed as to whether public employee's termination was at least politically motivated in part as opposed to fiscally motivated in toto; and (4) immunity defense was not available.

Motions granted in part and denied in part.

West Headnotes

**[1] Civil Rights 1332(5)**
78k1332(5) Most Cited Cases
   (Formerly 78k202)
 Husband lacked standing to assert a § 1983 claim for the violation of his wife's rights. 42 U.S.C.A. § 1983.

**[2] Conspiracy 7.5(2)**
91k7.5(2) Most Cited Cases
 County water authority employee's allegations that she was retaliated against for political and/or adverse patronage reasons failed to state claim under § 1985(3). 42 U.S.C.A. § 1985(3).

**[3] Counties 67**
104k67 Most Cited Cases
 New York Public Authority Law section providing for immunity for actions taken while acting within the scope of authority did not prohibit county water authority employee from suing water authority commissioners individually for violation of her constitutional rights. N.Y.McKinney's Public Auth. Law § 1071.

**[4] Federal Civil Procedure 2497.1**
170Ak2497.1 Most Cited Cases
 Genuine issue of material fact existed as to whether county water authority employee's termination was at least politically motivated in part as opposed to fiscally motivated in toto, precluding summary judgment in favor of water authority commissioners on employee's § 1983 suit for violation of her free speech and association rights. U.S.C.A. Const.Amend. 1; 42 U.S.C.A. § 1983.

**[5] Civil Rights 1376(4)**
78k1376(4) Most Cited Cases
   (Formerly 78k214(4))
 There is no immunity defense, either qualified or absolute, available to a municipality sought to be held liable under § 1983. 42 U.S.C.A. § 1983.

**[6] Civil Rights 1359**
78k1359 Most Cited Cases
   (Formerly 78k207(1))
 Since § 1983 claims against county water authority would not be dismissed, § 1983 claims against the water authority commissioners in their official capacities would be dismissed as redundant; however, § 1983 claims against the commissioners in their personal capacities were not redundant. 42 U.S.C.A. § 1983.

**[7] Counties 67**
104k67 Most Cited Cases
 New York's Civil Service Law did not prohibit county water authority employee from suing water authority commissioners for violation of her constitutional rights. N.Y.McKinney's Civil Service Law §§ 80, 80-a.

**[8] Federal Civil Procedure 839.1**
170Ak839.1 Most Cited Cases
 Denial of leave to amend is appropriate where it appears that a party's purpose in asserting a new claim is its anticipation of an adverse ruling on the original claims.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                Page 2
2002 WL 31654957 (W.D.N.Y.)
**(Cite as: 2002 WL 31654957 (W.D.N.Y.))**

MEMORANDUM and ORDER [FN1]

> FN1. This decision may be cited in whole or in any part.

ELFVIN, J.

*1 On July 19, 2001 Juncewicz and her husband, Olma, filed suit against defendants for eliminating Juncewicz's position as a contract monitor at the Erie County Water Authority ("Authority"). Juncewicz asserts claims under 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3) based on defendants' alleged violation of her rights of intimate association, free/political speech, political affiliation and association in violation of the First and Fourteenth Amendments to the United States Constitution. Juncewicz also asserts claims for breach of contract and unjust enrichment with respect to the alleged denial of certain employment benefits. Olma asserts derivative claims for, *inter alia,* loss of consortium, and loss of spousal services and support. Defendants Patton, Lichtenthal and Mosley-Pawlowski (collectively the "Commissioners") and the Authority seek summary judgment of dismissal. The defendants' motions for summary judgment will be granted in part and denied in part. Plaintiffs have moved for leave to amend the Complaint. Such motion will be denied.

Olma is a former County Legislator and a member of the Erie County Democratic Party ("ECDP"). [FN2] On December 6, 1999 the Authority hired Juncewicz as a contract monitor - a competitive civil service position for which Juncewicz had tied for the highest examination score. Plaintiffs allege that ECDP Chairman G. Steven Pigeon opposed Juncewicz's appointment during a December 2, 1999 meeting with Robert Mendez, Executive Director of the Authority, and Commissioner George Hasiotis. [FN3] Hasiotis refused Pigeon's pleas and Juncewicz was appointed several days later.

