## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MCCARTHY, ET AL, | : | DOC. NO. 3:03:CV 431 (SRU) |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| DUN & BRADSTREET, ET AL, | : | |
| | : | |
| Defendants. | : | January 20, 2005 |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO VACATE AND ITS OPPOSITION TO MOTION TO AMEND

### Introduction

The Plaintiffs ask to amend their complaint to clarify the role that mortality tables play in making Dun & Bradstreet's MRP 6.75% interest rate an unreasonable way to produce an actuarially equivalent early retirement benefit.[1] The Plaintiffs expert Claude Poulin testified that interest rates can't be considered in a vacuum; they must be considered with the Plan's mortality tables: If when combined the two produce an actuarial equivalent sum they are reasonable, but not otherwise.[2] The Plaintiffs ask to amend their complaint to describe the role of the mortality table as a precaution in case the Court agrees with Dun & Bradstreet's

---

[1] The Court granted the motion on January 4, 2005. The Plaintiffs don't object to the Defendant's motion to vacate the order granting the amendment so the Defendant's objections can be heard. They believe, however, that after hearing the Defendant the Court shouldn't change it's mind – the amendment should be allowed.

[2] Exhibit A at 5 (Poulin Report); Exhibit B at 52-53 (Poulin Deposition Excerpts).

recent claim that the Court can't consider Poulin's testimony about how the mortality table makes the violation worse because the mortality table isn't mentioned in the complaint.

The Plaintiffs' motion presents a simple issue. Federal Rule of Civil Procedure 15 says that parties should be given leave to amend their complaints freely; the courts only bar amendments that are made in bad faith or cause undue prejudice. The Plaintiffs ask to amend their complaint so it reflects the link made by their expert between interest rates and mortality tables. Is the amendment made in bad faith or does it cause undue prejudice? No. The amendment only says what Dun & Bradstreet has known for many months is the Plaintiffs' expert's opinion: the reasonableness of interest rates can't be considered without considering how they work with a plan's chosen mortality table. The amendment contains no new cause of action and directly relates to a matter at the heart of the plaintiffs' expert testimony on why the interest rate at issue can't produce an actuarially equivalent sum.

**Is the Amendment Needed?**

The Plaintiffs ask to amend their complaint as a precaution in case the Court agrees with Dun & Bradstreet's claim during the deposition of the company's expert that Poulin's testimony about the impact of the mortality table can't be

considered because it isn't in the complaint.[3]  The pleading requirements in Federal Rule of Civil Procedure Rule 8, however, don't require it.  As the Supreme Court reaffirmed in 2002 in *Swierkiewicz v. Sorema*, under Rule 8(a)'s simplified notice pleading standard a party does not have to engage in "technical forms of pleading" or plead each factual or legal element of a claim in order to give "fair notice" of a claim.[4]  Here the Plaintiffs claim that Dun & Bradstreet's MRP 6.75% interest rate is an unreasonable way to produce an actuarially equivalent early retirement benefit. Their expert, Poulin, testified that while the rate is unreasonable by itself it's even more clearly unreasonable because it's paired with an unreasonable mortality table and that because of this the interest rate cannot produce an actuarial equivalent sum. Poulin used the mortality table as additional evidence that the interest rate is unreasonable; not as a new and substitute claim as Dun & Bradstreet seems to say.  Under those circumstances there is no reason why it has to be in the Plaintiffs' complaint to give fair notice of the claim at issue.

Nonetheless, the amendment should be allowed because the amendment standards of Rule 15 are appropriately liberal. They were explained by the Supreme Court as early as 1962 in *Foman v. Davis*:

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

---

[3] Exhibit C at 74 (Brown Deposition Excerpt).
[4] 534 U.S. 506, 513-14 (2002).

prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-- the leave should, as the rules require, 'be freely given.'[5]

In *State Teachers Retirement Bd. v. Fluor Corp.*[6] and *MacDraw, Inc. v. CIT Equip. Fin., Inc.*,[7] the Second Circuit applied the Supreme Court's liberal view allowing amendments absent bad faith or "*undue* prejudice to the opposing party."[8]  This Court applied the same rule to grant an amendment in 2004 *Callahan v. Unisource Worldwide, Inc.*:

> A motion to amend is governed by Rule 15 of the Federal Rules of Civil Procedure. Rule 15(a) provides that "a party may amend the party's pleading only by leave of the court or by written consent of the adverse party; and leave shall be freely given when justice so requires."
>
> A motion for leave to amend the complaint can be denied, however, if the defendant demonstrates undue delay in filing the amended complaint, undue prejudice if the amended complaint is permitted, or the futility of the amendment. Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962). "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend." State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981).[9]

