# EXHIBIT E

LEXSEE 2004 U.S. DIST. LEXIS 21091

**Victor G. Reiling Associates and Design Innovation, Inc. v. Fisher-Price, Inc.**

No. 3:03cv222 (JBA)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

2004 U.S. Dist. LEXIS 21091

**September 30, 2004, Decided**

**PRIOR HISTORY:** Victor G. Reiling & Assocs. v. Fisher-Price, Inc., 2003 U.S. Dist. LEXIS 13277 (D. Conn., July 31, 2003)

**DISPOSITION:** Plaintiffs' motion to amend its complaint granted. Defendant's motion to strike portions of the amended complaint denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] For Design Innovation, Inc., Plaintiff: Edmund J. Ferdinand, III, Jessica Lee Elliott, Russell D. Dize, Grimes & Battersby, Norwalk CT.

For Victor G. Reiling Associates, Plaintiff: Edmund J. Ferninand, III, Jessica Lee Elliott, Grimes & Battersby, Norwalk CT.

For Fisher-Price, Inc., Defendant: Bradford S. Babbitt, Michael J. Kolosky, Robinson & Cole, Hartford, CT. Jodyann Galvin, Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, NY. Robert J. Lane, Jr., Hodgson Russ, Buffalo, NY.

**JUDGES:** Janet Bond Arterton, U.S.D.J.

**OPINIONBY:** Janet Bond Arterton

**OPINION:**

**Rulings on Plaintiffs' Motion for Leave to File a Second Amended Complaint Under Rule 15 of the Federal Rules of Civil Procedure [Doc. # 36]; Defendant's Motion to Strike [Doc. # 40]**

Plaintiffs seek leave to file a Second Amended Complaint incorporating new factual allegations. Defendant opposes, and, in the alternative, moves to strike portions of the Second Amended Complaint. For the reasons discussed below, plaintiffs' motion to amend is granted. Defendant's motion to strike is denied.

**I. Background**

Plaintiffs, Victor G. Reiling Associates ("Reiling") and Design [*2] Innovation, Inc. ("DI") are independent toy inventors. Defendant Fisher-Price, Inc., a division of Mattel, designs, manufactures, and markets toys. Plaintiff commenced this action in January 2003, alleging breach of implied contract, misappropriation, and unfair competition, on grounds that Fisher-Price copied their idea and design for enhancements to an action figure toy line. Plaintiffs claim that in 1998, they submitted to Fisher-Price a novel concept, called "Reel Action/Real Heroes," which would incorporate a battery-operated animation reel into backpacks carried by action figures in Fisher-Price's existing "Rescue Heroes" toy line, allowing children to view animated images through a viewer. Fisher-Price expressed interest in the concept and entered into an Option Agreement with plaintiffs on February 16, 1999, which provided Fisher-Price with the exclusive option for a fixed period of time to acquire the rights to make licensed products from Plaintiffs' concept. In March 1999, Fisher-Price informed Plaintiffs that their concept would be too expensive to manufacture and sell, and the Option Agreement thereafter expired. Plaintiffs subsequently sent Fisher-Price two additional [*3] submissions modifying the original concept, but both were rejected by Fisher-Price. Plaintiffs' original and First Amended Complaint alleged that the "Voice Tech Video Mission Rescue Heroes" action figures released in Fisher-Price's "Rescue Heroes" line in March 2002 employed a "backpack feature with an animated image component," which plaintiffs claim is the same idea and design as their "Reel Action/Real Heroes" concept.

Plaintiffs now move for leave pursuant to Fed. R. Civ. P. 15(a) and 15(d) to again amend their complaint. Their proposed Second Amended Complaint alleges that in late 2003, after the May 1, 2003 filing of their first

amended complaint, they learned of several additional products released by Fisher-Price as part of the "Rescue Heroes" line, which plaintiffs allege also incorporated their concept. In particular, the "Mission Select" Rescue Heroes released in 2003 feature a "re-designed backpack depicting still images on a rotating dial visible through a viewer," which plaintiffs assert is "strikingly similar to Plaintiffs' third submission that Fisher-Price had considered and ultimately [*4] rejected in January 2001. See Proposed Second Amended Complaint [Doc. # 36] at P35. Further, plaintiffs claim that accessories to the Voice Tech Video Mission Rescue Heroes, including a "Voice Tech Rescue Firetruck, Voice Tech Rescue Jet, Voice Tech Police Cruiser, and Aquatic Rescue Command Center"; Fisher-Price's line of "Optic Force" Rescue Heroes; and the line of "Voice Tech Mission Command" action figures, all employ the concept that they submitted to Fisher-Price. Finally, plaintiffs allege that videos, DVDs, and computer games involving the "Rescue Heroes" toy line also incorporate their novel concept submissions.

