# EXHIBIT H

LEXSEE 2004 U.S. DIST. LEXIS 19623

**EUGENE C. SMITH, Plaintiff, -against- P.O. CANINE DOG CHAS, SHIELD NO. # 170 in his official and individual capacity; P.O. FAIVRE, SHIELD NO. # 856 in his official and individual capacity; P.O. MICHAEL DiCAPRIO, SHIELD NO. # 149 in his official and individual capacity; P.O. HARSANY, SHIELD NO. # 901 in his official and individual capacity; P.O. DELLACAMERA, SHIELD NO. # 909 in his official and individual capacity; P.O. KWECHIN MAGGLORE, SHIELD NO. # 596 in his official and individual capacity; P.O. RICHARD MILLER, SHIELD NO. # 674 in his official and individual capacity; P.O. VINCEN DIDIO, SHIELD NO. # 448 in his official and individual capacity; P.O. PELEPORO, SHIELD NO. # 182 in his official and individual capacity; P.O. J. PENZO, SHIELD NO. # 840 in his official and individual capacity; P.O. K. OLSON, SHIELD NO. # 274 in his official and individual capacity; DETECTIVE GAIL HARDY, SHIELD NO. # 696 in her official and individual capacity; POLICE COMMISSIONER CHARLES COLA OF THE YONKERS POLICE DEPT. located at 100 Broadway, Yonkers, N.Y. 10701, Defendants.**

02 Civ. 6240 (KMW) (DF)

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

2004 U.S. Dist. LEXIS 19623

**September 28, 2004, Decided**

**DISPOSITION:** Magistrate recommended that Defendants' motion for summary judgment be granted, and that Complaint be dismissed in its entirety.

**LexisNexis(R) Headnotes**

**COUNSEL:** [*1] Eugene C. Smith, Plaintiff, Pro se, Stormville, NY.

For CHAS, in his official and individual capacity, FAIVRE, in his official and individual capacity, MICHAEL DiCAPRIO, in his official and individual capacity, HARSANY, in his official and individual capacity, DELLACAMERA, in his official and individual capacity, KWECHIN MAGGLORE, in his official and individual capacity, RICHARD MILLER, in his official and individual capacity, VINCEN DIDIO, in his official and individual capacity, PELEPORO, in his official and individual capacity, J. PENZO, in his official and individual capacity, K. OLSON, in his official and individual capacity, GAIL HARDY, in her official and individual capacity, CHARLES COLA OF THE YONKERS POLICE DEPT., Defendants: Ching Wah Chin,, William M. Mooney, Corporation Counsel of the City of Yonkers, Yonkers, NY.

**JUDGES:** DEBRA FREEMAN, United States Magistrate Judge, Kimba M. Wood, U.S.D.J.

**OPINIONBY:** DEBRA FREEMAN

**OPINION:**

REPORT AND RECOMMENDATION

**TO THE HONORABLE KIMBA M. WOOD, U.S.D.J.:**

INTRODUCTION

Defendants have moved for summary judgment dismissing the claims of *pro se* plaintiff Eugene Smith ("Smith") in this action commenced pursuant to 42 U.S.C. § 1983. [*2] Liberally construed, n1 Smith's Complaint principally charges that members of the Yonkers Police Department (the "YPD" or the "Department") violated his constitutional rights by subjecting him to excessive force involving the use of a police dog during his arrest.

> n1 Where, as here, a plaintiff is proceeding *pro se*, the Court must construe the plaintiff's pleadings liberally, applying a less stringent standard than when a plaintiff is represented by counsel. *Branham v. Meachum*, 77 F.3d 626, 628-29 (2d Cir. 1996).

It is undisputed that Smith was arrested after being found hiding in the basement of a home he admitted to burglarizing. According to Smith, the police dog that located him in the basement was released by a police officer unjustifiably and without warning, and then attacked him "viciously," causing him serious injuries. Smith challenges the officer's alleged failure to warn him that the dog was being released, the actual release of the dog, and/or the alleged failure of the police [*3] to control the dog after it attacked him. Smith further asserts that members of the YPD were inadequately trained, supervised, and disciplined in connection with the use of police dogs, and that his injuries therefore arose from constitutionally deficient "policies, customs, and practices" of the Department. Smith seeks monetary relief, as well as an order enjoining the defendants from engaging in the alleged unlawful "activities."

For the reasons stated below, I respectfully recommend that the defendants' motion for summary judgment be granted.

**FACTUAL BACKGROUND**

**A. Events Preceding Smith's Arrest**

Smith does not dispute defendants' account of the events that preceded his being found by a police dog in the basement of a residence that he was in the process of burglarizing. On November 28, 2000, several officers of the YPD Anti-Crime Unit were patrolling an area of Southeastern Yonkers where there had been a recent rash of burglaries. (*See* Defendants' Memorandum of Law in Support of Motion for Summary Judgment filed Nov. 14, 2003 ("Def. Mem.") (Dkt. 33) at 2; Affirmation in Support by Brendan James Mayer, Esq. filed Nov. 14, 2003 ("Mayer Aff.") (Dkt. 34) [*4] Ex. A.) Among those officers were defendants R. Faivre ("Faivre"), J. Penzo ("Penzo"), Michael DiCaprio ("DiCaprio"), and K. Olson ("Olson"). (*See id.*) n2

> n2 Also on the patrol, although not named as defendants, were Officers Venturino, Donachy, Recine, and Krasniqi. (*Id.*)

While on patrol, Officers Faivre, Penzo and DiCaprio observed a black male, later identified as Smith, wearing a brown leather jacket and carrying a backpack, standing on the corner "looking around." (Mayer Aff. Ex. A.) Smith began to walk in and out of the backyards of residences in the area. (*Id.*) Some of the officers followed Smith on foot to continue surveillance, while other officers followed in unmarked police vehicles. (*Id.*) Smith continued in and out of the backyards of several houses on different avenues in the area, with the officers watching. (Def. Mem. at 2-3; Mayer Aff. Ex. K.)

Finally, Smith walked to the rear of a home located at 55 Crestmont Avenue (the "residence") and failed to emerge. (Def. Mem. at 3; Mayer [*5] Aff. Ex. A.) Officers then proceeded to the rear of this residence. (*Id.*) There they observed an open window on the ground floor, a screen placed nearby that appeared to have come from the window, and, also on the ground near the window, the brown leather jacket that Smith had been wearing. (*Id.*)

The officers surrounded the residence. (Mayer Aff. Ex. A.) Officer DiCaprio saw Smith inside the residence and made eye contact with him. (Def. Mem. at 4; Mayer Aff. Ex. J ("Smith Dep.") at 46-48; Affidavit/Affirmation in Opposition by Eugene C. Smith sworn to Dec. 22, 2003 ("Pl. Aff.") PP 11,18.) Smith then went and hid in a basement crawlspace. (Def. Mem. at 4; Smith Dep. at 52-54; Pl. Aff. P 19.) The police called two Emergency Services Unit ("ESU") trucks and a K-9 unit to assist. (Def. Mem. at 4; Mayer Aff. Exs. A, C, L.) n3 Once these units arrived, and having received information that there may have been firearms in the home, several officers, including ESU officers, K-9 team Officer Potanovic, and his K-9 partner Chas (the dog), entered the residence. (Def. Mem. at 4-5; Mayer Aff. Exs. A, C, L; Pl. Aff. P 21.)

> n3 The additional units included Lieutenants Hanley and Barca, and ESU officers Montalvo, Messar, and Rinciari, along with K-9 team # 2, Police Officer Potanovic and his K-9 partner, Chas. (Def. Mem. at 4.) Of these, only Chas (the dog) is named as a defendant in this action.

[*6]

**B. The Release of the Police Dog and Smith's Arrest**

Smith states that, upon observing "50 to 60" officers with their weapons drawn, directly outside the window of the residence he had entered, he ran and hid out of fear for his life. (Pl. Aff. PP 17-21.) According to Smith, the police then, without warning and without first providing him with a chance to surrender, released the police dog

into the basement to attack him. (*Id.* PP 13, 21, 23.) Smith further alleges that the police allowed the dog to attack him for 20 minutes, before stopping the attack. (*Id.* PP 14, 24.) Although defendants assert that it was Smith who attacked the dog (Def. Mem. at 5), Smith contends that, to the extent he did so, it was in self-defense (Pl. Aff. P 14.) Smith alleges that, upon being bitten, he suffered puncture wounds that were so deep they reached the bone, and that he also suffered severe tissue tears, lacerations, and torn ligaments to his left forearm and right ankle. (Complaint filed June 24, 2002 n4 ("Compl.") (Dkt. 2) P 11; Pl. Aff. Ex. A (color photographs taken after the incident showing Smith's injuries).)

