UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARY McCARTHY, CLAYTON BOROWSKI, individually and on behalf of others similarly situated, and individually, GAIL ADAMS, DONALD BAKERT, et al., <br><br> Plaintiffs, <br><br> v. <br><br><br> THE DUN & BRADSTREET CORPORATION, THE DUN & BRADSTREET CORPORATION RETIREMENT ACCOUNT, and THE DUN & BRADSTREET CAREER TRANSITION PLAN, <br><br> Defendants. | CIVIL ACTION NO. <br> 3:03 CV 0431 (SRU) <br><br><br><br><br><br> FEBRUARY 4, 2005 |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR**
**CONSENT MOTION TO VACATE JANUARY 4, 2005 ORDER**
**AND OPPOSITION TO PLAINTIFFS' MOTION TO AMEND**

In their Response, Plaintiffs disavow any attempt to challenge the MRP's mortality rates as "a new and substitute claim" in the case. Pls.' Resp. at 1-3, 11, 16. They insist instead that the proposed amendment "merely adds detail from the plaintiffs' expert to the Complaint; it doesn't abandon an old claim and seek to substitute a new one." Id. at 15. In other words, Plaintiffs contend that the amendment is sought, not as a new, stand-alone claim, but "to clarify and add support to an existing claim," and as a mere "precaution" in the event the Court agrees with Defendants that the mortality rate issue cannot be considered because it was admittedly never raised in the Complaint. Id. at 2-3, 11. As discussed below, however, under any interpretation of Plaintiffs' proposed "clarification" to the Complaint, the proposed amendment would be futile at best and work an impermissible prejudice to Defendants at worst.

A. **Both Parties Agree That the Only Issue is Whether the Interest Rate is Reasonable, Therefore, the Court Need Not Consider the Reasonableness of the Mortality Rates.**

Given Plaintiffs' concession that the mortality rates themselves are not being challenged as a new or separate claim, the only issue before the Court remains whether the interest rate used in the MRP to calculate actuarially equivalent benefits is reasonable. The reasonableness of the mortality table is irrelevant to this question. If the MRP's interest rate is reasonable, a purportedly unreasonable mortality rate does not change this result. Plaintiffs do not argue to the contrary. As Plaintiffs note and as both experts acknowledged, however, an unreasonable interest rate can be saved by a generous mortality assumption. Pls.' Resp. at 8; Poulin Dep. at 52, 131-32 (excerpts from Poulin Dep. are attached hereto as Ex. A); Brown Dep. at 83-85 (excerpts from Brown Dep. are attached hereto as Ex. B). But Defendants have never sought to defend the MRP's interest rate on this basis, electing instead to argue that the interest rate itself is reasonable as a matter of law without taking into account mortality rate considerations.[1] Offering an amendment to rebut a claim that has never been made is both superfluous and futile. Leave to amend should, therefore, be denied.

If, on the other hand, Plaintiffs were to contend that a reasonable interest rate, paired with an unreasonable mortality rate, produces an unlawful result, that would be an entirely new claim,

---

[1]    In addition, contrary to Plaintiffs' contention, Defendants' expert, Edward Brown, did not "agree[ ]with [Plaintiffs' expert's] choice of mortality tables." Pls.' Resp. at 9. During Mr. Brown's deposition, Plaintiffs' counsel asked him to hypothesize in a vacuum which mortality tables he might use to calculate actuarial equivalence for a non-qualifying plan, "[w]ithout any direction as to what [mortality] table to use." Brown Dep. at 73-77. Mr. Brown responded that he would need more information to respond, but assuming he had no more information, he would likely start by looking at the current mortality tables. Mr. Brown noted, however, that those tables are not necessarily the ones most widely used by actuaries. Id. at 75-77. Obviously, unlike Plaintiffs' counsel's hypothetical, the MRP is a qualified plan that does specify the mortality rates to be used. The hypothetical posed to Mr. Brown therefore has no relevance to this case.

