RECEIVED
JUN 14 2004

COPY

```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
  *   *   *   *   *   *   *   *   *   *   *   *
MARY McCARTHY, CLAYTON BOROWSKI,
individually and on behalf of            *
others similarly situated, and
individually, GAIL ADAMS, DONALD         *
BAKERT, et al,
                Plaintiffs,              *
           VS.                               CIVIL ACTION NO.
                                         *      3:03 CV 0431
THE DUN & BRADSTREET CORPORATION,                  (SRU)
THE DUN & BRADSTREET CORPORATION         *
RETIREMENT ACCOUNT, and THE DUN
& BRADSTREET CAREER TRANSITION           *
PLAN,
                Defendants.              *
  *   *   *   *   *   *   *   *   *   *   *   *


                                    Stamford, CT

                                    May 27, 2004

                                    9:30 a.m.
                          - - -
              DEPOSITION OF CLAUDE POULIN
                          - - -

APPEARANCES:

    FOR THE PLAINTIFFS:

    MOUKAWSHER & WALSH, LLC
    BY: THOMAS G. MOUKAWSHER, ESQ.
        21 Oak Street, Suite 209
        Hartford, CT 06106

    FOR THE DEFENDANTS:

    PAUL HASTINGS, JANOFSKY & WALKER, LLP
    BY: PATRICK W. SHEA, ESQ.
        1055 Washington Boulevard, 9th Floor
        Stamford, CT 06901-2217
```

1    Q.    What is your understanding of what
2    it says?
3    A.    I believe that the statutes and/or
4    the regulations stipulate that the benefits
5    must be actuarially equivalent or the
6    actuarial equivalent or actuarial
7    equivalencies are based on two factor: One
8    being the interest rate; the other one being
9    the mortality table.
10    I understand that the statute does not
11    specify which mortality table or which interest rate
12    is to be used. The requirement is that it be an
13    actuarial equivalent, and it could be that a certain
14    interest rate, that in isolation, in a vacuum, would
15    be unreasonable, would be tempered or the impact of
16    that rate would be mitigated by a mortality table
17    that would offset it. If this happened, it would
18    offset the impact of the interest rate and
19    vice-versa.
20    Q.    But overall, the plan must use
21    reasonable assumptions of mortality and
22    interest to arrive at the actuarial
23    equivalent?
24    A.    Reasonable assumptions that would
25    lead to a benefit that would be actuarially

1   experience?
2           MR. SHEA:  Objection to form.
3   Leading.
4       A.  Yes.
5   BY MR. MOUKAWSHER:
6       Q.  Depending on the mortality table
7   that was used in the Dun & Bradstreet plan,
8   is there any circumstance today, depending
9   on the use of deferring mortality tables,
10  that a 6.75 percent interest rate would be,
11  in fact, a reasonable rate?
12          MR. SHEA:  Objection.
13      Q.  Of the Dun & Bradstreet plan?
14          MR. SHEA:  Objection to the
15  form.
16      A.  Ignoring the impact of the
17  mortality table.
18      Q.  In other words, assuming you could
19  change the mortality table to anything you
20  wanted it to be right now, could the
21  combination under any circumstance,
22  depending on how you make up your own
23  mortality table, could a 6.75 percent
24  interest rate produce a reasonable actuarial
25  value in conjunction with at least some

132

1  mortality tables?
2           MR. SHEA:  Objection to the
3  form.
4       A.   Yes, it is possible to generate or
5  create a mortality table that combined with
6  a 6.75 percent interest rate would produce a
7  reasonable actuarial equivalent benefit.
8       Q.   What impact does the use of a
9  mortality table, that you discern was being
10 used here, have on reasonableness of an
11 attempt to get actuarial equivalence?
12      A.   I have not quantified the impact on
13 the mortality table per se, but I believe it
14 was Exhibit D that showed that it has a
15 significant impact on the size of the
16 actuarial reductions compared to a more
17 recent table.
18      Q.   So do the mortality tables applied
19 here make the situation better for employees
20 or worse for employees?
21          MR. SHEA:  Objection to the
22 form.
23      A.   The situation for employees is
24 definitely worse by the use of this
25 mortality table.