LEXSEE 1998 U.S. DIST. LEXIS 2354

CONNTECT, INC. v. TURBOTECT, LTD.

Case No. 3:97cv784(AHN)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

1998 U.S. Dist. LEXIS 2354

February 23, 1998, Decided
February 23, 1998, Filed

**DISPOSITION:** [*1] Conntect's Motion to Amend [doc. # 11] GRANTED and Turbotect's Motion to Dismiss [doc. # 7] DENIED.

**LexisNexis(R) Headnotes**

**COUNSEL:** For CONNTECT, INC, plaintiff: John E. Lee, New Haven, CT.

For TURBOTECT LTD, defendant: Norman Resnikow, Arthur W. Rovine, Lalit Loomba, Baker & McKenzie, New York, NY USA.

For TURBOTECT LTD, defendant: James T. Shearin, Pullman & Comley, Bridgeport, CT.

**JUDGES:** Alan H. Nevas, United States District Judge.

**OPINIONBY:** Alan H. Nevas

**OPINION:**

RULING ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S MOTION TO AMEND COMPLAINT

The plaintiff, Conntect, Inc. ("Conntect"), brings this diversity action against the defendant, Turbotect, Ltd. ("Turbotect"), for, inter alia, breach of contract and violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § § 42-110a - q ("CUTPA").

Now pending before the court are Turbotect's Motion to Dismiss and Conntect's Motion to Amend the Complaint. For the reasons stated below, Turbotect's motion [doc. # 7] is DENIED, and Conntect's motion [doc. # 11] is GRANTED.

FACTS

For the purposes of these motions, the court accepts the following allegations in the First Amended Complaint as true.

Conntect is a corporation organized [*2] under the laws of the state of Delaware, with its principal place of business in Brookfield, Connecticut. (See First Am. Compl. First Count P 1.) Turbotect is a corporation organized under the laws of Switzerland, with its principal place of business in Baden, Switzerland. (See id. P 2.)

Conntect manufactures, sells and distributes gas turbine fuel additives, gas turbine compressor cleaners and related products.(See id. P 4.) Turbotect sells gas turbine fuel additives and gas turbine compressor cleaners. (See id. P 5.)

On or about April 25, 1986, pursuant to a written contract, Turbotect engaged the services of Conntect to (1) act as a consultant and advisor to Turbotect; (2) purchase raw materials necessary for manufacturing gas turbine fuel additives; (3) arrange for the manufacture of gas turbine fuel additives from these raw materials; and (4) arrange for the shipment of the gas turbine fuel additives to Turbotect. (See id. P 6.) Under this agreement, Turbotect promised to pay Conntect an annual fee and a commission on each sale, and reimburse Conntect for expenses incurred from the purchase of raw materials and the manufacture and shipment of the gas turbine [*3] fuel additives. (See id. P 7.)

The original agreement commenced retroactively on August 15, 1985 and ended on August 15, 1988. (See id. P 9.) Then, by additional written agreements, the parties extended the original contract to February 15, 1991 and raised the annual fee. (See id. P 10.)

During the term of the contract extension, Turbotect placed 131 orders with Conntect for the production and

shipment of gas turbine fuel additives. (See id. P 12.) Conntect purchased raw materials for these orders and arranged for the manufacture and shipment of the gas turbine fuel additives. (Id.) Conntect billed Turbotect for the orders and, pursuant to the terms of the agreement, Turbotect paid for the fuel additives, reimbursed Conntect for the raw materials and paid the commissions due as a result of the orders. (See id. P 13.)

On February 15, 1991, the written agreement expired. (See id. P 14.) Nonetheless, Turbotect continued to use Conntect's services. (Id.) As before, Turbotect transmitted orders to Conntect in Connecticut for the purchase of raw materials and the manufacture and shipment of fuel additives and compressor cleaners. (See id. P 16.) From [*4] 1991 to 1995, Turbotect transmitted 369 orders, all of which were processed and shipped by Conntect. (See id. P 18.) Turbotect's payments for all of these orders included reimbursement for raw materials used and expenses incurred as a result of the orders. (See id. P 19.)