> FN2. The Complaint alleges that an internal dispute occurred within the ECDP in 1995-1996. At that time, Erie County Clerk David Swarts unsuccessfully opposed then County Executive Dennis Gorski. Swarts was supported by then ECDP chairman Vincent Sorrentino. Gorski supporters elected G. Steven Pigeon as the new chair of the ECDP in 1996. Ultimately, this rift resulted in two factions of the ECDP, led by Swarts and Pigeon respectively. Plaintiffs allege that this intra-party dispute resulted in retaliation by the Pigeon faction against the Swarts faction's supporters, which included plaintiffs. Indeed, plaintiffs specifically allege that Juncewicz's termination was the result of (1) plaintiffs' support for Swarts in his unsuccessful bid to unseat Pigeon as chair of the ECDP in 2000, (2) Olma's opposition to Pigeon's unsuccessful effort to be appointed a Commissioner of the Water Authority, (3) Olma's opposition to the campaigns of Charles Swanick and Crystal Peoples for leadership positions in the Erie County Legislature and (4) "other anti-Pigeon faction activities."

> FN3. Plaintiffs further allege that County Legislators Swanick and Peoples also attended the December 2, 1999 meeting and opposed Juncewicz's appointment.

Defendant Acea Mosey-Pawlowski replaced Hasiotis - allegedly at the behest of the Pigeon faction and in retaliation for having appointed Juncewicz. Plaintiffs further allege that the Pigeon faction controlled the Water Authority Commissioners, [FN4] who in turn eliminated Juncewicz's position from the 2001 Water Authority budget on December 14, 2000 - which was allegedly their first opportunity to do so. The next day, Water Authority Secretary Matthew Baudo and Juncewicz's supervisor, Paul Riester, told her that her position had been terminated and Baudo escorted her out of the building - even though her position was funded through December 31, 2000. *See* Juncewicz Dep., at 200-203. Plaintiffs allege that Juncewicz's position was eliminated as political retribution for her and her husband's support of the Swarts faction of the ECDP.

> FN4. Plaintiffs further allege that Lichtenthal, a Republican, cooperated with the Pigeon faction in exchange for patronage jobs that would not normally have been available to a minority party Water Authority Commissioner.

Defendants contend that Juncewicz's position was eliminated from the 2001 budget as a means of making the Water Authority more efficient. In supporting this contention, defendants point to evidence indicating, *inter alia,* that Juncewicz's termination [FN5] was solely for budgetary reasons. Specifically, defendants indicate that 9.5 positions were eliminated from the Water Authority's 2002 budget. [FN6]

> FN5. There appears to be no distinction of

Not Reported in F.Supp.2d                                                                                         Page 3
2002 WL 31654957 (W.D.N.Y.)
**(Cite as: 2002 WL 31654957 (W.D.N.Y.))**

significance between the descriptions of Juncewicz's involuntary departure as a termination or as an elimination of her position. Accordingly, both descriptions will be used interchangeably.

> FN6. Plaintiffs contend that Juncewicz was the only person to lose a job via the elimination of 9.5 positions from the 2001 budget. The Water Authority responds that Juncewicz was one of three people to have their positions eliminated; positions held by Benedict Licata and Richard Croad also were eliminated in the 2001 budget. Inasmuch as Licata and Croad retired *before* their positions were eliminated, however, such does not undercut the significance of the fact that Juncewicz was the only person who *involuntarily* left the employ of the Water Authority as a result of the 2001 budget. The record is silent as to whether Juncewicz was the only person escorted out of the building upon being informed that her position was being eliminated.

Rule 56(c) of the Federal Rules of Civil Procedure ("FRCvP") states that summary judgment may be granted only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In other words, after discovery and upon a motion, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial ." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is thus appropriate where there is "no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). [FN7]

> FN7. Of course, the moving party bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). If the moving party makes such a showing, the nonmoving party must then come forward with evidence of specific facts sufficient to support a jury verdict in order to survive the summary judgment motion. *Ibid.;* FRCvP 56(e).