A little over three months ago in *Victor G. Reiling Assocs. v. Fisher-Price, Inc.* this Court explained why a liberal rule should apply: "If the underlying facts or

---

[5]  371 U.S. 178,182, 9 L.Ed. 2d 222, 83 S. Ct. 227 (1962)
[6]  654 F.2d 843, 856 (2d Cir. 1981).
[7]  157 F.3d 956, 962 (2d Cir. 1998).
[8]  *Foman* at 182 (emphasis added).
[9]  2004 U.S. Dist. LEXIS 3351, 2-3 (D. Conn., 2004)(Exhibit D).

circumstances relied on by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."[10]

**Any Prejudice to Dun & Bradstreet is It's Own Fault.**

If the amendment causes Dun & Bradstreet any prejudice, it's the company's own fault for ignoring Poulin's claim that the interest rate violation is made worse because it's paired with an unreasonable mortality table.  Dun & Bradstreet has known since Claude Poulin's May 3, 2004 report that the Plaintiffs claim Dun & Bradstreet is using an out-of-date mortality table and that this significantly contributes the ERISA violation alleged in the original complaint.[11] And if, after reading Poulin's report, Dun & Bradstreet had any doubts about the role the mortality table played in the Plaintiffs' claim it was removed a few weeks later at Poulin's deposition when Dun & Bradstreet's counsel asked Poulin about the scope of his opinion:

> Q.  Other than the issue of the matter
> 24   that you've testified you were asked to form
> 25   an opinion or initially, i.e. to ascertain
>                       17
> 1   whether the interest rate used by Dun &
> 2   Bradstreet to calculate early retirement
> 3   benefits for the deferred vested retirement
> 4   was a reasonable rate, were you asked to
> 5   form an opinion on any other aspect of this
> 6   case?
> 7       A.   I believe it follows after

---

[10] 2004 U.S. Dist. LEXIS 21091(D. Conn. September 30, 2004)(Exhibit E).
[11] Exhibit A at 5 (Poulin Report).

8    ascertaining whether the interest rate is
9    reasonable, whether the values produced by
10   this interest rate would represent actuarial
11   equivalence of the normal retirement
12   benefit.
13         But as I mentioned earlier, I also
14   said that this determination has to be done
15   in conjunction with the mortality table that
16   is used by the plan in order to compute
17   these factors.[12]

Poulin made clear that the mortality table is relevant to the question of

whether the interest rate is reasonable again later:

     And also, the important thing that
12   is evident in my report is the impact of the
13   interest rate assumption in conjunction with
14   the mortality table used by the plan.[13]

And again:

     A.   I believe that the statutes and/or
4    the regulations stipulate that the benefits
5    must be actuarially equivalent or the
6    actuarial equivalent or actuarial
7    equivalencies are based on two factor:  One
8    being the interest rate; the other one being
9    the mortality table.
10         I understand that the statute does not
11   specify which mortality table or which interest rate
12   is to be used.  The requirement is that it be an
13   actuarial equivalent. and it could be that a certain
14   interest rate, that in isolation, in a vacuum, would
15   be unreasonable, would be tempered or the impact of
16   that rate would be mitigated by a mortality table
17   that would offset it. If this happened, it would

---

[12] Exhibit B at 16-17 (Poulin Deposition Excerpts).
[13] *Id.* at 16-17.

18  offset the impact of the interest rate and
19  vice-versa.[14]

And again:

18  A.  In order to make that determination
19  of actuarial equivalency, as an actuary I
20  cannot look at a rate in a vacuum, interest
21  rate in isolation, without also looking at
22  the mortality table.
23        And to the extent that the mortality under
24  a certain mortality table would offset the impact of
25  the interest rate, then the actual values that
                              61

 1  result from the calculation is maybe, quote/unquote,
 2  actuarially equivalent.
 3        For instance, in 1994 I believe ERISA,
 4  they got legislation that changed both the interest
 5  rate and what is called the applicable interest rate
 6  and applicable mortality table for lump sum
 7  purposes.
 8        Before 1994 there was a very old mortality
 9  table called UP84, which, in fact, was based on the
10  experience of the '60s, which resulted in lower
11  values in conjunction with an interest rate that was
12  very low.  But in that case it provided higher
13  values like 4 percent.
14        But together for a number of years they
15  were deemed to be reasonable and they were replaced
16  by the GATT mortality table that provided higher
17  values in conjunction with a 30-year treasury rate
18  that provided lower values.  So in tandem they were
19  deemed to be reasonable.[15]

Overall, Poulin had made his opinion perfectly clear:

---

[14] *Id.* at 52.
[15] *Id.* at 60-61.