**II. Standard**

Fed. R. Civ. P. 15(a) provides that leave of court to amend the party's pleading "shall be freely given when justice so requires." "If the underlying facts or circumstances relied on by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [*5] undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.--the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962). It is the "rare" case in which such leave should be denied. See Ricciuti v. N.Y.C. Transit Authority, 941 F.2d 119, 123 (2d Cir. 1991).

Where the legal sufficiency of the amended complaint is challenged, the amendment should be evaluated under a Fed. R. Civ. P. 12(b)(6) standard. "The adequacy of the proposed amended complaint, however, is to be judged by the same standards as those governing the adequacy of a filed pleading. . . . Thus, the court should not dismiss the complaint for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,' and it should not deny leave to file a proposed amended complaint unless that same rigorous standard is met. Ricciuti, 941 F.2d at 123 (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)). [*6]

Fed. R. Civ. P. 15(d) provides that "upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor." "An application for leave to file a supplemental pleading is addressed to the discretion of the court, and permission should be freely granted where such supplementation will promote the economic and speedy disposition of the controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any other party." Bornholdt v. Brady, 869 F.2d 57, 68 (2d Cir. 1989).

**III. Discussion**

Fisher-Price argues that leave to amend is not appropriate because the amendments would be futile, and because plaintiffs [*7] have unduly delayed seeking amendment, to the prejudice of Fisher-Price. As to futility, Fisher-Price contends that the products plaintiffs seek to add did not make use of plaintiffs' concept; that plaintiffs' concept, as defined in the second amended complaint, was not novel; and that certain of the new claims are time barred.

**A. Futility**

Whether plaintiffs' concept was novel or was used by Fisher-Price are matters of significant factual dispute, and entirely inappropriate for disposition at this stage of the proceedings. Under Rule 15(a), the adequacy of a proposed amended complaint is to be assessed under the same liberal pleading standards as are all complaints. Federal Rule of Civil Procedure 8(a)(2) provides "that a complaint must include 'only a short and plain statement of the claim showing that the pleader is entitled to relief.' Such a statement must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002) (quoting Conley v. Gibson, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)). [*8] "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Id. (citations omitted). It bears repeating, therefore, that at this stage of the proceedings, plaintiffs need not establish that they will likely prevail in their claim, but merely that they are entitled to present evidence in support of their claim. Given the notice pleading standard, "a court may

dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz, 534 U.S. at 513-14 (citations and internal quotation marks omitted). Plaintiffs' proposed amendments allege that their concept was novel and was used by Fisher-Price. As defendant has challenged only the factual assertions of plaintiffs' complaint, not the legal sufficiency of the claims, their claim of futility under Rule 15(a) must fail. Defendant's arguments are best left for the summary judgment stage, where the protections and procedures of Fed. R. Civ. P. 56 and D. Conn. L. Civ. R. 56 [*9] would allow a fairer evaluation on a fully developed record. n1

> n1 Defendant's argument that plaintiff waived certain claims also fails. Defendant points to deposition testimony by one of plaintiffs' witnesses stating that he believed plaintiffs had no claim to certain Voice Tech vehicles, and that plaintiffs had no claim to the DVDs, computer games, and videos using the Rescue Heroes images. In light of the standard of review for amendments to a complaint, it is inappropriate to look beyond the four corners of the complaint to the deposition testimony of a witness.