> n4 Although the Complaint was not docketed until August 6, 2002, Smith signed it on June 24, 2002, and, where a *pro se* plaintiff is incarcerated at the time a suit is commenced, the date on the pleading itself is generally considered the filing date. *See Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (*pro se* prisoner litigant's § 1983 complaint considered "filed" as of date of delivery to prison officials for transmittal to court), modified on other grounds, 25 F.3d 81 (2d Cir. 1994).

[*7]

Defendants contend that Smith was evading police and resisting arrest by hiding in the basement crawlspace. (Def. Mem. at 4, 6.) They further assert that the additional ESU and K-9 units that were called to the scene were necessary, based on received information that there might be weapons present and that Smith therefore posed an immediate threat. (*Id.* at 4, 16.) Defendants assert that, with this information in mind, the K-9 Unit Officer, Officer Potanovic, entered the house and gave the appropriate K-9 warning. n5 (*Id.* at 4-5; Potanovic Aff. PP 8-9.) After purportedly waiting two minutes for a response and receiving none, Officer Potanovic states that he released Chas into the first and second floors of the home. (Def. Mem. at 4-5.) Finally, according to defendants, Officer Potanovic opened the basement door, gave another warning, again waited for approximately two minutes, and, receiving no response, released the dog into the basement where Smith was hiding. (*Id.* at 5; Potanovic Aff. PP 10-11.) The crawl space where Smith was hiding was dark, ran approximately 25 feet back and was three feet high. (Def. Mem. at 16; Smith Dep. at 52-54, 57.)

> n5 According to Officer Potanovic, the warning he gave was: "This is the police. I have a trained dog. If you do not come out, I am going to turn him loose." (Mayer Aff. Ex. L (Affidavit of Edward Potanovic, sworn to November 14, 2003 ("Potanovic Aff.") PP 8, 10).)

[*8]

Defendants contend that, when Officer Potanovic advanced, he found Smith "twisting Chas' snout and kicking Chas in the ribs." (Def. Mem. at 5.) Defendants assert that the officer recalled Chas as soon as the dog could break free from Smith's grip. (*Id.*; Potanovic Aff. PP 13-14.) Defendants further assert that the dog only bit Smith in self-defense, when it was kicked. (*Id.* at 5.) According to defendants, Smith's injuries were puncture wounds that did not require stitches or staples, while the dog, for its part, suffered a laceration to its mouth and contusions to its rib cage. (*Id.* at 6; Potanovic Aff. P 16.) Defendants suggest that Smith's supposedly "erratic behavior" and treatment of the dog may be explained, at least in part, "by the fact that he was high on crack cocaine" at the time. (*Id.* at 5; *see also* Smith Dep. at 49-50 (admitting that he was under the influence of crack cocaine at the time of the incident).)

Smith was placed under arrest at the scene (Def. Mem. at 5), and was transported to the emergency room of St. Joseph's Hospital in Yonkers for treatment (*id.* at 6; Pl. Aff. P 15.) He was charged with burglary in the second degree, to which he [*9] later pleaded guilty. (Def. Mem. at 7-9; Pl. Aff. P 9.)

**PROCEDURAL BACKGROUND**

In his Complaint, Smith alleges that, as a result of the use of excessive force during his arrest, he suffered severe physical injury. (Compl. PP 11-12, 15.) It appears that Smith may also be alleging claims for, *inter alia*, false arrest, false imprisonment, and malicious prosecution. (*Id.* P 16; Def. Mem. at 12.) He seeks injunctive relief, as well as $ 10,000,000 in punitive damages. (Compl. PP 23, 26)

On October 25, 2002, defendants answered the Complaint. (Dkt.15.) Subsequently, on November 21, 2003, defendants moved for summary judgment, pursuant to Federal Rule of Civil Procedure 56(c), on the grounds that: (1) the Complaint fails to state any claim upon which relief can be granted; (2) the individual defendants are entitled to qualified immunity; and (3) Smith cannot establish the existence of any municipal policy or custom, or lack of training or supervision, which caused the alleged deprivation of Smith's constitutional rights. (Def. Mem. at 1.)

On December 22, 2002, Smith submitted his opposition to defendants' summary judgment motion, [*10] asserting that his claims should not be summarily

dismissed because genuine issues of material fact exist regarding the circumstances surrounding the incident. (Pl. Aff. PP 53-56.)

### DISCUSSION

**I. SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," Fed. R. Civ. P. 56(c), *i.e.*, "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986); *accord Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986), [*11] and the Court must view the record in the light most favorable to the non-movant by resolving all ambiguities and drawing all reasonable inferences in favor of that party, *Matsushita*, 475 U.S. at 587-88; *see also Tomka v. Seiler Corp.*, 66 F.3d 1295, 1304 (2d Cir. 1995). Where, however, the non-movant has no evidentiary support for an essential element on which it bears the burden of proof, summary judgment is warranted. *Celotex*, 477 U.S. at 322-23; *Silver v. City Univ. of New York*, 947 F.2d 1021, 1022 (2d Cir. 1991); *see also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim.").

Further, where, as here, the party opposing summary judgment is proceeding *pro se*, the Court must read his papers liberally and interpret them "to raise the strongest arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) [*12] (internal quotation marks and citation omitted). Even a *pro se* plaintiff, however, cannot withstand a motion for summary judgment by relying merely on the allegations of a complaint. *See Champion v. Artuz*, 76 F.3d 483, 485 (2d Cir. 1996). Rather, when confronted with evidence of facts that would support judgment in the defendant's favor as a matter of law, the plaintiff must come forward with evidence in admissible form that is capable of refuting those facts.

*See* Fed. R. Civ. P. 56(e); *see also Jermosen v. Coughlin*, 877 F. Supp. 864, 867 (S.D.N.Y. 1999) (*pro se* plaintiffs must make proper evidentiary showing in order to defeat summary judgment).

**II. THE K-9 DOG'S LACK OF CAPACITY TO BE SUED**

Defendants have moved for summary judgment on all claims against Chas, the dog, because 42 U.S.C. § 1983 does not, as a matter of law, permit suits against animals. (Def. Mem. at 11.) Section 1983 states that any "person" who, under color of law, deprives a United States citizen of his or her Constitutional rights, will be liable for his or her actions. A police dog [*13] is not a "person" for these purposes. *See, e.g., Fitzgerald v. McKenna*, 1996 U.S. Dist. LEXIS 18429, 95 Civ. 9075 (DAB) (HBP), 1996 WL 715531, at *7 (S.D.N.Y. Dec. 11, 1996) (the court, on its own motion, denied an attempt to maintain a Section 1983 action against "K-9 Dog Stan" because "animals lack capacity to be sued"); *see also Dye v. Wargo*, 253 F.3d 296, 299 (7th Cir. 2001) (finding that the word "person" under Section 1983 includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals . . . ," but not dogs, and noting the array of problems that would result were the court to hold otherwise) (quoting 1 U.S.C. § 1). Thus, a dog is an inappropriate party in this case, and I respectfully recommend that summary judgment be granted as against Chas on all claims.

**III. ELEVENTH AMENDMENT**

With respect to the remainder of the named defendants - various police officers and the YPD Commissioner - Smith seeks both monetary and injunctive relief, and he has named all of these defendants in both their official and individual capacities. These defendants, however, are entitled to partial [*14] protection from suit under the Eleventh Amendment.