which Plaintiffs repeatedly state they are not seeking to make. To the extent Plaintiffs were, in fact, seeking to make this claim, Rule 8's notice pleading standard would require that the Complaint itself – not an obscure paragraph in an expert report – reasonably put a defendant on notice of the plaintiff's claims. Rule 8, Fed. R. Civ. P.; see also In Re Natural Gas Commodity Litigation, 337 F. Supp. 2d 498, 506 (S.D.N.Y. 2004) ("Federal Rule of Civil Procedure 8(a)(2) mandates that a complaint shall contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"). Here, Plaintiffs contend that Defendants were put on notice of the mortality rate issue, not by the Complaint, but by their expert witness's report. Such "notice" is insufficient to avoid unduly prejudicing Defendants. See Ondeo Nalco Co. v. EKA Chemicals, Inc., No. Civ.A 01-537-SLR, 2003 WL 1524658, at *3 (D. Del. Mar. 21, 2003) (attached hereto as Ex. C) ("[Defendant] contends that [plaintiff] never pled the four inequitable conduct claims it raised for the first time in [its] expert report. . . . Since [plaintiff] chose not to include in its pleadings any of the allegations of inequitable conduct now raised in its expert report, it should be barred from raising these claims at trial.").

B.    **Plaintiffs Sought Leave to Amend After Inordinate Delay and With No Satisfactory Explanation, and Any Substantive Amendment Would Unduly Prejudice Defendants.**

As discussed in Defendant's Memorandum, while Rule 15, Fed. R. Civ. P., provides that leave to amend should "be freely given," "'it is within the Court's discretion 'to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant. The burden is on the party who wishes to amend to provide a satisfactory explanation for the delay.'" See cases cited in Defs.' Mem. in Supp. of Their Mot. to Vacate and Opp. to Pls.' Mot. to Amend at 3-4.

Instead of meeting their burden, Plaintiffs attempt to turn the tables and blame Defendants for Plaintiffs' own dilatoriness. Clearly, it is not Defendants' responsibility to ensure that the Complaint adequately reflects the legal theories which Plaintiffs seek to pursue. The fact remains that Plaintiffs have offered no explanation whatsoever for their failure to amend the Complaint following their expert's May 3, 2004 report, which they contend put Defendants on notice that "Dun & Bradstreet is using an out-of-date mortality table and that this significantly contributes [to] the ERISA violation alleged in the original complaint." Pls.' Resp. at 5. As discussed in Defendants' Memorandum, however, Mr. Poulin's report did not make clear what Plaintiffs sought to allege with respect to the mortality rates; the report (while it noted that more current mortality rates existed) did not even opine that the MRP's mortality rates were, in fact, unreasonable. Defs.' Mem. at 6. If the mortality rates were such a critical part of Count 4, Plaintiffs could have sought to amend the Complaint in May 2004, which would have afforded Defendants the time and opportunity to conduct discovery on the issue. Instead, Plaintiffs did not seek to amend the Complaint until the end of December – nearly eight months after their expert allegedly brought the mortality rate issue to their attention.[2]

Even after Defendants' counsel made clear during defense expert's deposition on October 6, 2004 that the mortality rate issue was not part of the case (Brown Dep. at 74; Pls.' Resp. at 15), Plaintiffs did nothing and admittedly waited another 2½ months, after discovery had closed and Defendants had filed their summary judgment motion, to seek to amend the Complaint.

---

[2]   Contrary to Plaintiffs' counsel's contention that, during the December 6, 2004 status conference, he "said one of the matters to be included [in the amendment] was a clarification of the interest rate allegations" (Pls.' Resp. at 10), Plaintiffs' counsel never mentioned during this conference or at any other time that he intended to add allegations concerning the mortality rates to Count 4. The only amendments Plaintiffs' counsel informed defense counsel about concerned cosmetic changes, i.e., stating the correct MRP interest rate of 6.75 percent and adding/removing some named Plaintiffs.

Under these circumstances, Plaintiffs' delay is inexcusable and they should not be permitted to amend the Complaint.

Plaintiffs nonetheless argue that, even where the discovery deadline has passed and a summary judgment motion has been filed, courts "readily allow amendments like this one," i.e., where the proposed amendment and the original claims allegedly arise from "similar facts." The cases that Plaintiffs cite in support of this proposition are inapposite. For example, in Bleiler v. Cristwood Contractor Co., 868 F. Supp. 461, 464 (D. Conn. 1994), the defendant had the opportunity to conduct full discovery concerning the proposed amendment and had even "addressed the [new] issue" in their motion to dismiss. Here, by contrast, discovery on mortality rates was not conducted because such rates were never at issue in the case, certainly not at the motion to dismiss stage and not even at the summary judgment stage. See also State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981) (amendment permitted where "[t]he amended claim was obviously one of the objects of discovery. . . ").[3] As discussed, if a substantive amendment were permitted in the present case, the Court would have to reopen discovery, Defendants would have to obtain an expert to provide additional testimony on