In 1996-97, Turbotect transmitted numerous orders to Conntect, and Conntect, as it had done in the past, accepted and processed the orders in reliance on its understanding that the financial terms of the 1991 agreement were still in effect. (See id. PP 20-21.) However, Turbotect refused to pay for the raw materials and the orders in accordance with the agreement. (See id. P 22.) As a result, Conntect alleges that it has incurred damages of $ 913,000 for Turbotect's breach of the agreement and over $ 2.6 million for Turbotect's profits earned as a result of Conntect's services. (See id. P 22, Third Count P 12.) Conntect brings this action for breach of contract ("Count One"), unjust enrichment ("Counts Two"), compensation for the value of services rendered ("Count Three"), violation of CUTPA ("Count Four"), and declaratory relief ("Count Five").

DISCUSSION

Turbotect argues that (1) Count [*5] Four fails to state a claim; and (2) Count Three must be dismissed under the Federal Arbitration Act, *9 U.S.C. § § 1 - 307* ("FAA"), because it is governed by an arbitration clause contained in the parties' original written agreement. Conntect, on the other hand, moves to amend its complaint to (1) correct the alleged deficiencies in the CUTPA claim; and (2) change the scope of Count Three from 1985 through the present, to 1991 through the present. Because Turbotect's motion to dismiss addresses both Conntect's First Amended Complaint and proposed Second Amended Complaint, the court will address Conntect's motion to amend prior to addressing the motion to dismiss.

I. Motion to Amend Complaint

A. Standard of Review

Rule 15(a) requires that a court's permission to amend a pleading "shall be freely given when justice so requires." *Rule 15(a), Fed. R. Civ. P.* In *Foman v. Davis, 371 U.S. 178, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)*, the Supreme Court explained that

> if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject to relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent [*6] or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment etc.--the leave should, as the rules require, be 'freely given.'

*Foman, 371 U.S. at 182.*

The decision whether to grant leave to amend is within the court's sound discretion. See id. As Foman "makes equally and explicitly clear, that discretion must be exercised in terms of a justifying reason or reasons consonant with the liberalizing 'spirit of the Federal Rules.'" *United States v. Continental Illinois Nat. Bank & Trust, 889 F.2d 1248, 1254 (2d Cir. 1989)* (quoting *Rule 1, Fed. R. Civ. P.*, which states that rules are to be construed "to secure the just, speedy, and inexpensive determination of every action").

B. Count Three

Conntect proposes to amend Count Three to change its scope from 1985 through the present to 1991 through the present. Turbotect argues that the court should not permit this amendment because it has been brought in bad faith. Specifically, Turbotect states that [*7] Conntect seeks to "avoid arbitration of the claim" by "arbitrarily changing the language of [the] count." (See Def.'s Mem. Opp'n Pl.'s Mot. Am. Compl. at 3.) The court does not agree.

According to Conntect, it does not bring this action pursuant to the written contract which governed the parties' relationship between 1985 and 1991, but pursuant to the practice of the parties after the expiration of the written agreement. As Count Three is presently pled, Conntect seeks compensation for the reasonable measure of the present and future value of its services

rendered in 1996 and 1997. The proposed amendment, however, seeks to clarify that the parties' relationship in 1996 and 1997 was not governed by a written contract and should instead be scrutinized in accordance with the business practice that they have engaged in since 1991. Based on this representation, the court grants Conntect's motion to amend with respect to Count Three.

C. Count Four

Conntect proposes to amend Count Four to state with greater particularity the basis for its CUTPA claim. The original Count Four alleges that Turbotect's refusal to pay Conntect for processed orders, in light of its "threats" that [*8] Conntect's "failure to process orders despite Turbotect's failure to make payment would be detrimental to Turbotect's business and the Turbotect-Conntect relationship," constituted an unfair or deceptive business practice, in violation of CUTPA. (See First Am. Compl. Fourth Count PP 22, 24.) In its proposed amendment, Conntect alleges that Turbotect violated CUTPA by (1) inducing Conntect to process orders without payment through representations to Conntect that its failure to process orders would severely damage Turbotect's business; and (2) meeting with two different suppliers of Conntect and inducing them to increase their prices to Conntect. (See Pl.'s Mot. Am. Compl. Attach. 1 [hereinafter "Proposed Second Am. Compl."] Fourth Count.)