**\*2** With respect to the first prong of *Anderson,* a genuine issue of material fact exists if the evidence in the record "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* at 248. [FN8] Stated another way, there is "no genuine issue as to any material fact" where there is a "complete failure of proof concerning an essential element of the nonmoving party's case." *Celotex,* at 323. Under the second prong of *Anderson,* the disputed fact must be material, which is to say that it "might affect the outcome of the suit under the governing law * * *." *Anderson,* at 248.

> FN8. *See also Anderson,* at 252 ("The mere existence of a scintilla of evidence in support of the [movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [movant].")

Furthermore, "[i]n assessing the record to determine whether there is a genuine issue as to any material fact, the district court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought." *St. Pierre v. Dyer,* 208 F.3d 394, 404 (2d Cir.2000) (citing *Anderson,* at 255). [FN9] Nonetheless, mere conclusions, conjecture, unsubstantiated allegations or surmise on the part of the non-moving party are insufficient to defeat a well-grounded motion for summary judgment. *Goenaga,* at 18. [FN10] Indeed, in order to survive a motion for summary judgment, a plaintiff in a discrimination case must offer more than "purely conclusory allegations of discrimination, absent any concrete particulars * * *." *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). Summary judgment is nonetheless appropriate in discrimination cases. *Holtz v. Rockefeller,* 258 F.3d 62, 69 (2d Cir.2001).

> FN9. In employment discrimination cases, district courts must be "especially chary in handing out summary judgment * * * because in such cases the employer's intent is ordinarily at issue." *Chertkova v. Conn. Gen. Life Ins. Co.,* 92 F.3d 81, 87 (2d Cir.1996).

> FN10. *See* footnote 7.

[1] The Commissioners and the Water Authority contend that Olma lacks standing to assert a section

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 4
2002 WL 31654957 (W.D.N.Y.)
**(Cite as: 2002 WL 31654957 (W.D.N.Y.))**

1983 claim for the violation of Juncewicz's rights. This Court agrees and further finds that this Court lacks jurisdiction over Olma's claims. *See Pritzker v. City of Hudson,* 26 F.Supp.2d 433, 445 (N.D.N.Y.1998) (holding that "section 1983 does not support a derivative claim for loss of consortium"). *Pritzker* holds that a court lacks jurisdiction over a derivative claim for loss of consortium where there is no diversity jurisdiction or federal subject matter jurisdiction. *Ibid.* Such also applies here because Olma's "alleged injury is not one based on a deprivation of [his] rights, privileges or immunities - the type of injury for which section 1983 provides redress." *Ibid.* Furthermore, "a party may not claim supplemental, or pendant, jurisdiction based upon the claims of another party." *Ibid.* Accordingly, Olma's claims against all the defendants will be dismissed without prejudice so that he may pursue such in state court.

The Commissioners contend that Juncewicz's conspiracy claim under section 1985(3) [FN11] should be dismissed because "[i]ndividual agents of a single entity can not form a conspiracy under section 1985(3) * * * [and that Juncewicz's] allegations of a conspiracy are based upon the activities of the Commissioners." Commissioners' Brief, at 10-11 (citation omitted). Such is inaccurate. Juncewicz alleges that several people outside the Water Authority were involved in the alleged conspiracy, including Pigeon, Swanick and Peoples. Accordingly, Juncewicz's section 1985(3) claims will not be dismissed for failing to involve "two or more persons."

> FN11. Section 1985(3) states, in relevant part:
> "If two or more persons in any State or Territory conspire * * * for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

*3 [2] Juncewicz's section 1985(3) claims will nonetheless be dismissed for failure to create a genuine issue of material fact. As this Court has previously noted, to prevail on a section 1985(3) claim "a litigant must demonstrate (1) that [she] was a member of a protected class, (2) that two or more persons conspired to deprive [her] of a constitutional right, and (3) that there was 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Adamczyk v. City of Buffalo,* No. 95-CV-1023E(H), 1998 WL 89342, at *6 (W.D.N.Y. Feb.23, 1998). [FN12]

> FN12. Section 1985(3) requires that a conspiracy be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." ' *Mian v. Donaldson, Lufkin & Jenrette Secs.,* 7 F.3d 1085, 1088 (2d Cir.1993); *Brown v. City of Oneonta,* 221 F.3d 329, 341 (2d Cir.2000) (citing *Mian* ), *cert. denied,* 534 U.S. 816, 122 S.Ct. 44, 151 L.Ed.2d 16 (2001).