122

THE WITNESS:  I believe that
    21    the interest rate in conjunction with the
    22    mortality tables are unreasonable in
    23    determining actuarial equivalency.[16]

The Plaintiffs want to do nothing more than amend their complaint because Poulin says the reasonableness of the interest rate has to be determined based upon the mortality table it's paired with.  An otherwise unreasonably high interest rate paired with low enough mortality assumptions can still be reasonable – the two together can produce an actuarially equivalent sum.  On the other hand, when an unreasonably high interest rate is paired with an unreasonably high mortality table, it becomes very clear that the rate can't produce an actuarially equivalent sum.

Dun & Bradstreet never bothered to obtain testimony to rebut this aspect of Poulin's testimony. The company took three months after Poulin's report was disclosed to disclose the report of its own expert Edward W. Brown.[17]   But Brown's report didn't mention Poulin's testimony about the impact a mortality table can have on the reasonableness of an interest rate. Dun & Bradstreet had five months to prepare Brown for deposition and ask him to respond to Poulin's contentions, yet at his October 6, 2004 deposition Dun & Bradstreet's lawyer made

---

[16] *Id.* at 122.
[17] Exhibit F (Brown Report).

it clear Brown was not retained to comment about the role mortality tables play.[18]

Instead, after five months of having the issue before it, Dun & Bradstreet claimed

at Brown's deposition for the first time that the influence of mortality tables on

interest rates couldn't even be discussed because it wasn't mentioned in the

complaint.[19] The company's counsel even threatened to seek a protective order to

prevent the discussion, but ultimately backed down.[20]   Dun & Bradstreet hasn't

offered any evidence on this issue, yet it still hopes to win by getting the Court to

refuse to consider the evidence.  The reality is that Dun & Bradstreet's claim is less

likely the product of a punctilious regard for the rules than it is a consequence of

the company's inability to get its expert to agree with it on this point.  Indeed,

despite the company's attempt to interfere with the deposition, Plaintiffs' counsel

asked Dun & Bradstreet's expert about the mortality table and he agreed with

Poulin's choice of mortality tables, not Dun & Bradstreet's.[21]   Dun & Bradstreet

cries crocodile tears about any prejudice caused to them by the proposed

amendment.  The company had full and fair notice that the Plaintiffs claimed that

the interest rate is more clearly unreasonable because it's coupled with an

unreasonable mortality rate.  Any prejudice caused to Dun & Bradstreet by the

---

[18] Exhibit C at 74 (Brown Deposition Excerpt)
[19] *Id.*  If the issue was so important to Dun & Bradstreet, why didn't it raise it after it got Poulin's report or after it took his deposition?
[20] *Id.*
[21] *Id.*

Court considering this issue won't be undue prejudice; it will be the company's own fault.

**The Plaintiffs Didn't Unduly Delay Filing their Motion to Amend.**

Dun & Bradstreet's position about the complaint during the October 2004 Brown deposition alerted the Plaintiffs to the company's strategy. In November 2004, Dun & Bradstreet moved for summary judgment. On December 6, 2004 there was a conference call between the Court and the parties about the status of the case. Among the topics discussed was when the plaintiffs should file the amendment and what would be in it. Plaintiffs counsel said one of the matters to be included was a clarification of the interest rate allegations. Defense counsel heard this but remained silent about any concern he had about clarifying the complaint while the motion for summary judgment was pending. On December 20, 2004, the Plaintiffs objected to Dun & Bradstreet's motion for summary judgment and moved to amend the complaint to clarify the actuarial equivalency claim in light of the expert testimony.[22] While the Plaintiffs didn't agree that the amendment was needed to permit the Court to consider Poulin's mortality table testimony, they didn't unreasonably delay making the motion once they found out Dun & Bradstreet raised the issue.

---

[22] The Second Amended Complaint also dropped and added parties and dropped certain counts dismissed by agreement or by the Court.