Fisher-Price also argues that plaintiffs' claims relating to the Voice Tech Jet and Voice Tech Fire Truck, which were released in February 2000, are time-barred under the three year statute of limitations period governing Counts Two through Five of plaintiffs' proposed second amended complaint. These claims, however, are not futile, because they also bear upon plaintiffs' allegation of breach of implied-in-fact contract in Count One, which is governed [*10] by a six year statute of limitations. See N.Y. C.P.L.R. § 213(2). n2 The Court agrees, however, that these claims cannot be used as grounds for the misappropriation count (Count Two) of plaintiffs' Second Amended Complaint, because the February 6, 2004 filing of the proposed Second Amended Complaint came four years after plaintiffs' alleged injury occurred from Fisher-Price's release of the Voice Tech Jet and Voice Tech Fire Truck, exceeding the three year statute of limitations for claims of injury to property. See N.Y. C.P.L.R. § 214(4); see also M&T Chems., Inc. v. IBM 403 F. Supp. 1145, 1148 (S.D.N.Y. 1975) (finding misappropriation claims covered by N.Y. C.P.L.R. § 214(4) and recognizing that majority of courts have found that "the injury to a plaintiff's interest occurs, and the statute begins to run, either at the time of misappropriation or when disclosure of the [protected intellectual property] is made, such as when a patent issues or when an invention is put into public use."). To the extent the Voice Tech Jet and Fire Truck allegations are [*11] claimed as a basis for liability on plaintiffs' CUPTA claim in Count Three, they are similarly barred by the applicable limitations period. See Conn. Gen. Stat. § 42-110g(f) (statute of limitations for a CUTPA claim is three years). Nor can these claims support Count Four, which alleges common law unfair competition, as the core of this count is tortious interference, which carries a three year statute of limitations. See Ediciones Quiroga, S.L. v. Fall River Music, Inc., 1995 U.S. Dist. LEXIS 2641, 1995 WL 103842, * 8 (S.D.N.Y. March 7, 1995 ) (noting that while "the period for claims of unfair competition has been treated disparately in New York," courts generally "analogize the facts underlying the unfair competition claim to an appropriate cause of action and to use the corresponding statute of limitations"); Norris v. Grosvenor Marketing Ltd., 803 F.2d 1281, 1287 (2d Cir. 1986); Niagra Mohawk Power Corp. v. Freed, 288 A.D.2d 818, 733 N.Y.S.2d 828, 829 (App. Div. 2001) (3 year statute of limitations for tortious interference claims).

> n2 The parties agree that New York law governs the breach of contract and misappropriation claims. Defendant has argued, and plaintiffs have not disputed, that New York law also governs plaintiffs' common law unfair competition claims.

[*12]

As the Voice Tech Jet and Fire Truck are entirely different products than those claimed in the original complaint, these claims do not relate back to the filing of the original complaint. Under Fed. R. Civ. P. 15(c)(2), "an amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." As the Second Circuit has recognized, "the pertinent inquiry . . . is whether the original complaint gave the defendant fair notice of the newly alleged claims." Wilson v. Fairchild Republic Co., 143 F.3d 733, 738 (2d Cir. 1998). Here, plaintiffs have not argued that their claims involving the Voice Tech Jet and Fire Truck relate back, and the Court sees no basis for so concluding, as these products are distinct from those claimed in the original complaint.

### B. Delay and Prejudice

Fisher-Price also argues that plaintiff's motion is untimely, and plaintiffs have failed to explain their failure to include in their original complaint products about [*13] which they knew or should have known. Because the proposed Second Amended Complaint adds

claims regarding at least fifteen additional products, "expanding the scope of this action so radically that it is essentially an entirely different lawsuit," Fisher-Price argues it is prejudiced by the delay. See Fisher-Price's Memorandum in Opposition to Plaintiffs' Motion to Amend and In Support of its Motion to Strike [Doc. # 43] at 1.

While Rule 15(a) provides that leave to amend should "be freely given," it is within the Court's discretion "to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant. The burden is on the party who wishes to amend to provide a satisfactory explanation for the delay." Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990) (citations omitted).

Here, plaintiffs moved for leave to amend in February 2004, prior to the close of discovery and well before motions for summary judgment were due. See May 16, 2003 Scheduling Order [Doc. # 21] (providing for completion of discovery by March 3, 2004 and filing of [*14] dispositive motions by April 5, 2004 ). Compare Min Jin v. Metro. Life Ins. Co., 310 F.3d 84, 101 (2d Cir. 2002) (finding no abuse of discretion to deny motion to amend where the motion was filed "long after the close of discovery and almost four months after [the ruling] on the summary judgment motion."). While the motion to amend came one year after filing suit, plaintiffs have offered satisfactory explanations for their delay. One toy line -- the "Mission Select" Rescue Heroes -- was introduced by Fisher-Price in February 2003, the same month that plaintiffs filed this suit, and plaintiffs claim that they did not discover this line until after the suit had been filed. See Proposed Second Amended Complaint [Doc. # 36] at P35; Declaration in Opposition to Plaintiffs' Motion to Amend [Doc. # 45] at P18. The "Optic Force" Rescue Heroes figures were released in October 2003, well after the filing of plaintiffs' original complaint. See Declaration in Opposition to Plaintiffs' Motion to Amend [Doc. # 45] at P20. Plaintiffs have submitted affidavits that they did not discover these and the other products claimed in the proposed Second Amended Complaint [*15] until late 2003. Reiling, for example, states in an affidavit that he did not learn about these products earlier because "in 1999 or thereabouts . . . Fisher-Price changed its policy and stopped inviting outside investors to its Toy Fair showroom and stopped giving its product catalogues to outside inventors." Reply Declaration of Victor G. Reiling [Doc. # 57] at P10. Reiling acknowledges that he might have learned of the products released prior to 2003 if he had more carefully "policed the marketplace for any possible unauthorized use of my concepts," but states that he did not have the "time and energy" to do so because his "efforts are concentrated on the development of new concepts and ideas." Id.