The Eleventh Amendment bars suit in federal court by a citizen of a state against a state or its agencies, unless the state has waived immunity to suit or Congress has abrogated the state's immunity. *Huang v. Johnson*, 251 F.3d 65, 69-70 (2d Cir. 2001); *Woods v. Goord*, 2002 U.S. Dist. LEXIS 7157, No. 01 Civ. 3255 (SAS), 2002 WL 731691, at *3 (S.D.N.Y. Apr. 23, 2002) (collecting cases); *Johnson v. Bendheim*, 2001 U.S. Dist. LEXIS 9679, No. 00 Civ. 720 (JSR) (KNF), 2001 WL 799569, at *9 (S.D.N.Y. July 13, 2001) (citing *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 134 L. Ed. 2d

252, 116 S. Ct. 1114 (1996)). Where a state official is sued for damages in his official capacity, the suit is deemed to be one against the state, and is barred by the Eleventh Amendment. *Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993); *Farid v. Smith*, 850 F.2d 917, 920-21 (2d Cir. 1988).

In this case, there has been no waiver of immunity by the state, and 42 U.S.C. § 1983 was not intended to abrogate the states' immunity. *See, e.g.*, *Woods*, 2002 U.S. Dist. LEXIS 7157, 2002 WL 731691, at *3 (citing [*15] *Quern v. Jordan*, 440 U.S. 332, 343-44, 59 L. Ed. 2d 358, 99 S. Ct. 1139 (1979); *Oyague v. New York*, 2000 U.S. Dist. LEXIS 12426, No. 98 Civ. 6721 (TPG), 2000 WL 1231406, at *5 (S.D.N.Y. Aug. 31, 2000)); *Johnson*, 2001 U.S. Dist. LEXIS 9679, 2001 WL 799569, at *9. Therefore, to the extent that Smith is suing any of the defendants for monetary relief in their official capacities, Smith's suit is barred by the Eleventh Amendment. *See Gowins v. Greiner*, 2002 U.S. Dist. LEXIS 14098, 01 Civ. 6933 (GEL), 2002 WL 1770772, at *3-4 (S.D.N.Y. July 31, 2002); *Woods*, 2002 U.S. Dist. LEXIS 7157, 2002 WL 731691, at *3; *Johnson*, 2001 U.S. Dist. LEXIS 9679, 2001 WL 799569, at *9, and I recommend that his claims be dismissed to that extent.

The Eleventh Amendment, however, does not bar suits against state officials in their official capacities where those suits seek prospective injunctive or declaratory relief. *Gowins*, 2002 U.S. Dist. LEXIS 14098, 2002 WL 1770772, at *3 (citing *Ex parte Young*, 209 U.S. 123, 159-60, 52 L. Ed. 714, 28 S. Ct. 441 (1908)). Moreover, the Eleventh Amendment does not bar actions against state officials in their individual capacities, although such actions may, of course, still be subject to dismissal on some other basis. *Jing Gan*, 996 F.2d at 529; [*16] *Gowins*, 2002 U.S. Dist. LEXIS 14098, 2002 WL 1770772, at *3; *Johnson*, 2001 U.S. Dist. LEXIS 9679, 2001 WL 799569, at *9. Therefore, Smith is not barred by the Eleventh Amendment from proceeding on his Section 1983 claims for injunctive relief, nor is he barred from pursuing his claims for damages against the YPD officials in their individual capacities. Nonetheless, his claims for injunctive relief, and against the defendants in their individual capacities, must still survive scrutiny under the applicable legal standards.

## IV. SMITH'S LACK OF STANDING TO SEEK INJUNCTIVE RELIEF

Smith cannot prevail on his claim for injunctive relief because he has not demonstrated that he has standing to raise such a claim.

The gravamen of Smith's Complaint is that the police violated his rights by the unlawful use of a police dog, which allegedly attacked him during the course of his arrest. Smith seeks an "injunction against defendant[]s . . . to cease and desist from the above described activities." (Compl. P 23.) To pursue injunctive relief, however, a plaintiff must not only be able to show that he has suffered an injury in the past, but also that he is likely to be similarly injured in the future. [*17] *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-09, 75 L. Ed. 2d 675, 103 S. Ct. 1660 (1983) (plaintiff, who had been placed in a choke hold when arrested, lacked standing to seek an injunction against what he deemed to be a policy of routinely placing choke holds on arrestees, because any allegations of future injury were too speculative).

Here, Smith has testified that his only injuries came from being bitten by the police dog. (*See* Smith Dep. at 67, ll. 17-19 ("Q. Besides the dog, did you suffer any injuries from any of the police officers? A. No.") Yet Smith has made no showing that he is likely to be injured again by a similar attack, and thus he has not satisfied the standing requirement. *See id.*; *see also Curtis v. City of New Haven*, 726 F.2d 65 (2d Cir. 1984) (plaintiffs, who had been sprayed with mace by officers, lacked standing to seek injunctive relief because they were unlikely to be injured from mace in the future). Therefore, Smith is not entitled to pursue his claim for injunctive relief against any defendant, and I recommend that his claim for injunctive relief be dismissed.

## V. SMITH'S CLAIMS AGAINST DEFENDANTS IN THEIR INDIVIDUAL [*18] CAPACITIES

At the heart of Smith's damages case is a Section 1983 claim that, by allowing him to be attacked by a police dog, police officers engaged in the excessive use of force, in violation of the Fourth Amendment. To the extent Smith may be seeking to assert any other types of claims, the Court will address such claims first, as it appears they can be easily disposed of.

### A. False Arrest, False Imprisonment, and Malicious Prosecution

To the extent that Smith is attempting to plead Section 1983 claims for false arrest, false imprisonment, or malicious prosecution (*see* Compl. P 16; Pl. Aff. P 57), such claims cannot stand because Smith's guilty plea establishes that there was probable cause for his arrest.

In order to maintain any such claim, Smith must demonstrate that his arrest was made *without* probable cause. *See Rossi v. New York City Police Dep't*, 1998 U.S. Dist. LEXIS 1717, No. 94 Civ. 5113 (JFK), 1998 WL 65999, at *4-5 (S.D.N.Y. Feb. 17, 1998) (citing *Baker v. McCollan*, 443 U.S. 137, 61 L. Ed. 2d 433, 99

S. Ct. 2689 (1979)). Yet the fact that Smith pleaded guilty to burglary and was convicted on that plea (*see* Pl. Aff. at P 9; Def. Mem. at 7-9 (citing [*19] trial transcript)) is "conclusive evidence of probable cause," unless his conviction has been reversed on appeal. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *Rossi*, 1998 U.S. Dist. LEXIS 1717, 1998 WL 65999, at *4-5. As Smith's conviction has not been reversed on appeal, his guilty plea stands as a complete bar to any claims of false arrest, false imprisonment, and malicious prosecution under Section 1983. *See Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995) (malicious prosecution claim requires that the defendant show termination of proceedings in his favor.); *Hygh v. Jacobs*, 961 F.2d 359, 367 (2d Cir. 1992) ("A plaintiff alleging the constitutional tort of malicious prosecution in an action pursuant to § 1983 must establish termination of the prosecution in his favor," which is accomplished "only when their final disposition is such as to indicate the accused is not guilty."); *Rossi*, 1998 U.S. Dist. LEXIS 1717, 1998 WL 65999, at *4-5; *Harvey v. New York City Police Dep't*, 1997 U.S. Dist. LEXIS 7657, No. 93 Civ. 7563 (JSR), 1997 WL 292112, at *1 (S.D.N.Y. June 3, 1997) ("Plaintiff's plea of guilty to the charged offense in the preceding criminal matter is a [*20] complete bar to [his claims of false arrest and false imprisonment] under § 1983.") (citing *Cameron v. Fogarty*, 806 F.2d 380, 387-89 (2d Cir. 1986)); *see United States v. Gregg*, 2002 U.S. Dist. LEXIS 14475, No. 01 Cr. 501 (RAP), 2002 WL 1808235, at *2 (S.D.N.Y. Aug. 6, 2002) ("[A] defendant who enters a guilty plea in a criminal proceeding may not subsequently challenge the events that led up to that proceeding on Fourth Amendment grounds."). n6

> n6 To the extent that Smith may be trying to maintain any state law tort claims, it is also "abundantly clear that a finding of probable cause will defeat state tort claims for false arrest, false imprisonment, and malicious prosecution." *Zanghi v. Incorporated Village of Old Brookville*, 752 F.2d 42, 45 (2d Cir. 1985) (citing *Feinberg v. Saks & Co.*, 83 A.D.2d 952, 443 N.Y.S.2d 26 (1981)).