_____

[3]    Plaintiffs' reliance on Smith v. P.O. Canine Dog  Chas, Shield No. 170, 02 Civ. 6240 (KMW) (DF), 2004 U.S. Dist. LEXIS 19623 (S.D.N.Y. Sept. 28, 2004) (attached hereto as Ex. D), and Conntect, Inc. v. Turbotect, Ltd., No. 3:97cv784(AHN), 1998 U.S. Dist. LEXIS 2354 (D. Conn. Feb. 23, 1998) (attached hereto as Ex. E), is likewise misplaced. Smith involved a question of whether a pro se plaintiff, who alleged that he suffered excessive force through the use of a police dog during his arrest, should be permitted to add an individual defendant to the complaint where it was undisputed that this particular defendant was the officer who released the dog. The plaintiff in Smith did not otherwise attempt to change the substance of his claims. And unlike in Conntect, in which the plaintiff sought to amend the complaint during the relatively early stages of the case (certainly not before discovery had been completed and dispositive motions had been filed), Plaintiffs here impermissibly seek to amend the Complaint months after the discovery and dispositive motion deadlines have passed.

mortality rates, and the parties would have to submit further summary judgment briefing on Count 4. There could hardly be more prejudice to Defendants.

In fact, this case represents the classic situation in which courts have denied motions to amend – where the motion to amend comes months after the discovery and dispositive motion deadlines, there is no justification for the delay, and discovery would have to be re-opened and additional discovery conducted, all of which would operate to unduly prejudice Defendants. See, e.g., MacDraw, Inc. v. The CIT Group Equip. Fin., Inc., 157 F.3d 956, 962 (2d Cir. 1997) (affirming denial of untimely motion to amend where amendment "would require additional discovery, causing undue prejudice to the defendants; and . . . [plaintiff's] delay was unexplained."); Medford Cowell Group, Inc. v. Gilberti, No. 95 Civ. 4178(RPP), 1997 WL 80575, at *4 (S.D.N.Y. Feb. 26, 1997) (attached hereto as Ex. F) (denying motion to amend filed five months after close of discovery where amendment would require additional discovery); State of N.Y. v. N. Storonske Cooperage Co., Inc., 144 F.R.D. 179, 184-85 (N.D.N.Y. 1992) ("Considering the delay in seeking this amendment . . . and the [plaintiff's] apparent early knowledge of the ambiguity in its pleading (and failure to act thereon[)] . . . the court concludes that the plaintiff's proposed amendment . . . would unduly prejudice the [defendant]."). See also Defs.' Mem. at 3-4. Given these circumstances, the Court should likewise exercise its discretion to deny Plaintiffs' motion to amend.

## C.    Conclusion

For the foregoing reasons, and for the reasons set forth in Defendants' Consent Motion to Vacate the January 4, 2005 Order and Opposition to Plaintiffs' Motion to Amend, the Court should not permit the proposed amendment and should rule on Defendants' Motion for Summary Judgment as to Count 4, as that count is currently alleged in the Amended Complaint.

DATED:  February 4, 2005

Respectfully submitted,
THE DEFENDANTS
THE DUN & BRADSTREET CORPORATION,
THE DUN & BRADSTREET CORPORATION
RETIREMENT ACCOUNT, and
THE DUN & BRADSTREET CAREER
TRANSITION PLAN

By: _____

Patrick W. Shea (ct07071)
Sandra K. Lalli (ct25805)
Paul, Hastings, Janofsky & Walker, LLP
1055 Washington Boulevard
Stamford, CT 06901-2217
Telephone: (203) 961-7400
Facsimile: (203) 359-3031
patrickshea@paulhastings.com
Counsel for the Defendants

## CERTIFICATE OF SERVICE

This is to certify that on this 4th day of February, 2005, a copy of the foregoing

DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR CONSENT MOTION TO

VACATE JANUARY 4, 2005 ORDER AND OPPOSITION TO PLAINTIFFS' MOTION TO

AMEND was served by overnight express mail on the following counsel of record:


Thomas G. Moukawsher, Esq.
Moukawsher & Walsh, LLC
21 Oak Street, Suite 100
Hartford, Connecticut 06106


_____
Sandra K. Lalli


STM/289982.2