Turbotect alleges that the amendment should not be permitted because it is futile. See *Azurite Corp. v. Amster & Co.*, 52 F.3d 15, 19 (2d Cir. 1995) (holding that a motion to amend must be denied where the amendment is futile); *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 225 (3d Cir. 1994) (holding that "if the proposed change advances a claim or defense that is legally insufficient on its face, the court may deny leave [*9] to amend") (citation and quotation marks omitted). Specifically, Turbotect alleges that, as with the original count, the proposed amended Count Four fails to state a claim under CUTPA because it neither sets forth, with particularity, the specific facts supporting the claim, nor explains how such facts are unfair, immoral or deceptive. Again, the court does not agree.

Leave to amend should only be denied on futility grounds when the proposed amendment fails for procedural or substantive reasons. See *Wilson Group, Inc. v. Quorum Health Resources*, 880 F. Supp. 416, 428 (D.S.C. 1995) (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir.), cert. denied, 448 U.S. 911, 65 L. Ed. 2d 1141, 101 S. Ct. 25 (1980)). More specifically, "in this Circuit, an amendment is considered futile if the amended pleading fails to state a claim." *Picotte v. Community Child Care Center of Third Ward, Inc.*, 901 F. Supp. 588, 596 (W.D.N.Y. 1995) (quoting *Tri-State Judicial Servs., Inc. v. Markowitz*, 624 F. Supp. 925, 926 (E.D.N.Y. 1985)); see also *Smith v. O'Connor*, 901 F. Supp. 644, 650 (S.D.N.Y. 1995) (holding that where a proposed amendment would be subject to dismissal [*10] for failure to state a claim, the motion to amend should be denied). Conntect's proposed amended Count Four does not fail to state a CUTPA claim. Rather, Count Four alleges with particularity the basis under which it brings the claim; namely, that Turbotect threatened Conntect and that it persuaded two of Conntect's business partners to raise the prices that they had been charging Conntect. At this stage, such allegations are sufficient to state a claim under CUTPA, and thus the amendment is not futile. n1

---

n1 In its proposed Second Amended Complaint, Conntect also adds a claim for "intentional and improper tortious interference with Conntect's business relationships." (Proposed Second Am. Compl. Sixth Count.) This claim incorporates the allegations of Count Four. Notwithstanding Turbotect's futility argument, the court will also permit this amendment based on Rule 15(a)'s direction that permission should be "freely given." *Rule 15(a), Fed. R. Civ. P.*

---

II. Motion to Dismiss

A. Standard of Review [*11]

In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all factual allegations in the complaint and must construe any well-pleaded factual allegations in the plaintiff's favor. See *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974); *Easton v. Sundram*, 947 F.2d 1011, 1014-15 (2d Cir. 1991), cert. denied, 504 U.S. 911, 118 L. Ed. 2d 548, 112 S. Ct. 1943 (1992). A court may dismiss a complaint only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); see also *Still v. DeBuono*, 101 F.3d 888, 891 (2d Cir. 1996). The issue on a motion to dismiss "is not whether the plaintiff will prevail, but whether he is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.*, 727 F. Supp. 784, 786 (D. Conn. 1990) (citing *Scheuer*, 416 U.S. at 236). In deciding such a motion, consideration is limited to the facts stated in the complaint or in documents attached thereto as exhibits or incorporated therein by reference. See [*12] *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

B. Count Three - Compelling Arbitration

The FAA applies to diversity actions in which there is both a written arbitration agreement and an underlying transaction involving interstate commerce. See *9 U.S.C. § § 1, 2*; see also *David L. Threlkeld & Co. v. Metallgesellschaft, Ltd., 923 F.2d 245, 249 (2d Cir.)*, cert. denied, *501 U.S. 1267, 115 L. Ed. 2d 1094, 112 S. Ct. 17 (1991)*. Under § 4 of the FAA,

> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States District Court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

*9 U.S.C.A. § 4* (West 1970). To compel arbitration under this section, the court need only find that the underlying dispute is covered by a written arbitration agreement and that the dispute falls within the scope of this agreement. [*13] See id.; *Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987)* (citing *Mitsubishi Motors v. Soler Chrysler-Plymouth, 473 U.S. 614, 626, 87 L. Ed. 2d 444, 105 S. Ct. 3346 (1985))*.