*Adamczyk* holds that claims related to political affiliation, speech and/or association do not satisfy either the first or the third element of a section 1985(3) claim. *Ibid.* Adamczyk had been arrested in 1992 and, as a result of his booking, the Buffalo Police Department acquired confidential information about Adamczyk's status as an HIV infected person. Three years later, while serving as the campaign manager for Erie County Executive Dennis Gorski, Adamczyk's political opponents within the ECDP circulated a fax disclosing that Adamczyk was infected with HIV. [FN13] Adamczyk subsequently asserted, *inter alia,* a section 1985(3) claim against the City of Buffalo. Such claim was dismissed because he had failed to demonstrate, *inter alia,* that political animus would satisfy the third element of a section 1985(3) claim. Likewise, Juncewicz fails to satisfy such third element where she at most demonstrates that she was retaliated against for political and/or adverse patronage reasons. *Ibid.* Accordingly, Juncewicz'ss section 1985(3) claims will be dismissed.

> FN13. *See id.* at * 2 ("it is reasonable to infer from the record - that the letter and its attachments were sent to the news media and other organizations for the purpose of gaining political advantage for Gorski's opponents in the then-upcoming Democratic Party primary election for Erie County Executive.").

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

[3] The Commissioners also contend that New York Public Auth. Law § 1071 prohibits Juncewicz from suing them individually. Section 1071 provides:

"Neither the members of the authority, nor any person or persons acting in its behalf, *while acting within the scope of their authority,* shall be subject to any personal liability resulting from * * * carrying out any of the powers expressly given in this title." N.Y. Pub. Auth. Law § 1071 (emphasis added).

The problem with this contention, however, is that Juncewicz alleges that the Commissioners violated her constitutional rights - conduct outside the scope of the Commissioners' authority and for which the Commissioners may be personally liable. [FN14] Consequently, the applicability of section 1071 is contingent upon whether the Commissioners violated Juncewicz's rights - *i.e.,* the flip side of the "scope of authority" coin. Accordingly, this Court must address defendants' contention that summary judgment of dismissal is appropriate with respect to Juncewicz's section 1983 claims.

>   FN14. *Cf. Papasan v. Allain,* 478 U.S. 265, 278 fn. 11, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

Turning to such claims, it is well established that "a public employee is protected from adverse employment decisions based upon the employee's exercise of [her] First Amendment rights." *Coogan v. Smyers,* 134 F.3d 479, 483-484 (2d Cir.1998); [FN15] *O'Farrell v. Lewiston Town Bd.,* No. 94-CIV-330E(H), 1996 WL 189449, at *1-2 (W.D.N.Y. Apr.3, 1996) (collecting cases). Indeed, "[p]olitical patronage or party affiliation are impermissible reasons for dismissing government employees absent a showing that 'party affiliation is an appropriate requirement for the effective performance of the public office involved.' " *Coogan,* at 483 (quoting *Branti* ). [FN16] At trial, Juncewicz's claims will be analyzed under the burden-shifting analysis set forth in *Mt. Healthy City Bd. Of Ed. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). *Id.* at 484-485. For purposes of defendants' summary judgment motions, however, Juncewicz's *prima facie* section 1983/First Amendment retaliation claim requires her to show that (1) her speech was constitutionally protected, (2) she suffered an adverse employment action, and (3) "a causal connection exists" between her political activity and her termination such that her political activity "was a motivating factor in the determination." *See Morris v. Lindau,* 196 F.3d 102, 110 (2d Cir.1999) (citing *Mt. Healthy* ). [FN17] At the summary judgment stage, Juncewicz "may establish her prima facie case with *de minimus* evidence." *Gilligan v. Town of Moreau,* No. 00-7109, 2000 WL 1608907, at *2 (2d Cir.2000).