**Even in the Face of a Summary Judgment Motion, the Courts Readily Allow Amendments Like This One that Add to Existing Claims.**

The Plaintiffs have added no new cause of action; they seek only to supplement what they said about their ERISA forfeiture claim. Where as here plaintiffs seek to amend to clarify and add support to an existing claim, the courts readily allow the amendment even when a motion for summary judgment is pending. When in 1998 a party sought leave from this Court to amend to add support to an existing claim, this Court in *Conntect, Inc. v. Turbotect, Ltd.*, readily gave it leave to do so under Rule 15(a).[23] Indeed even where an entirely new claim arose after the close of discovery in 1994 this Court held in *Bleiler v. Cristwood Contractor Co.* that allowing an amendment is appropriate where the claims arise from similar facts:

> Permitting a proposed amendment also may be prejudicial if discovery already has been completed, but this concern may be alleviated if the new claim arises from a similar set of operative facts and a similar time as the existing claims.[24]

The Second Circuit recognized the same principle in 1981 in *State Teachers Retirement Bd. v. Fluor Corp.* in a case where the claim was similar to existing claims and the subject of the amendment was an object of discovery. Overturning a district court's ruling, it said allowing an amendment like this was appropriate even where the Court may force delay and limited additional discovery by doing it:

---

[23] 1998 U.S. Dist. LEXIS 2354 (D. Conn., 1998)(Exhibit G).
[24] 868 F. Supp. 461, 463 (D. Conn., 1994).

Although State Teachers' amendment may result in a delay, it will not unduly prejudice the defendant. The amended claim was obviously one of the objects of discovery and related closely to the original claim of non-disclosure of the SASOL project. The delay in order to depose Etter was justified in light of State Teachers' need to verify what information was made public by Fluor. Clearly, this involved information better known to the defendants than to the plaintiffs.[25]

Most recently, the Southern District of New York recognized the same principle in

2004 in *Smith v. P.O. Canine Dog Chas, Shield No. 170*:

Moreover, the fact that discovery has concluded does not, in and of itself, provide a reason for denying leave to amend. *Cemar Tekstil Ithalat Ihracat San ve Tic. A.S. v. Joinpac, Inc.*, 1993 U.S. Dist. LEXIS 5065, No. 91 Civ. 8408, 1993 WL 126890, at *1 (S.D.N.Y. Apr. 16, 1993) (allowing amendment to add a counterclaim where discovery had already closed). This is especially true where the proposed amendment arises from the same set of operative facts as the original claims, or from events closely related to those originally pleaded. *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981); *Harrison v. N.Y. City Admin. for Children's Servs.*, 2002 U.S. Dist. LEXIS 16439, 02 Civ. 0947, 2002 WL 2022932, *1 (S.D.N.Y. Sept. 3, 2002); *Union Carbide Corp. v. Siemens Westinghouse Power Corp.*, 2002 U.S. Dist. LEXIS 20190, No. 99 Civ. 12003, 2002 WL 31387269, *3 (S.D.N.Y. Oct. 23, 2002). Even if discovery were to be prolonged, "the adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading." *United States v. Continental Ill. Nat'l Bank & Trust Co.*, 889 F.2d 1248, 1255 (2d Cir. 1989) (citation omitted).[26]

Courts have allowed amendments to clarify or expand on existing claims

even where discovery has closed and summary judgment motions have been filed

---

[25] 654 F.2d 843, 856 (2d Cir., 1981). *Accord, Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau*, 786 F.2d 101 (2d Cir., 1986)(subject was covered in discovery).

[26] 2004 U.S. Dist. LEXIS 19623 (S.D.N.Y., 2004)(Exhibit H).

and decided.  In 2001 the Northern District of Illinois in *Boyd v. Ill. State Police* permitted an amendment after discovery had closed and a summary judgment motion had been filed and decided.[27]  The Court said in cases where the new allegations are related to existing claims the analysis is still the same; there is less probability that they will surprise the defendant and the task is to weigh the harm to plaintiffs in not having their claims heard against the claims of prejudice by the defendant:

> Thus, an amendment will be denied only where it would create "undue" prejudice, in other words, only where the prejudice "outweighs the moving party's right to have the case decided on the merits." *Id.* In balancing these interests, the court should consider the hardship to the moving party if the request to amend is denied, the reasons for the moving party's failure include the information in the initial pleading, and the harm to the opposing party if the motion is granted. *McCann v. Frank B. Hall & Co., Inc.,* 109 F.R.D. 363, 365 (N.D. Ill. 1986) (citing 6 WRIGHT, MILLER & COOPER: FEDERAL PRACTICE & PROCEDURE, § 1487 at p. 429). Examples of circumstances of "undue" prejudice include that the motion to amend comes on the eve of trial after many months or years of pretrial activity; would cause undue delay in the final disposition of the case; brings entirely new and separate claims, new parties, or at least entails more than an alternative claim or change in the allegations of the complaint; and would require expensive and time-consuming discovery. Id. at 366-67 (internal citations omitted).[28]

Rule 15 (a) says if it's in the interest of justice the Court can permit parties to amend their complaints *any* time. As *Moore's Federal Rules Pamphlet* puts it: "Specifically, the filing of either a pretrial motion under Rule 12 or a motion for

---

[27] 2001 U.S. Dist. LEXIS 8899, 7-8 (D. Ill., 2001)(Exhibit I).
[28] *Id.*

summary judgment under Rule 56 does not cut off the right of the plaintiff to amend the complaint."[29]   The rules particularly permit parties to amend their complaints to reflect the state of evidence on their claims.    Rule 15 (b) even permits parties to amend their complaints *after* trial to conform to the evidence presented there.