Fisher-Price seeks to preclude any amendments involving products that plaintiffs should have known about prior to filing suit. Such a strict standard is inconsistent with the plain intent of Rule 15(a), particularly where, as here, there is no evidence of bad faith or dilatory motive. Plaintiffs moved to amend their complaint within two to three months after they claim they first discovered the products. Permitting amendment would allow adjudication of all of plaintiffs' claims [*16] against FisherPrice in one suit, which is particularly appropriate here, where the new products all relate to the same legal claims in plaintiffs' original complaint, and all are claimed to incorporate the same "novel concept" that is the subject of the original action. Avoiding piecemeal litigation serves the interests of judicial economy, and would allow a more efficient use of the parties' resources.

Given the procedural posture of this case, the additional time that will be needed to allow the parties to complete discovery on the new allegations in the Second Amended Complaint will not unduly prejudice Fisher-Price. Fisher-Price argues that it will need to re-depose five of plaintiffs' witnesses about the additional products claimed in plaintiffs' amended complaint, will need to produce and request additional documents, and will need to do a further search of prior art that is relevant to the issue of novelty with respect to the additional products. See Declaration by Robert J. Lane, Jr. in Opposition to Motion to Amend [Doc. # 42] at PP11-16. Fisher-Price also asserts that it will need additional discovery on plaintiffs' concept because plaintiffs amended their definition [*17] of their concept from a "battery operated animated image player" to a "battery operated image player." There is undoubtedly additional discovery needed to supplement the discovery that has already taken place on plaintiffs' concept, any prior art related to such a concept, and whether Fisher-Price's action figures make use of plaintiffs' concept. The additional discovery, however, can reasonably be accommodated with modification to the scheduling order, is not a significant departure from the current course of discovery, and would not radically change the scope of the litigation. The anticipated discovery is closely related to plaintiffs' underlying claims, and, given plaintiffs' estimate that they will need no more than two months to complete any additional discovery, and Fisher-Price's estimate of five supplemental depositions and document requests on prior art, among other matters, would not be unduly burdensome. In light of these considerations, and in recognition that plaintiffs would be entitled to bring a new lawsuit instead of incorporating the new allegations

into its Second Amended Complaint, defendant's request that plaintiffs assume the costs for the additional discovery [*18] is denied.

### C. References to Statements Made During Settlement Discussions

Defendant also moves pursuant to Fed. R. Civ. P. 12(f) to strike Paragraphs 40 and 57 of plaintiffs' proposed Second Amended Complaint because the allegations in these paragraphs refer to statements made in the context of settlement discussions, and are therefore inadmissible under Fed. R. Evid. 408. Rule 12(f) provides that a court "may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." "In deciding whether to strike a Rule 12(f) motion on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible." Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976).

Paragraph 40 of the proposed Second Amended Complaint provides:

> After the First Amended Complaint was filed, defendant threatened to terminate its business relationship with Plaintiff DI unless DI withdrew from the lawsuit. Because the business relationship [*19] between defendant and DI results in significant business to DI, DI considered this request. However, DI was then informed that not only would DI have to withdraw the lawsuit in order to maintain a business relationship, but Reiling would have to withdraw as well. When Reiling refused to withdraw, Defendant terminated its business relationship with DI. The foregoing acts by Defendant constitute tortious interference with the business relationship between Reiling and DI in that DI has attempted and continues to attempt to force DI to use its influence with Reiling to persuade Reiling to withdraw from the lawsuit.