Accordingly, I recommend that defendants be granted summary judgment on any Section 1983 claims predicated on charges of false arrest, false [*21] imprisonment, or malicious prosecution.

### B. Claims Under the First, Fifth, Eighth, and Fourteenth Amendments

In his Complaint, Smith alleges, without elaboration, that the defendants' conduct violated his rights under the First, Fourth, Fifth, Sixth, Eighth, Eleventh, and Fourteenth Amendments. (Compl. P 26.) Only the Fourth Amendment, however, made applicable to the states under the Fourteenth Amendment, *Baker v. McCollan*, 443 U.S. 137, 142, 61 L. Ed. 2d 433, 99 S. Ct. 2689 (1979), can provide a basis for a claim that the police used excessive force at the time of an arrest, *see Graham v. Connor*, 490 U.S. 386, 395-96, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989) (Fourth Amendment is implicated when plaintiff claims use of excessive force during an arrest); *see also Singer v. Fulton County Sheriff*, 63 F.3d 110, 115 (2d Cir. 1995) (Fourth Amendment provides the source for a Section 1983 claim premised on a person's arrest).

Smith has not come forward with any evidence that could support a claim under the First Amendment (free speech), Fifth Amendment (due-process and self-incrimination) or the Eighth Amendment (cruel and unusual punishment). n7 I therefore [*22] recommend that defendants be granted summary judgment on any such constitutional claims.

> n7 Although the Eighth Amendment's prohibition against cruel and unusual punishment can be used as the basis for a Section 1983 claim to protect an individual convicted of a crime from the official use of force, *see, e.g., Hudson v. McMillian*, 503 U.S. 1, 7-8, 117 L. Ed. 2d 156, 112 S. Ct. 995 (1992); *Whitley v. Albers*, 475 U.S. 312, 320, 89 L. Ed. 2d 251, 106 S. Ct. 1078 (1986), a claim that the police used excessive force in the course of an individual's arrest or "seizure" is properly analyzed under to the Fourth Amendment, *see Graham*, 490 U.S. at 395-96.

### C. Excessive Force

As noted above, Smith alleges that the police used excessive force by failing to give a required canine warning prior to releasing a police dog (Comp. PP 5, 9), by then releasing the dog without justification (*id*. P 6), and by failing to call the dog off once it attacked him (id. PP 10, 11). He further alleges that, [*23] in this case, members of the YPD were improperly trained, supervised, and disciplined for their behavior (*id.* PP 19-20), and that, in general, the YPD maintains a policy of failing to supervise its officers properly or to discipline them for unlawful conduct (*id.* P 21).

Defendants contest the factual basis for these assertions, maintaining that the use of a police dog was justified under the circumstances of this case; that a canine warning was given; that the dog was called off as soon as he located Smith; and that no policy exists which

would endorse the unlawful behavior of police officers. (Def. Mem. at 14-17, 20-23.) Moreover, they argue that Smith fails to state a claim under Section 1983 because Smith does not allege that any of the defendant officers injured him or were even present when Chas allegedly attacked him, and that this claim should therefore be dismissed as against each of them. (*Id.* at 11-12.)

### 1. Legal Standards

To succeed on a claim for a violation of civil rights under 42 U.S.C. § 1983, a plaintiff must show that "state officials, acting under color of state law, deprived [him] of a right guaranteed [to him] [*24] by the Constitution." *Rodriguez v. Phillips*, 66 F.3d 470, 473 (2d Cir. 1995). The Fourth Amendment, which guarantees citizens the "right to be secure in their persons . . . against unreasonable searches and seizures," may be violated where a police officer uses excessive force during an arrest. *Graham v. Connor*, 490 U.S. 386, 395-96, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989) (citing U.S. Const. amend. IV).

To state a cognizable claim for monetary damages under Section 1983, a plaintiff must allege the personal involvement of the defendants in the deprivation of constitutionally protected rights. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)); *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987). In refuting a summary judgment motion, a plaintiff must adduce evidence that each defendant was personally involved in the use of excessive force against him. *See Harvey v. New York City Police Dep't*, 1997 U.S. Dist. LEXIS 7657, No. 93 Civ. 7563 (JSR), 1997 WL 292112, at *1 (S.D.N.Y. June 3, 1997). It is insufficient to support a claim of excessive force merely [*25] by alleging that "defendants" generally violated a plaintiff's rights. *See Marsden v. Federal B.O.P.*, 856 F. Supp. 832, 836 (S.D.N.Y. 1984) (in a Section 1983 claim, it is insufficient merely to allege that "all defendants are liable").

### 2. Smith's Failure To Plead Factual Allegations Against Defendants Harsany, Dellacamera, Magglore, Miller, Didio, Peleporo, and Hardy

Although Smith names Police Officers Harsany, Dellacamera, Magglore, Miller, Didio, and Peleporo and Detective Hardy as defendants in the caption of his Complaint, there are no specific factual allegations against any of these individuals - indeed, with one brief exception, they are not even mentioned - either in the body of his Complaint or in Smith's opposition papers. n8 As Smith has not alleged any facts, or come forward with any competent evidence, indicating that these defendants were involved in the purported violation of his constitutional rights, I recommend that these defendants' motion for summary judgment be granted. *See, e.g., Alfaro Motors, Inc.,* 814 F.2d at 886 (affirming summary judgment on Section 1983 claim where plaintiffs' complaint was entirely [*26] devoid of any allegations regarding individual defendants); *Wilson v. Coughlin*, 1989 U.S. Dist. LEXIS 6541, No. 87 Civ. 4767 (JES), 1989 WL 63652, at *2 n.2 (S.D.N.Y. June 17, 1989) (granting summary judgment on Section 1983 claim "where . . . the body of the complaint [was] silent as to defendants' involvement") (citing *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986)).

---

n8 The one exception is that Smith mentions Detective Hardy in his opposition papers where he notes that Hardy testified at his pre-trial criminal proceedings, prior to his entry of a guilty plea. (Pl. Aff. PP 57, 62.) Smith never alleges, however, that Hardy was present at the time of his arrest.

---

### 3. Smith's Failure To Proffer Any Competent Evidence That Defendants Faivre, DiCaprio, Penzo, and Olson Were Personally Involved in the Alleged Attack

Although Smith does mention Officers Faivre, DiCaprio, Penzo, and Olsen in his opposition papers (Pl. Aff. PP 6-7, 11), on a summary judgment motion, a plaintiff must proffer competent [*27] evidence to support his claims. In order to avoid summary judgment on a claim for excessive force, a plaintiff must demonstrate that the evidence at least raises a genuine factual question as to whether each defendant police officer was personally involved in the use of the claimed excessive force. In this regard, it is sufficient for the plaintiff to proffer evidence that the officer either directly participated in an assault on the plaintiff or was present during such an assault and did nothing to stop it. *Jeffreys v. P.O. Rossi and P.O. Montanez*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003) (citing *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997); *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)). Although a plaintiff need not establish who, among a group of officers, directly participated in the attack and who failed to intervene, he must nonetheless proffer some competent evidence that the named officers at least engaged in one type of conduct or the other. *Id.* (collecting cases). In this case, as discussed below, Smith has proffered no evidence that defendants Faivre, DiCaprio, Penzo, or Olson either [*28] were personally involved in, or were in a position to stop, the alleged attack.

#### a. Direct Participation

Smith has not come forward with any evidence indicating that any of these named officers were even in the house, let alone the same room, with him and Chas when the alleged attack occurred. In fact, the sum total of Smith's allegations against Faivre, Penzo, DiCaprio, and Olson is that these defendants were on patrol on the night in question and observed Smith enter the residence that he admitted to burglarizing. (Pl. Aff. PP 6-7.) At his deposition, Smith further asserted that these officers secured the perimeter of the residence, and that one of them made eye contact with Smith, who was hiding inside. (Smith Dep. at 47-48.)