Turbotect argues that the court should compel arbitration with respect to Count Three because the parties' original contract, which was in effect from August 15, 1985 to August 15, 1988 and then extended through February 15, 1991, contained an arbitration clause governing situations in which Conntect sought a proprietary interest in Turbotect. n2 Turbotect maintains that Count Three seeks such a proprietary interest.

n2 This arbitration clause provided:

> where the parties are unable to agree as to whether Conntect is entitled to a proprietary interest and/or they are unable to agree [upon] the size or the commercial value of the proprietary interest within a reasonable time then the matter might be referred by either party to and finally settled by arbitration. The arbitration shall be held in Zurich under the Conciliation and Arbitration Rules of the Zurich Chamber of Commerce.

(Def.'s Mem. Supp. Mot. Dismiss at 9.)

[*14]

Without addressing the issue of whether Count Three does, in fact, seek a proprietary interest in Turbotect, the court denies the motion to dismiss based upon Conntect's representations that this entire action is solely based upon the parties' practice after the expiration of the written contract, and not on the written contract containing the arbitration clause. Both in its pleadings and during oral argument, Conntect argued that all of its claims relate to Turbotect's alleged failure to pay for orders processed in 1996 and 1997 and that the written contract, because it expired in 1991, did not govern the parties' relationship during this time period. Thus, the claims at issue in this law suit do not arise under, and do not relate to, the written contract containing the arbitration clause. See *9 U.S.C. § 4* (stating that "[a] party aggrieved by the alleged . . . refusal of another to arbitrate under a written agreement for arbitration may petition the [court]" for an order compelling arbitration) (emphasis added); see also *Atkinson v. Sinclair Refin. Co., 370 U.S. 238, 241, 8 L. Ed. 2d 462, 82 S. Ct. 1318 (1962)* (stating that "whether or not a party is [*15] bound to arbitrate a given issue is a matter to be determined on the basis of the contract entered into by the parties") (citation and internal quotation marks omitted).

Turbotect argues that, because the parties continued to do business in accordance with the same terms as the expired written contract, "an implication arose that they [] mutually assented to a new contract containing the same provisions as the old." *Teachers Ins. & Annuity v. Ormesa Geothermal, 791 F. Supp. 401, 415 n.4 (S.D.N.Y. 1991)* (quoting *Martin v. Campanaro, 156 F.2d 127, 129 (2d Cir.)*, cert. denied, *329 U.S. 759, 91 L. Ed. 654, 67 S. Ct. 112 (1946))*. However, the court is not persuaded. The original contract specifically stated that "no modification, amendment or waiver of any provision of the agreement shall be effective unless set forth in writing." n3 Thus, absent a written agreement extending the expiration date of the original contract, the court cannot find, as is required, that Count Three is governed by the arbitration agreement contained in the original written contract. See *Valley Juice Ltd. v. Evian Waters of France, Inc., 87 F.3d 604, 612-13 (2d Cir. 1996)* (holding that where [*16] a written contract stated that it could be "changed only by a writing signed by both [parties]," the contract could not be renewed orally,

based on the parties' "claimed understanding that the relationship would continue").

> n3 The parties recognized this fact when they executed a written amendment extending the contract's expiration date from August 15, 1988 until February 15, 1991.

C. Count Four

CUTPA is intended to punish conduct which rises to the level of being unscrupulous, unfair or offensive to public policy. See *Krawiec v. Blake Manor Dev. Corp., 26 Conn. App. 601, 607, 602 A.2d 1062 (1992)*. "In determining whether a practice violates CUTPA, [the Connecticut Supreme Court] has adopted the criteria set out in the 'cigarette rule' . . . for determining when a practice is unfair." *Cheshire Mortgage Serv., Inc. v. Montes, 223 Conn. 80, 105, 612 A.2d 1130 (1992)* (citation and internal quotation marks omitted). Under this rule, the court must determine (1) whether the practice violates public [*17] policy, i.e., whether "it is within at least the penumbra of some common law, statutory, or other established concept of unfairness"; (2) whether it is immoral, unethical or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors or other business associates. See *id. at 106* (citation and internal quotation marks omitted). All three criteria need not be met. Id. Rather, "[a] practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." Id. (citation and internal quotation marks omitted).