>   FN15. *See also Elrod v. Burns,* 427 U.S. 347, 355-360, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (the First Amendment prohibits the dismissal of a public employee based on political patronage); *Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) (refining the "policymaker" exception of *Elrod* ); *Rutan v. Republican Party,* 497 U.S. 62, 75-76, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) (extending *Elrod-Branti* rule to promotion, transfer, recall, and hiring decisions involving low-level public employees). The defendants do not contend that Juncewicz's former position falls within the "policymaking" exemption under *Elrod* and its progeny. *See Regan v. Boogertman,* 984 F.2d 577 (2d Cir.1993) (discussing "policymaker" exception to the *Elrod-Branti* rule); *O'Connell v. Gorski,* 715 F.Supp. 1201, 1202-1203 (W.D.N.Y.1989) (same).

>   FN16. The *Elrod-Branti* rule has been applied to other employment actions as well. *Id.* at 484 (discussing *Elrod* and its progeny); *O'Farrell,* at *1-2 (same).

>   FN17. Implicit in this third element is defendants' awareness of Juncewicz's political activity. *See Savage v. Gorski,* 850 F.2d 64, 68 (2d Cir.1988).

*4 [4] As a preliminary matter, plaintiffs allege that Juncewicz was terminated as a result of both Juncewicz's and Olma's political support of the Swarts faction. [FN18] Inasmuch as Juncewicz engaged in political activity protected by the First Amendment, this Court need not address whether the First Amendment protects Juncewicz from termination based on her husband's political activity. [FN19] Accordingly, this Court must determine whether Juncewicz satisfied all three elements of her *prima facie* case as set forth in *Morris.* First, Juncewicz's political activity is protected by the First Amendment. *See Coogan,* at 484. [FN20] Second, it is undisputed that her position was eliminated. Third, it must be determined whether Juncewicz's political activity was a motivating factor in her termination.

>   FN18. Defendants suggest that Juncewicz

obtained her position as a result of political patronage - thereby implying that she who lives by the sword shall die by the sword. This, however, is not the law because "a history of past patronage, even if a source of benefit to the plaintiff, does not render the practice constitutional." *Coogan,* at 484.

FN19. *See Adler v. Pataki,* 185 F.3d 35, 42 (2d Cir.1999) (stating that the nature and extent of the right of intimate association "is hardly clear"); *Patel v. Searles,* No. 00-9552, 2002 WL 31160034, at *1 (2d Cir. Sept.30, 2002) (discussing the right of intimate association and noting that although "all of its boundaries have not yet been fixed * * * this constitutional right is real despite the lack of exact knowledge regarding its derivation or contours").

FN20. *See also Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) (noting that government employees have wide First Amendment rights with respect to speech on "any matter of political, social, or other concern to the community").

In applying this third element, the Second Circuit Court of Appeals held that the "causal connection must be sufficient to warrant the inference that the protected speech was a substantial motivating factor in the adverse employment action * * *." *Morris,* at 110. In other words, Juncewicz must show that she would not have been terminated absent her and her husband's political activity. *Ibid.* Causation can be established by direct evidence of discriminatory animus or by circumstantial evidence thereof - such as "by showing that the protected activity was followed by adverse treatment in employment." *Ibid.* Nonetheless, "[s]ummary judgment is precluded where questions regarding an employer's motive predominate in the inquiry regarding how important a role the protected speech played in the adverse employment decision." *Ibid.*

A genuine issue of material fact exists whether Juncewicz's termination was at least politically motivated in part as opposed to fiscally motivated *in toto.* [FN21] For example, the fact that Juncewicz was physically escorted out of the building the day she was terminated - albeit sixteen days before her position was actually eliminated - creates a question of fact as to the defendants' motivation because "all factual inferences on a motion for summary judgment must be drawn in favor of the non-moving party."

*Morris,* at 111. Indeed, if the sole motivation behind the elimination of Juncewicz's position was fiscal, there would be no reason to escort her off the premises immediately upon informing her that her position was going to be eliminated at the end of the year. [FN22] *Cf. Malone,* fn.21 *supra,* at *7 ("it is well recognized that evidence suggesting a proffered reason to be merely a pretext is highly probative of whether discriminatory animus existed").