Some courts have denied motions to amend filed while summary judgment is pending to stop parties from abandoning claims they are bound to lose and inventing brand new dissimilar claims just to survive in court. Those cases aren't like this one because they have almost always involved new claims often totally unrelated to anything in the original complaint without any explanation for why they weren't made earlier.   One such case was *Messier v. Southbury Training School* where this Court in 1999 allowed a plaintiff to amend to add a party to his claim after a defendant moved for summary judgment but refused to allow him to add new claims against other defendants because he hadn't adequately explained why he didn't bother to make the claims earlier despite being granted three previous complaint amendments and seven extensions of time.[30]   The plaintiffs in the Western District of New York's 2000 decision in *Juncewicz v. Patton* faired no better than Messier because the Court believed they were amending their complaint

---

[29] *Moore's Federal Rules Pamphlet* §15.3 (Matthew Bender & Company, Inc. 2005)(citations omitted). .
[30] 1999 U.S. Dist. LEXIS 6992 (D. Conn., 1999)(Exhibit J).

to add an entirely new claim because they anticipated losing their original claim in a pending summary judgment motion.[31]

Here the Plaintiffs' proposed amendment merely adds detail from the plaintiffs' expert to the complaint; it doesn't abandon an old claim and seek to substitute a new one.  Still Dun & Bradstreet claims that the expert discovery "confirmed that there was no merit to the claim that the Plan's interest rate was unreasonable" and that the Plaintiffs are now trying to escape judgment by inventing a new claim after discovery closed and in the face of what Dun & Bradstreet assures us is the certain result that the Court will agree with its motion for summary judgment.[32]  This claim is meritless, first because it is at odds with the basic sequence of events. The relevance of the mortality table wasn't raised after the close of discovery; it was a focus of the expert discovery.  The motion to amend didn't follow years of the Plaintiffs sitting on their hands.  Dun & Bradstreet first claimed the Plaintiffs couldn't offer evidence about the mortality table in October 2004. In November 2004 the company moved for summary judgment and the parties discussed the proposed amendment during a conference call on December 6, 2004.   The Plaintiffs' moved to amend on December 20, 2004.  Second, Dun & Bradstreet wrongly suggests the Plaintiffs want to use the evidence concerning the mortality tables as a substitute for their claim about the

---

[31] 2002 U.S. Dist. LEXIS 22651 *29 (W.D.N.Y., 2002)(Exhibit K).
[32]  Opp. to Motion to Amend at 6.

Plan's interest rate. This simply isn't so. In their summary judgment brief, the Plaintiffs don't even discuss the impact of the mortality table until page 18 of their 23 page brief. When they do, they claim only that "the damage done to employee pensions by a high interest rate assumption is made worse when the plan also assumes unreasonably high mortality rates."[33]   The Plan's mortality assumptions are relevant to the Plaintiffs' claims; they are not a substitute target for the Plaintiffs' claims. Accordingly, the amendment should be allowed.

**Conclusion**

The Plaintiffs amendment should be allowed. It merely elaborates on their existing forfeiture claim. Where the amendment relates to existing claims, the courts almost always grants them even after the close of discovery or while a motion for summary judgment is pending. The amendment won't cause undue prejudice to Dun & Bradstreet; the company's failure to secure testimony to rebut the Plaintiffs' expert is its own fault.

THE PLAINTIFFS: Mary McCarthy, et al.

BY: /s/ Thomas G. Moukawsher
      Thomas G. Moukawsher (ct08940)
      Ian O. Smith (ct24135)
      Moukawsher & Walsh, LLC
      21 Oak Street
      Hartford, CT 06106
      (860) 278-7000

---

[33] Plaintiffs' Summary Judgment Opposition Br. at 18-19.

# CERTIFICATION

I hereby certify that a copy of the foregoing has been mailed on this date to the following counsel of record:

> Patrick Shea
> Paul, Hastings, Janofsky & Walker LLP
> 1055 Washington Boulevard
> Stamford, CT  06901-2216

Date:  January 20, 2005                    /s/ Thomas G. Moukawsher
                                           Thomas G. Moukawsher