Id.; see also P57 (alleging that "Defendant's termination of its relationship with Plaintiff DI, its attempt to force DI to withdraw from the lawsuit, and its attempt to tortiously interfere with the business relationship between Reiling and DI by seeking to force DI to use its influence with Reiling to persuade Reiling to withdraw from the lawsuit," constitute unfair competition). Fisher-Price has submitted a declaration from its Senior Vice-president for Inventor Relations, Stan Clutton, who states that the "only discussion that ever occurred relating to the [*20] possibility that Fisher-Price would cease doing business with Design Innovation were related to settling this case." Declaration in Support of Motion to Strike [Doc. # 41] at P3.

Fed. R. Evid. 408 generally bars evidence related to settlement or compromise negotiations. It prohibits evidence of "(1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed," if offered to prove liability for or invalidity of the claim, and bars all "evidence of conduct or statements made in compromise negotiations." Fed. R. Evid. 408. Fisher-Price thus argues that because the allegations in Paragraphs 40 and 47 are based on settlement negotiations, no evidence is support of them will be admissible and they must be stricken. Plaintiffs argue, however, that their allegations do not implicate Rule 408 because they involve threats, not offers to compromise. Further, plaintiffs argue that even if subject to Rule 408, the statements alleged are admissible for purposes other than to demonstrate [*21] liability, such as to show FisherPrice 's motive.

At this stage of the proceedings, it cannot be said to be beyond all doubt that no evidence in support of the allegations in Paragraph 40 and 57 will be admissible. At least some of the allegations in these paragraphs do not involve statements made in compromise negotiations at all, but rather affirmative acts taken by Fisher-Price in terminating its business relationship with DI. Moreover, plaintiffs would be entitled to present evidence of Fisher-Price's motivation in terminating its relationship, or of its threats of retaliation, to the extent they constitute an additional wrong, without implicating the strictures of Rule 408. See Fed. R. Evid. 408 (rule "does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."). In Carney v. American University, 331 U.S. App. D.C. 416, 151 F.3d 1090, 1095-96 (D.C. Cir.1998), for example, the D.C. Circuit held that "although settlement letters are inadmissible [*22] to prove liability or amount," "such correspondence can be used to establish an independent violation (here, retaliation) unrelated to the underlying claim which was the subject of the correspondence (race discrimination)." See also 23 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5314, at 282 (1980) ("Rule 408 is [] inapplicable when the claim is based upon some wrong that was committed in the course of settlement discussions; e.g., libel, assault, breach of contract, unfair labor practice, and the like.");

Uforma/Shelby Business Forms, Inc. v. NLRB, 111 F.3d 1284, 1294 (6th Cir. 1997) ("We hold that Rule 408 does not exclude evidence of alleged threats to retaliate for protected activity when the statements occurred during negotiations focused on the protected activity and the evidence serves to prove liability either for making, or later acting upon, the threats."). As in Carney and Uforma, here the claimed statements made in settlement negotiations relate not to Fisher-Price's liability to plaintiffs for their underlying claim that Fisher-Price used plaintiffs' novel concept in its action figure toy line, but [*23] rather go to the motivations for the additional claimed wrong that occurred when Fisher-Price terminated its business relationship with DI, which forms a basis of plaintiffs' amended unfair competition claim. As there may be admissible evidence to support the allegations in Paragraphs 40 and 57, there is no basis for striking them at this stage.

Fisher-Price also argues, however, that the allegations regarding the settlement discussions would be futile to the extent they make a claim of tortious interference, because plaintiffs have not pleaded that they suffered "actual, ascertainable loss," as is required to state a tortious interference claim. See Conn. Mobilecom, Inc. v. Cellco P'ship (In re Conn. Mobilecom, Inc.), 2003 U.S. Dist. LEXIS 23063, 2003 WL 23021959, *8 (S.D.N.Y. Dec. 23, 2003). Plaintiffs have not responded to this argument in their opposition to defendant's motion to strike. Plaintiffs, moreover, have not pleaded a separate cause of action for tortious interference, and instead appear to include such allegations as part of their claim of unfair competition. As such, the Court at this stage does not construe plaintiffs' complaint to contain a tortious interference cause of action. Defendants' motion [*24] to strike the tortious interference claim as futile is therefore denied, without prejudice to renew if plaintiffs pursue such a legal claim.

## IV. Conclusion

For the foregoing reasons, plaintiffs' Motion for Leave to File a Second Amended Complaint Under Rule 15 of the Federal Rules of Civil Procedure [Doc. # 36] is GRANTED. Defendant's Motion to Strike [Doc. # 40] is DENIED.

The parties are requested to submit by 10/15/04 a Supplemental 26(f) Planning Report reflecting proposed amendments to the original scheduling order.

IT IS SO ORDERED.

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut: September 30, 2004