According to defendants, at some point thereafter backup units arrived, including Officer Potanovic, his K-9 partner Chas, and several ESU officers, who breached the door to the residence and ultimately entered in search of Smith. (Def. Mem. at 4-5.) This account is supported by Officer Faivre's police report of Smith's arrest, which identifies the officers who went into the residence. (Mayer Aff. Ex. A.) The documentary evidence thus suggests that [*29] Officers Faivre, Penzo, DiCaprio, and Olson never even entered the house, and Smith has come forward with no evidence to the contrary. Indeed, at his deposition, Smith essentially testified that he was unable to do so. (*See* Smith Dep. at 66, ll. 20-22 ("Q. Did you ever come to learn which officers were in the house on November 28, 2000? A. No, I would say no.") Thus, Smith has not raised any issue as to whether these named officers were directly involved in the alleged attack, which all parties agree occurred in a crawl space in the basement of the residence. (*See id.* at 4-5; Smith Dep. at 60-62.)

Under the circumstances, Smith has failed to raise a triable issue as to whether Faivre, Penzo, DiCaprio, and Olson were directly involved in the alleged violation of his rights. *See Harvey*, 1997 U.S. Dist. LEXIS 7657, 1997 WL 292112, at *1 (granting summary judgment on excessive force claims where plaintiff had not adduced evidence that any of the police officers involved in his arrest were personally involved in any use of force against him, where one of the defendants was outside the apartment and the other, while in the apartment, was not in the room where the alleged beating occurred) [*30] (citing *Wright*, 21 F.3d at 501); *Show v. Patterson*, 955 F. Supp. 182, 188 (S.D.N.Y. 1997) (granting summary judgment where plaintiff failed to submit any evidence that defendants were actually involved in the acts that formed the basis of the excessive force claim); *see also Cea v. Ulster County*, 309 F. Supp. 2d 321, 328 (N.D.N.Y. 2004) (granting summary judgment on Section 1983 claim where there were no allegations that defendant detective was present during the incident).

### b. Failure To Intercede

Smith has also failed to raise a triable issue as to whether any of these defendants could have interceded to stop the alleged violation of his rights. Even if not personally involved in an alleged violation, an officer who fails to intercede can be liable for the preventable harm caused by the actions of others where that officer observes or has reason to know that: (1) excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement officer. *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994); (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988); [*31] *Gagnon v. Ball*, 696 F.2d 17, 21 (2d Cir. 1982)); *Lasher v. City of Schenectady*, 2004 U.S. Dist. LEXIS 14871, No. 02 Civ. 1395, 2004 WL 1732006, at *6-7 (N.D.N.Y. Aug. 2, 2004). In order for liability to attach, the officer must have observed, or have had reason to know of, the alleged violation, *Anderson*, 17 F.3d at 557, and there must have been a realistic opportunity to intervene to prevent the harm from occurring, *O'Neill*, 839 F.2d at 11-12. Whether "an officer . . . was capable of preventing the harm being caused by another officer is an issue of fact for the jury, unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Anderson*, 17 F.3d at 557.

Here, Smith has presented no evidence from which a jury could conclude that defendants Faivre, DiCaprio, Penzo, and Olson were in a position to prevent any harm from occurring. As noted above, Smith has proffered no evidence to suggest that these officers were in the basement, or even the house, at the time of the incident. (*See supra* at 18.) Nor is there any indication that any of the named defendants would have known, or had reason [*32] to believe, that the alleged violation of constitutional rights was occurring. *See Universal Calvary Church v. City of New York*, 2000 U.S. Dist. LEXIS 15153, No 96 Civ. 4606 (RPP), 2000 WL 1538019, at *9 (S.D.N.Y. Oct. 17, 2000) (granting summary judgment on a Section 1983 claim where plaintiff "has presented no proof that any of [the defendants] were present at the time of the alleged treatment, were aware of such alleged unauthorized, unjustified, and unreasonable treatment, or had a reasonable opportunity to intervene and prevent that treatment"); *Speights v. City of New York*, 2001 U.S. Dist. LEXIS 10433, No. 98 CV 4635 (NG) (JMA), 2001 WL 797982, at *6 (E.D.N.Y. June 18, 2001) (granting summary judgment on an excessive force claim where the actions at issue did not occur in the defendant's presence, there was no basis in the evidence for finding that the defendant had reason to know that excessive force was being used, and where all defendant observed was the plaintiff lying on the ground handcuffed, which he could have reasonably believed was justified under the circumstances).

Accordingly, I recommend that the summary judgment motion of defendants Faivre, Penzo, DiCaprio, and Olson be granted on [*33] the ground that Smith has failed to proffer any evidence that any of these officers were personally involved in the alleged excessive use of force against Smith.

**4. Smith's Failure To Demonstrate a Basis for Holding Commissioner Cola Liable in His Supervisory Capacity**

Smith also names Yonkers Police Commissioner Charles Cola as a defendant, but presents no evidence that Commissioner Cola was directly involved in the alleged excessive use of force. Rather, Smith appears to be implicating Cola because of the Commissioner's position of authority in the police department, and, more precisely, because of his alleged overall responsibility for training, supervising, and disciplining the other defendants. (Compl. PP 19-21; Pl. Aff. P 34-37.) Smith, however, does not appears to have a supportable claim against Commissioner Cola for supervisory liability.

While the mere fact that an official holds a supervisory position is, standing alone, insufficient to establish that official's liability for the acts of his subordinates, there are several ways in which a supervisory official may be found personally liable for violating a plaintiff's constitutionally protected rights. *See* [*34] *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). The supervisory official may be deemed to have personal involvement where he: (1) directly participated in the infraction; (2) failed to remedy the wrong even after learning of a violation through a report or appeal; (3) created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue; (4) acted in a grossly negligent manner in managing subordinates who caused the unlawful condition or event; or (5) demonstrated deliberate indifference to the constitutional rights of the plaintiff by failing to act on information demonstrating that unconstitutional practices were taking place. *Id.; Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir. 2001).

In this case, Smith merely recites boilerplate allegations of supervisory liability, without alleging any facts to show Commissioner Cola's personal involvement in the particular alleged violations (Compl. PP 19-21; Pl. Aff. P 34-37; 47), rendering Smith's claim against the Commissioner subject to dismissal on the face of the [*35] Complaint. *See Alfaro Motors, Inc.*, 814 F.2d at 886-87 (where New York City Police Commissioner was named in the caption, but there were no allegations as to his personal involvement in the constitutional violations in the body of the complaint, summary judgment in favor of the Commissioner was proper). In fact, in his allegations regarding supervisory liability, Smith never even specifically names Cola, referring instead to the "Yonkers Police Department" as being responsible for the actions of all of the defendants. n9

n9 The Yonkers Police Department is not itself named as a defendant, and even if it were, Smith could not maintain this action against it. Pursuant to Fed. R. Civ. P. 17, New York law determines whether the Department may be sued. Fed. R. Civ. P. 17(b); *Fanelli v. Town of Harrison*, 46 F. Supp. 2d. 254, 257 (S.D.N.Y. 1999). Under New York law, police departments, which are considered administrative entities of the municipality with no independent legal identity, are not subject to suit. *Id.* (citing cases); *Basnight v. Rossi*, 2003 U.S. Dist. LEXIS 2911, No. 97-CV-1312, 2003 WL 722810, at * 3 (E.D.N.Y. Mar. 4, 2003) (New York Police Department is a non-sueable entity). The City of Yonkers would be the real party in interest, but Smith has also failed to name the City as a defendant. In any event, Smith has submitted no evidence that the alleged violation resulted from an official policy, custom, or practice, or from a knowing failure of supervisory officials to supervise and train municipal employees. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 690-91, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). He has thus failed to demonstrate that the City could have any liability under Section 1983, and any such claims against the City would be subject to summary dismissal. *Singleton v. City of Newburgh*, 1 F. Supp. 2d 306, 311-12 (S.D.N.Y. 1998) (to defeat a motion for summary judgment, a plaintiff must do more than simply recite allegations of municipal liability, he must come forward with evidence that the municipality, alerted to the possible use of excessive force by its officers, did nothing to rectify the situation); *Basnight*, 2003 U.S. Dist. LEXIS 2911, 2003 WL 722810, at *3 (conclusory allegations of municipal liability cannot survive motion for summary judgment).