Turbotect alleges that Conntect's proposed amended Count Four merely states a breach of contract claim and thus fails to state a CUTPA claim. See *Set to Fit Realty v. First Stamford Corp., 1994 Conn. Super. LEXIS 1040, No. CV 91 0119612, 1994 WL 161346, at *6 (Conn. Super. Ct. April 19, 1994)* (holding that "[a] simple contract breach is not sufficient to establish a violation of CUTPA"). Turbotect further argues that the proposed Second Amended Complaint does not plead a cause of action under CUTPA with the requisite particularity. See *Sorisio v. Lenox, Inc., 701 F. Supp. 950, 962 (D. Conn. 1988)* (holding [*18] that "[a] CUTPA claim must be plead with particularly to allow evaluation of the legal theory upon which the claim lies").

The court disagrees. First, Count Four is not merely a claim for breach of contract. Unlike the breach of contract claim in Count One, the allegations in Count Four are not based upon Turbotect's failure to pay Conntect for processed orders. Rather, Count Four is based upon allegations that Turbotect engaged in unfair business practices by, inter alia, meeting with two of Conntect's business partners and causing them to increase the prices that they were charging Conntect.

Second, Count Four satisfies the particularity requirement articulated by several Connecticut District Courts. See *Sorisio, 701 F. Supp. at 962; Omega Engineering, Inc. v. Eastman Kodak Co., 1991 U.S. Dist. LEXIS 14832, B-90-554(WWE), 1991 WL 218456, at *4 (D. Conn. Aug. 20, 1991)*; but see *Green v. Konover Residential Corp., 1997 U.S. Dist. LEXIS 18893, No. 3:95cv1984(GLG), 1997 WL 736528, at *6 (D. Conn. Nov. 24, 1997)* (holding that the particularity requirement that Connecticut courts have imposed upon CUTPA claims does not apply in federal court, where *Fed. R. Civ. P. 8(a)* merely requires a "short plain statement of the claim"). [*19] n4 Conntect does not merely allege the magic words of CUTPA, i.e., that the defendant engaged in an unfair, unethical, immoral or unscrupulous business practice which offends public policy and causes substantial harm to consumers. Instead, Conntect provides three separate examples of the type of conduct which it alleges violated CUTPA. Conntect alleges that (1) Turbotect made "threats that Conntect must continue to process orders despite non-payment or risk financial responsibility for damage to Turbotect's business and the Turbotect-Conntect relationship; (2) Turbotect informed Witco, one of Conntect's suppliers, that it "intended to cause severe financial harm to Conntect's business," thereby causing Witco to increase its prices to Conntect; and (3) Turbotect offered money to Octagon, a company with whom Conntect had an exclusive distribution agreement for a compressor cleaner, "to cancel the exclusive agreement with Conntect and to enter in lieu thereof an exclusive agreement with Turbotect," thereby causing Octagon to increase its prices to Conntect. (See Proposed Second Am. Compl. Fourth Count P 22.) These allegations are sufficient to survive a motion to dismiss. See *The* [*20] *Stanley Works v. Waxman Industries, Inc., 1990 U.S. Dist. LEXIS 20891, No. Civ. H-89-594 (PCD), 1990 WL 484228, at *3 (D. Conn. Mar. 19, 1990)* (holding that "an individual may maintain a private cause of action for a CUTPA violation on the basis of conduct which singularly impacts on the individual, without the necessity of the claim being based on a general course of conduct") (citation and internal quotation marks omitted).

> n4 This "Particularity requirement" is not derived from the pleading requirements of *Fed. R. Civ. P. 9(b)*. Only where common law fraud is being alleged under the guise of a CUTPA claim, must such a claim be alleged in accordance with the particularity requirements of this provision. See *NCC Sunday Inserts, Inc. v. World Color*

*Press, Inc.*, 692 F. Supp. 327, 330 (D. Conn. 1988).

For these reasons, the Motion to Dismiss must be denied.

CONCLUSION

For the reasons stated above, Conntect's Motion to Amend [doc. # 11] is GRANTED, and Turbotect's Motion to Dismiss [doc. # 7] is DENIED.

SO ORDERED this 23rd **[*21]** day of February, 1998 at Bridgeport, Connecticut.

Alan H. Nevas

United States District Judge