FN21. *See Malone v. Greco,* No. 92-CV-178S, 1995 WL 222052, at *4 (W.D.N.Y. Jan.21, 1995) (quoting *Nekolny v. Painter,* 653 F.2d 1164, 1171 (7th Cir.1981), *cert. denied,* Painter v. Nekolny, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982), for the proposition that "the presence of both permissible and impermissible motives [does] not legalize a termination that would not have occurred but for the existence of the conduct protected by the First Amendment."). Accordingly, assuming *arguendo* that the defendants terminated Juncewicz for fiscal reasons, such would not preclude the possibility that they were also politically motivated in doing so. *Cf. Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty.,* 252 F.3d 545, 555-556 (2d Cir.2001).

FN22. Although there are certainly reasons why an employer would immediately escort a terminated employee from its premises, no such reason appears to exist here. Indeed, the record is silent as to why Juncewicz was escorted from the premises. The record is also silent as to whether other Water Authority employees who had been previously terminated and/or eliminated for budgetary reasons were also escorted off the premises. If Juncewicz is the only employee ever to have been escorted off the premises under similar circumstances, such disparate treatment would be further evidence of discriminatory animus. *See Gilligan,* at *2.

Second, Juncewicz's termination in December 2000 followed close on the heels of her public opposition of Pigeon during the fall of 2000. *See Gorman-Bakos,* [FN23] at 554-555 (holding that three-month gap between protected activity and adverse action suggested a causal connection). Indeed, she was terminated at what she alleges to have been defendants' first opportunity to do so. [FN24] Third, a genuine issue of material fact exists whether the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2002 WL 31654957 (W.D.N.Y.)
**(Cite as: 2002 WL 31654957 (W.D.N.Y.))**

Page 7

Pigeon faction had a political animus against Juncewicz. Specifically, a question exists whether Pigeon had attempted to prevent Juncewicz's appointment at a December 2, 1999 meeting attended by Swanick, Peoples, Hasiotis and Mendez. *Compare* Hasiotis Dep., at 31-51 (describing such meeting) *and* Mendez Dep ., at 19-23 (same) *with* Pigeon Dep., at 15-16 (failing to recall the December 2, 1999 meeting and referring to Hasiotis as a "liar"), Swanick Dep., at 12-13 (failing to recall the December 2, 1999), *and* Peoples Dep., at 8 (same). A reasonable jury could find that Pigeon had targeted Juncewicz for political reasons and could also draw the reasonable inference that Pigeon had politically dominated his supporters at the Water Authority and that they acted upon his anti-Juncewicz animus in terminating her. [FN25]

> FN23. *See* footnote 21.
>
> FN24. Plaintiffs contend that the defendants were constrained by "Civil Service law" from removing Juncewicz before the 2001 budget. Pls.' Statement, at ¶ 7. This Court assumes that plaintiffs are referring to Section 75 of New York's Civil Service Law. *See Vona v. County of Niagara,* 119 F.3d 201, 204 fn. 1 (2d Cir.1997) (noting that section 75 "requires that persons holding certain civil service positions shall not be removed or subjected to disciplinary penalty except for incompetency or misconduct shown after a hearing").
>
> FN25. As the Second Circuit Court of Appeals cautioned in *Morris,* summary judgment is inappropriate where questions "regarding an employer's motive predominate." *Morris,* at 110. Additionally, plaintiffs offered some evidence that Pigeon conducted a "housecleaning" at other bastions of political patronage, including the Erie County Board of Elections. Such a pattern of adverse political patronage would further evidence Pigeon's intent. *See Gilligan,* at *2.