[*36]

Moreover, in opposition to defendants' summary judgment motion, Smith has not come forward with any evidence of Commissioner Cola's involvement in the alleged use of excessive force, or in the creation of any unconstitutional policy or custom, sufficient to demonstrate that the Commissioner could be held personally liable in this case. *See Griffin v. City of New*

*York*, 287 F. Supp. 2d 392, 397 (S.D.N.Y. 2003) (granting defendant's motion for summary judgment against police commissioner where plaintiff did not come forward with any evidence indicating that the commissioner was personally involved in the deprivation of a federally protected right); *Patterson v. Lilley*, 2003 U.S. Dist. LEXIS 11097, No 02 Civ. 6056 (NRB), 2003 WL 21507345, at *7 (S.D.N.Y. June 30, 2003) (where plaintiff did not present any facts indicating that supervisor created an unconstitutional custom or policy or was grossly negligent in supervising his subordinates, Section 1983 claim based on alleged supervisory liability was dismissed); *see also Basnight*, 2003 U.S. Dist. LEXIS 2911, 2003 WL 722810, at *3 (granting defendant's motion for summary judgment on excessive force claim where there was no evidence of a policy [*37] or practice permitting officers to use excessive force).

For these reasons, I recommend that the defendants' motion for summary judgment on the claims against Commissioner Cola be granted.

**5. Potential Amendment To Name Officer Potanovic (the Dog Handler) as a Defendant**

The only police officer as to whom Smith may have demonstrated the ability to state a claim for excessive force is Officer Potanovic ("Potanovic"), who was Chas's handler, and was apparently the officer who entered the basement with Chas in search of Smith. n10 (Pl. Aff. PP 12-14, 30; Def. Mem. at 4-5; Potanovic Aff. P 17.) Yet Potanovic is not named in the Complaint as a defendant, and, to the extent Smith has attempted to assert any claim against him, he has done so only in his opposition to defendants' motion for summary judgment. (*See* Pl. Aff. PP 12-14, 30 (describing Smith's version of the incident and Potanovic's involvement in it).)

> n10 Although it is possible that certain ESU officers were also in the basement during Smith's arrest (*see* Mayer Aff. Ex. A (Officer Faivre's police report specifying who entered the residence)), Smith, even in his opposition papers, never clearly asserts that anyone other than Officer Potanovic was present when he was attacked by the dog.

[*38]

Ordinarily, the Court will not consider allegations raised for the first time in opposition to summary judgment, even where a plaintiff is proceeding pro se. *See McAllister v. New York City Police Dep't*, 49 F. Supp. 2d 688, 698 (S.D.N.Y. 1999) (collecting cases); *Harvey*, 1997 U.S. Dist. LEXIS 7657, 1997 WL 292112, at 2 n.2; *see also Ellis v. Guarino*, 2004 U.S. Dist. LEXIS 16748, No. 03 Civ. 6562, 2004 WL 1879834, at *4 (S.D.N.Y. Aug, 24, 2004) (where individuals were not named in the complaint, the court would not consider allegations against them); *Amaker v. Goord*, 2002 U.S. Dist. LEXIS 5932, No. 98 Civ. 3634, 2002 WL 523371, at *16 (S.D.N.Y. Mar. 29, 2002) (same). Yet given that, in his Complaint, Smith is plainly seeking to challenge the release of the police dog, and that there appears to be no dispute that Potanovic was the officer who actually released the dog, it may be appropriate to grant Smith leave to amend the Complaint to name Potanovic as a defendant. *See Gill v. City of New York*, 2004 U.S. Dist. LEXIS 6481, No. 02 Civ. 10201 (RWS), 2004 WL 816449, at *8 (S.D.N.Y. Apr. 16, 2004) (granting leave to amend to assert a new claim where allegations were raised for the first time in opposition [*39] papers); *see also Beckman v. United States Postal Serv.*, 79 F. Supp. 2d 394, 408 (S.D.N.Y. 2000) (although refusing to consider claims not pleaded in the complaint, the court stated that it generally "would be amenable to a motion for leave to further amend the Amended Complaint to assert these newly-conceived claims").

Federal Rule of Civil Procedure 15(a) governs the amendment of complaints, and provides that leave to amend a pleading "shall be freely given when justice so requires." n11 Fed. R. Civ. P. 15(a). A "motion to amend should be denied if there is an 'apparent or declared reason - such as undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of an amendment, [or] futility of amendment.'" *Dluhos v. Floating and Abandoned Vessel Known as "New York,"* 162 F.3d 63, 69 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)); *see also Virgo v. Local Union 580*, 107 F.R.D. 84, 87 (S.D.N.Y 1985) [*40] ("A plaintiff should not be permitted to defeat a pending summary judgment motion merely by proposing futile changes or additions to his complaint, and this, too, applies with respect to pro se litigants.")

> n11 Although Rule 21 governs the addition of new defendants, in deciding whether to allow joinder under that Rule, the Court is guided by "the same standard of liberality afforded to motions to amend pleadings under Rule 15." *Soler v. G & U, Inc.*, 86 F.R.D. 524, 527-28 (S.D.N.Y. 1980) (internal quotation and citation omitted); *see Clarke v. Fonix Corp.*, 1999 U.S. Dist. LEXIS 2143, 98 Civ. 6116 (RPP), 1999 WL 105031, at *6 (S.D.N.Y. Mar. 1, 1999) ("Although Rule 21, and not Rule 15(a) normally governs the addition of new parties to an action,

the same standard of liberality applies under either Rule.") (internal quotation and citation omitted), *aff'd*, 199 F.3d 1321 (2d Cir.1999); *Sheldon v. PHH Corp.*, 1997 U.S. Dist. LEXIS 2217, No. 96 Civ. 1666 (LAK), 1997 WL 91280, at *3 (S.D.N.Y. Mar. 4, 1997) ("While plaintiffs' motion [to add a new defendant] properly is considered under Rule 21 rather than Rule 15, nothing material turns on this distinction. . . . To the extent the limited case law under Rule 21 permits a conclusion, the standard under that rule is the same as under Rule 15."), *aff'd*, 135 F.3d 848 (2d Cir. 1998).

[*41]

When a motion to amend is made early in the proceedings or in response to a motion to dismiss, the amendment will be deemed futile, and the motion to amend denied, where the amended pleading would be subject to "immediate dismissal" for failure to state a claim upon which relief can be granted, or on some other basis. *Jones v. New York State Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir. 1999); *S.S. Silberblatt, Inc. v. East Harlem Pilot BlockBldg . 1 Housing Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir. 1979). Where, however, a summary judgment motion has been made and evidence outside the pleadings has already been submitted, the court must determine whether the amendment would be futile under the summary judgment standard. *See Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110-111 (2d Cir. 2001) ("Where . . . the parties have fully briefed the issue whether the proposed amended complaint could raise a genuine issue of fact and have presented all relevant evidence in support of their positions . . . . the court may deny the amendment as futile when the evidence in support of plaintiff's new claim creates no triable issue [*42] of fact and the defendant would be entitled to judgment as a matter of law under Fed.R.Civ.P. 56(c)."); *DiPace v. Goord*, 308 F. Supp. 2d 274, 279 (S.D.N.Y. 2004) (where parties submitted evidence outside the pleadings in connection with a motion to amend, the court judged the proposed pleading based on whether it could survive a motion for summary judgment); *Stoner v. N.Y. City Ballet Co.*, 2002 U.S. Dist. LEXIS 5921, No. 99 Civ. 0196 (BSJ), 2002 WL 523270, at *14 n.10 (S.D.N.Y. Apr. 8, 2002) (denying motion to amend where the claim might survive a motion to dismiss, but would "immediately be subject to dismissal on a motion for summary judgment").

In this case, defendants have provided voluminous evidence in support of their summary judgment motion detailing their version of events, and, indeed, they have submitted an affidavit from Potanovic himself testifying as to what he contends occurred. (Def. Mem. at 2-6; Mayer Aff.; Potanovic Aff.) Similarly, Smith has submitted an affidavit setting out his understanding of relevant facts, and he has also been deposed on his version of events. (Pl. Aff. PP 9-33; Smith Dep.) Under the circumstances, [*43] the Court will consider the submitted evidence, so as to determine whether an amendment to add Potanovic as a defendant would be futile under the standard of Rule 56.