**\*5** Inasmuch as Juncewicz has satisfied her initial burden, the burden shifts to defendants to articulate a legitimate, non-retaliatory reason for Juncewicz's termination. *Gilligan,* at *3. Defendants met this burden by stating that Juncewicz's position was eliminated for purposes of fiscal efficiency. Accordingly, the burden shifts back to Juncewicz to raise a triable issue of fact as to whether defendants' explanation is pretextual. *Ibid.* For the reasons discussed above, Juncewicz has raised such an issue of fact with respect to defendants' motivation in eliminating her position. Accordingly, Juncewicz's section 1983 claims will not be dismissed. [FN26]

> FN26. *See Morris,* at 111 (finding genuine issue of material fact with respect to municipality's motivation for abolition of police department despite the court's acknowledgment that, on remand, a "causal connection may be difficult to prove because the defendants doubtless will maintain that the Department was abolished for fiscal reasons"); *Jean-Gilles v. Cty. Of Rockland,* 195 F.Supp.2d 528, (S.D.N.Y.2002) (denying summary judgment where adverse action occurred one or two years after plaintiff's protected speech because "it is entirely possible that defendants' [sic] still harbored resentment toward plaintiff for his views and public criticism"); *O'Farrell,* at \*2 (denying defendants' motion for summary judgment because evidence that "plaintiff was not reappointed due to fiscal concerns and to make local government more efficient by consolidating certain positions is \* \* \* not sufficient to carry the day under [defendants' summary judgment] motion").

[5] The Water Authority contends that it is immune from Juncewicz's claims under the doctrine of legislative immunity. The authorities cited by the Water Authority, however, do not convince this Court that legislative immunity is applicable here. Indeed, the Second Circuit Court of Appeals has held under very similar facts that "there is no immunity defense, either qualified or absolute, available to a municipality sought to be held liable under 42 U.S.C. § 1983." *Goldberg v. Town of Rocky Hill,* 973 F.2d 70, 74 (2d Cir.1992) (rejecting town's claim of legislative immunity with respect to police officer's section 1983 claim predicated upon the elimination of his position in retaliation for his speech); *see also Morris,* at 111 (applying *Goldberg* ). [FN27] *Goldberg* further noted that the elimination of Goldberg's position "was a legislative act of the town [that] qualifies under [*Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ] as municipal 'policy' \* \* \* for which the town could be held liable absent immunity." *Id.* at 72. Likewise here. Accordingly, Juncewicz's section 1983 claims against the Water Authority will not be dismissed.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  Page 8
2002 WL 31654957 (W.D.N.Y.)
**(Cite as: 2002 WL 31654957 (W.D.N.Y.))**

FN27. The Water Authority contends that it may claim protection under the doctrine of legislative immunity by citing, *inter alia, Gordon v. Katz,* 934 F.Supp. 79, 84-85 (S.D.N.Y.1995), *aff'd,* 101 F.3d 1393 (2d Cir.1996). *Gordon,* however, appears inconsistent with *Goldberg,* which is controlling legal authority directly on point. The Water Authority also cites *Rini v. Zwirn,* 888 F.Supp. 270 (E.D.N.Y.1993), in support of its claim of legislative immunity. *Rini,* however, held that legislative immunity was not applicable to the municipal entity - and thus undermines the Water Authority's position.

[6] Inasmuch as Juncewicz's section 1983 claims against the Water Authority will not be dismissed, her section 1983 claims against the Commissioners in their official capacities will be dismissed as redundant. *See Goldberg,* at 73 ("As the Supreme Court explained in *Monell,* 'official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent' "); *Harford v. Cty. Of Broome,* No. 99-CV-0482, 1999 WL 615190, at *5 (N.D.N.Y. July 15, 1999) ("courts may dismiss the [section 1983] claims against the individuals in their official capacities, but retain the claims against the entity"). Juncewicz's section 1983 claims against the Commissioners in their personal capacities, however, will not be dismissed because it is not clear - nor do the Commissioners contend - that legislative immunity applies to non-legislators or that such immunity would extend to the Commissioners in their personal capacities. *Cf. ibid.* (quoting *Kentucky v. Graham,* 473 U.S. 159, 166-167, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), for the proposition that "to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right").

*6 [7] The Water Authority appears to contend that it is shielded from liability by sections 80 and 80-a of New York's Civil Service Law. This argument is not persuasive. Indeed, the cases cited by the Water Authority are not applicable because they do not involve First Amendment/adverse political patronage claims. *See e.g., Bianco v. Pitts,* 200 A.D.2d 741, 742, 607 N.Y.S.2d 78 (2d Dep't 1994) ("Further, the record does not reflect any improper motive, such as political patronage."). [FN28] Accordingly, this argument is rejected.