### a. Elements of an Excessive Force Claim

To survive summary judgment on an excessive force claim against Potanovic, Smith must not only be able to demonstrate that Potanovic was personally involved in the alleged use of force, but also that the force was "excessive" under the Fourth Amendment. "Police officers' application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable 'in light of the facts and circumstances surrounding them without regard to their underlying intent or motivation.'" *Maxwell v. City of New York*, 2004 U.S. App. LEXIS 16627, No. 03-0245, 2004 WL 1797823, at *1 (2d Cir. Aug. 12, 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989)). To determine whether the actions of the police are reasonable, the fact finder may consider: the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest or attempting [*44] to evade arrest by flight. *Henry v. City of New York*, 2003 U.S. Dist. LEXIS 15699, No. 02 Civ. 4824 (JSM), 2003 WL 22077469, at *2 (S.D.N.Y. Sept. 8, 2003).

Here, Smith has testified that, upon opening the basement door, Potanovic released Chas without giving the canine warning and, once Smith was located, allowed Chas to attack Smith for 20 minutes, while Smith was trapped in a small crawl space. (Pl. Aff. PP 12-14; 30; *see* Smith Dep. at 56-64.) Smith has further testified that he kicked the dog in self-defense. (Pl. Aff. P 14; Smith Dep. at 61-63.) Potanovic's version of the facts are much different. According to Potanovic, he gave the canine warning as soon as he opened the basement door, waited two minutes without receiving a response, and only then released Chas into the basement. (Potanovic Aff. PP 10-11.) Potanovic also asserts that, once Chas found Smith, Smith began kicking Chas and twisting his snout. (*Id.* P 12.) Potanovic states that he recalled Chas, but that Smith again kicked the dog, prompting the dog to re-engage. (*Id.* P 13.) According to Potanovic, he had to tell Smith to stop struggling with the dog, and, once Smith did, the dog immediately released him and exited [*45] the crawl space. (*Id.* P 14.)

In light of these substantially different versions of events, a material issue of fact exists as to the

reasonableness of Potanovic's actions under the circumstances, which would preclude summary judgment on the merits of this claim. *See Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999) (where the parties version of fact differed markedly, "the issue of excessive force was . . . for the jury, whose unique task it was to determine the amount of excessive force used, the seriousness of the injuries, and the objective reasonableness of the officer's conduct"); *Henry*, 2003 U.S. Dist. LEXIS 15699, 2003 WL 22077469, at *2 ("Where there is a factual dispute about the circumstances surrounding arrest and the degree of force used, the Second Circuit requires a jury determination of the reasonableness of that force."); *see also George v. Town of East Hartford*, No. 3:97 Civ. 1958 (RNC), 2000 WL 436605, at *2 (D. Conn. Mar. 13, 2000) (finding that an excessive force claim against a police dog's handler survived motion for summary judgment where plaintiff alleged that the dog continued to attack him even after he was caught and offered [*46] no further resistance, while defendants version of the events differed significantly). Even if Smith provoked Chas by kicking him, as Potanovic contends, Smith may still be able to prevail on an excessive force claim, if he can demonstrate that, in the first instance, more force was used against him than was objectively reasonable under the circumstances. *See Curry v. City of Syracuse*, 316 F.3d 324, 332 (2d Cir. 2003) (grant of summary judgment reversed where plaintiff who struck a police officer could still prevail on excessive force claim if he could show that the officer "used more force than was necessary to subdue him"). Thus, the Court cannot conclude that an amendment naming Potanovic as a defendant would immediately fail on the merits.

### b. Qualified Immunity

The named defendants have raised a defense of qualified immunity on the claims against them, and an amendment to add an excessive force claim against Potanovic would be futile, if Potanovic is entitled to such a defense on that claim. *DiPace v. Goord*, 308 F. Supp. 2d 274, 278 (S.D.N.Y. 2004). "The purpose of the qualified immunity doctrine is to balance the need to protect the [*47] rights of citizens through damage remedies, with the opposing need to 'protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.'" *Danahy v. Buscaglia*, 134 F.3d 1185, 1189-90 (2d Cir. 1998) (quoting *Butz v. Economou*, 438 U.S. 478, 506, 57 L. Ed. 2d 895, 98 S. Ct. 2894 (1978)). Police officers performing discretionary functions enjoy qualified immunity from personal liability under Section 1983, insofar as their conduct does not violate a clearly established statutory or constitutional right of which a reasonable person would have known, or insofar as the officers had an objectively reasonable belief that their actions did not violate those rights. *Martinez v. City of Schenectady*, 115 F.3d 111, 114-115 (2d Cir. 1997) (citations omitted).

The use of excessive force during an arrest violates a clearly established right, *Graham,* 490 U.S. 386 at 395, 104 L. Ed. 2d 443, and where it is "impossible to determine whether the officers reasonably believed that their force was not excessive [because] several material facts are still in dispute [*48] . . . summary judgment on the basis of qualified immunity is precluded," *Curry*, 316 F.3d at 334 (reversing grant of summary judgment to defendants based on qualified immunity where genuine issues of material fact existed regarding exactly what had happened during an arrest) (citing *Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir. 1999)).

In this case, for the same reasons that Potanovic would not be entitled to summary judgment on the merits of an excessive force claim (*i.e.,* because there is a disputed issue of fact as to the objective reasonableness of his actions under the circumstances), he would not be entitled to the summary disposition of such a claim on the basis of qualified immunity. *See Hemphill v. Schott*, 141 F.3d 412, 418 (2d Cir. 1998) ("Summary judgment based either on the merits or on qualified immunity requires that no disputes about material facts remain."); *Rossi v. New York City Police Dep't*, 1998 U.S. Dist. LEXIS 1717, No 94 Civ. 5113 (JFK), 1998 WL 65999, at *7 (S.D.N.Y. Feb. 17, 1998) ("For the same reasons this Court denied the motion for summary judgment on the excessive force claim, the Court finds that material [*49] factual disputes exist on the issue of qualified immunity and whether [the officer's] action were objectively reasonable under the circumstances of this case."); *Basnight v. Rossi*, 2003 U.S. Dist. LEXIS 2911, No. 97-CV-1312, 2003 WL 722810, at * 2-3 (E.D.N.Y. Mar. 4, 2003) (the parties radically different versions of the events surrounding the claimed use of excessive force in restraining the plaintiff during his arrest prevented summary judgment on the merits of the excessive force claim and based on qualified immunity). Accordingly, on the record presented, an amendment to name Potanovic as a defendant should not be denied based on his potential qualified immunity defense.

### c. Statute of Limitations

An amendment would also be futile where the claim sought to be added is barred by the applicable statute of limitations. *Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 138 (E.D.N.Y. 1998). New York's three-year statute of limitations period for personal injury actions applies to Section 1983 actions filed in New York state. *Owens v. Okure,* 488 U.S. 235, 250-51, 102 L. Ed. 2d 594, 109 S. Ct. 573 (1989); *Cole v. Miraflor*, 2001 U.S.

Dist. LEXIS 1681, No. 99 Civ. 0977 (RWS), 2001 WL 138765, [*50] at *3 (S.D.N.Y. Feb. 19, 2001); *Pauk v. Board of Trustees*, 654 F.2d 856, 866 (2d Cir. 1981); *Hood v. City of New York*, 739 F. Supp. 196, 198 (S.D.N.Y. 1990). Here, the incident in question took place on November 28, 2000, and Smith's opposition papers - in which he, for the first time, raised a possible claim against Potanovic - were not submitted until December 22, 2003, more than three years later. Thus, any amendment adding Potanovic as a defendant would barred by the statute of limitations, unless it can be shown that the claim relates back to the timely filed Complaint. *Cornwell v. Robinson*, 23 F.3d 694, 705 (2d Cir. 1994) (since the last act complained of occurred in April 1986 and the amended complaint was filed in 1992, well beyond the applicable limitations period, the amended complaint was timely with respect to the individuals only if it related back to the date of the original complaint); *Fitzgerald*, 1996 U.S. Dist. LEXIS 18429, 1996 WL 715531, at *3 (a motion to amend to add a defendant made more than three years after the event in question was time barred unless the proposed amendment related back to the date that the plaintiff commenced [*51] the action).