FN28. "Section 80 provides, in relevant part, that competitive, civil service positions may be abolished for reasons of 'economy, consolidation, or abolition of functions." ' *Cifarelli v. Village of Babylon,* 93 F.3d 47, 50 (2d Cir.1996). "A position may not, however, be abolished as a subterfuge to avoid the *statutory protection afforded to civil servants* before they are discharged." *Bianco,* at 741, 607 N.Y.S.2d 78 (emphasis added). It is elementary that New York's Civil Service Law does not trump the First Amendment of the United States Constitution.

Inasmuch as defendants' motions will be granted only in part, this Court declines defendants' requests for attorneys' fees.

Plaintiffs seek leave to amend the Complaint to add a "failure to train" cause of action. Although leave to amend " 'shall be freely given when justice so requires,' [FRCvP 15(a) ], such leave will be denied when an amendment is offered in bad faith, would cause undue delay or prejudice, or would be futile." *Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1198 (2d Cir.1989) (citing *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Plaintiffs' motion for leave to file an amended Complaint will be denied because such would cause undue delay and would be unduly prejudicial. The discovery deadline was reached June 7, 2002. Assuming *arguendo* that plaintiffs could not have asserted a "failure to train" cause of action when they filed the Complaint, they claim to have become aware of such during discovery. Nonetheless, plaintiffs offer no adequate justification for waiting two months after the close of discovery to seek leave to amend. *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir.1990) (affirming denial of leave to amend complaint where plaintiff offered no satisfactory explanation for making its motion one month after discovery had been completed and after defendant had moved for summary judgment).

[8] Moreover, inasmuch as the next step in this case is to set a date for trial, plaintiffs' attempt to amend the Complaint on the eve of trial would unduly delay the final disposition of this action. *See Zahra v. Town of Southold,* 48 F.3d 674, 686 (2d Cir.1995) (affirming denial of leave to amend request filed three months before trial). Indeed, denial of leave to amend is especially appropriate "where it appears that a [party's] purpose in asserting a new claim is [its] anticipation of an adverse ruling on the original claims." *Bymoen v. Herzog, Heine, Geduld, Inc.,* No.

88 Civ. 1796(KMW), 1991 WL 95387, at *1 (S.D.N.Y. May 28, 1991); *see also Krumme v. WestPoint Stevens Inc.,* 143 F.3d 71, 88 (2d Cir.) (citing *Ansam Assocs. v. Cola Petroleum, Ltd.,* 760 F.2d 442, 446 (2d Cir.1985), for the proposition that a proposed amendment is especially prejudicial when discovery has been completed and the opposing party has already filed a motion for summary judgment), *cert. denied,* 525 U.S. 1041 (1998); *Messier v. Southbury Training Sch.,* No. 3:94-CV-1706, 1999 WL 20907, at *4 (D.Conn. Jan.5, 1999) ("The classic situation where courts deny leave to amend arises when a party files a Rule 15(a) motion *after* discovery has been completed or the nonmoving party has filed for summary judgment."). Accordingly, plaintiffs' motion to amend will be denied.

 **\*7** Accordingly, it is hereby *ORDERED* that Olma's claims are dismissed without prejudice, that Juncewicz's section 1985(3) claims are dismissed with prejudice, that Juncewicz's section 1983 claims against the Commissioners in their official capacities are dismissed, that defendants' motions for summary judgment are denied in all other respects, that plaintiffs' motion for leave to amend the Complaint is denied, that the parties shall appear before Part III of this Court on the 8th day of November, 2002 at 3:00 p.m. (or as soon thereafter as they may be heard) to set a date for trial and that the caption of this action shall now read:

```
"ANNETTE A. JUNCEWICZ
      Plaintiff,

 -vs-

MARK G. PATTON,
ROBERT LICHTENTHAL,
ACEA MOSEY-PAWLOWSKI, and
ERIE COUNTY WATER AUTHORITY,
           Defendants."
```

2002 WL 31654957 (W.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 1:01CV00519 (Docket) (Jul. 19, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.