Under Fed. R. Civ. P. 15(c)(2) and (3), an amendment adding a defendant to a complaint relates back to the original complaint when the claim against the new defendant arises out of the same conduct originally pleaded, and when, within the time provided under Rule 4(m) for service of the summons and complaint,

> the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed. R. Civ. P. 15(c); *see Soto v. Brooklyn Correctional Facility*, 80 F.3d 34, 35 (2d Cir. 1996); *Cornwell*, 23 F.3d at 705. Based on these provisions of Rule 15, the Second Circuit has summarized three requirements that a party seeking to add a new defendant must meet, when the amendment would otherwise be untimely: (1) both the original complaint and the new claim must arise out of the same conduct, transaction [*52] or occurrence; (2) the additional defendant must have been omitted from the original complaint by mistake; and (3) the defendant must not be prejudiced by the delay. *VKK Corp. v. NFL*, 244 F.3d 114, 128 (2d Cir. 2001).

In this case, the first and third requirements appear to have been met. Plainly, any potential claim for excessive force against Potanovic would have arisen out of the same occurrence as the allegations that form the basis of the Complaint, and which occurred at the residence on November 28, 2000. Further, it is unlikely that Potanovic could show prejudice resulting from the belated timing of a claim against him. By submitting an affidavit on defendants' motion, Potanovic has shown actual knowledge of this action. Even if he just recently learned of Smith's suit, Potanovic could be charged with earlier constructive knowledge, given (a) the fact that Smith named Chas, the dog, as a defendant; (b) that, under the law, a dog handler is generally held liable for the use of excessive force by the dog he handles, *see George*, 2000 WL 436605, at *2; (c) that government officials are charged with knowing the law, *see,* [*53] *e.g., Soto*, 80 F.3d at 36; and (d) that, if he had been named in the case, Potanovic would likely have been represented by the same counsel as has represented the officers that were previously named, *see Muhammad v. Pico*, 2003 U.S. Dist. LEXIS 13402, No. 02 Civ. 1052 (AJP), 2003 WL 21792158, at *19-21 (S.D.N.Y. Aug. 5, 2003) ("The court can impute knowledge of a lawsuit to a new defendant government official through his attorney, when the attorney also represented the officials originally sued, so long as there is some showing that the attorney knew that the additional defendants would be added to the existing suit.") (collecting cases). n12

---

> n12 Moreover, the fact that discovery has concluded does not, in and of itself, provide a reason for denying leave to amend. *Cemar Tekstil Ithalat Ihracat San ve Tic. A.S. v. Joinpac, Inc.*, 1993 U.S. Dist. LEXIS 5065, No. 91 Civ. 8408, 1993 WL 126890, at *1 (S.D.N.Y. Apr. 16, 1993) (allowing amendment to add a counterclaim where discovery had already closed). This is especially true where the proposed amendment arises from the same set of operative facts as the original claims, or from events closely related to those originally pleaded. *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981); Harrison v. N.Y. City Admin. for Children's Servs., 2002 U.S. Dist. LEXIS 16439, 02 Civ. 0947, 2002 WL 2022932, *1 (S.D.N.Y. Sept. 3, 2002); *Union Carbide Corp. v. Siemens Westinghouse Power Corp.*, 2002 U.S. Dist. LEXIS 20190, No. 99 Civ. 12003, 2002 WL 31387269, *3 (S.D.N.Y. Oct. 23, 2002). Even if discovery were to be prolonged, "the adverse party's burden of undertaking discovery, standing

alone, does not suffice to warrant denial of a motion to amend a pleading." *United States v. Continental Ill. Nat'l* Bank & Trust Co., 889 F.2d 1248, 1255 (2d Cir. 1989) (citation omitted).

[*54]

It is, however, difficult to conclude that Smith's failure to name Potanovic was a "mistake" within the meaning of Rule 15. The Second Circuit has narrowly interpreted this term, and found that neither lack of knowledge of certain defendants' identities, *Barrow v. Weathersfield Police Dep't*, 66 F.3d 466, 470 (2d Cir. 1995), *modified*, 74 F.3d 1366 (2d Cir. 1996), nor the fact that a defendant clearly knew the identities of the individuals involved, yet chose not to include them in the original pleading, *Cornwell*, 23 F.3d at 705, constitutes a mistake. Courts have, on the other hand, found "mistake" sufficient to allow an amendment to relate back to the original pleading where there is a mistake in law, *i.e.,* when a plaintiff was obviously unaware of certain pleading requirements (such as the need, in certain circumstances, to name individual, rather than institutional, defendants), or a mistake of fact, *i.e.* when a plaintiff has misapprehended the identities of the individuals he wished to sue. *Soto*, 80 F.3d at 35-37; *see Dalton v. New Commodore Cruise Lines Ltd.*, 2004 U.S. Dist. LEXIS 2590, No. 02 Civ. 8025 (DLC), 2004 WL 344035, [*55] at *3 (S.D.N.Y. Feb. 24, 2004); *Cole v. Miraflor*, 2001 U.S. Dist. LEXIS 1681, No. 99 Civ. 0977 (RWS), 2001 WL 138765, at *5 (S.D.N.Y. Feb. 19, 2001).

Here, Smith was clearly aware of the requirement that he name individual officers, as opposed to institutional defendants, as he named several such officers who were at the scene of the burglary. Further, Smith did not indicate in his Complaint that there might have been additional officers present, by naming unknown officers as "John Doe" defendants. *See, e.g., Daniels v. Loizzo*, 174 F.R.D. 295, 300 (S.D.N.Y. 1997). Even if Smith did not know Potanovic's name until after defendants made their summary judgment motion, such lack of knowledge would not constitute mistake. *See Hickey v. City of New York*, 2004 U.S. Dist. LEXIS 5753, No. 01 Civ. 6506 (GEL) (FM), 2004 WL 736896, at *3 (S.D.N.Y. Apr. 5, 2004). Although it may be that Smith mistakenly believed that one of the officers he did name was the dog handler, nowhere in his papers does Smith suggest that he made such an error, or that he had any a basis for making such an error. Nor does Smith suggest that defense counsel wrongfully withheld requested information that would have enabled him [*56] to identify Potanovic as the dog handler. *See Byrd v. Abate*, 964 F. Supp. 140 (S.D.N.Y. 1997) (finding that amendment related back to original complaint where "it was the defense, rather than the plaintiff, who failed to identify the individual defendant, despite [plaintiff's] request for that information").

Overall, on the record before the Court, it does not appear that Smith made a mistake in failing to name Potanovic, within the meaning of Rule 15. Nonetheless, given that Smith's Complaint centers so clearly on the release of the police dog, Smith should, if he wishes, be afforded an opportunity to submit a supplemental affidavit, setting forth any basis he may have for asserting a belated claim against Potanovic. Any such supplemental affidavit should explain with specificity why Smith's failure to name Potanovic as a defendant was a "mistake" under the standards discussed above.

**CONCLUSION**

For the foregoing reasons, I recommend that defendants' motion for summary judgment be granted as to all of Smiths' claims, and that the Complaint, in its present form, be dismissed in its entirety. If, however, Smith wishes to amend the Complaint to add Officer [*57] Potanovic, the dog handler, as a defendant on an excessive force claim, then I further recommend that Smith be granted an opportunity to submit a supplemental affidavit on the issue of whether he omitted Potanovic as a defendant by "mistake," within the meaning of Rule 15(c). I respectfully recommend that Smith be required to submit any such supplemental affidavit within two weeks of the Court's decision on this recommendation, and that Potanovic be given two weeks to respond. If Smith can satisfy the requirements of Rule 15(c), and thus show that a claim against Potanovic would relate back to his original Complaint, then I recommend that he be permitted to amend his Complaint so as to name Potanovic, in his individual capacity, on a Section 1983 damages claim based on the alleged use of excessive force, and that the case proceed solely on that basis.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Such objections, and [*58] any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Kimba M. Wood, United States Courthouse, 500 Pearl Street, Room 1610, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 40 Centre Street, Room 631, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Wood. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. *See*

Case 3:03-cv-00431-SRU   Document 69-9   Filed 01/21/2005   Page 16 of 16

*Thomas v. Arn*, 474 U.S. 140, 155, 88 L. Ed. 2d 435, 106 S. Ct. 466 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York

September 28, 2004

Respectfully Submitted,

DEBRA FREEMAN

United States Magistrate Judge