Not Reported in F.Supp.                                                                                                 Page 1
1997 WL 80575 (S.D.N.Y.)
**(Cite as: 1997 WL 80575 (S.D.N.Y.))**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

MEDFORD COWELL GROUP, INC., Plaintiff,
v.
Maria Teresa GILBERTI s.r.l. Defendant
Maria Teresa GILBERTI s.r.l., Counterclaimant
v.
Maurizio COVELLI. Counterclaim Defendant.

No. 95 Civ. 4178(RPP).

Feb. 26, 1997.

Bodian & Eames, by Robert Bodian New York City, for counterclaim defendant.

Pavia & Harcourt, by Alessandro Saracino, Victor Genecin, New York City, for counterclaimant.

OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

*1 Counterclaim defendant Maurizio Covelli ("Covelli") moves for summary judgment dismissing the counterclaim brought by defendant and counterclaimant Maria Teresa Gilberti, s.r.l. ("MTG") under Fed. R. Civ. P. 56. MTG moves for leave to amend its Answer and Counterclaim pursuant to Fed. R. Civ. P. 15 (a)-(b).

Background

Medford Cowell Group, Inc. ("Medford") brought this action against MTG alleging breach of contract, unjust enrichment, and anticipatory repudiation claims arising from MTG's manufacture and delivery of allegedly defective clothing pursuant to an agreement between MTG and Medford. MTG brought seven counterclaims against Medford for, inter alia, payment on the contract, tortious interference, and disparagement.

MTG also has brought one "counterclaim" against Covelli, who allegedly negotiated the terms of the alleged joint venture agreement. The counterclaim alleges, "By failing to create an organization capable to adequately distribute MTG's product, and by refusing to recognize MTG's additional direct and indirect costs for the manufacturing, shipping and selling of the goods sold to Medford, Covelli has breached the joint venture agreement existing with MTG." (Counterclaim ¶ 76.)

MTG is an Italian corporation with its principal place of business in Genoa, Italy. MTG sells and exports to New York and elsewhere cashmere clothing and accessories. (3(g) Statement ¶ 1.) Medford is a New York corporation with offices at 1140 Broadway, which imports, markets, and sells cashmere clothing and accessories. (3(g) Statement ¶ 4.)

The agreement at issue arose from discussions between Covelli and Marco Pedemonte, "sole administrator" of MTG regarding the manufacture of MTG cashmere products in Italy and the distribution and sale of those products in this country. (See 3(g) Statement ¶ 9; 3(g) Response ¶ 9.)

Discussion

A. Summary judgment

Covelli moved at the close of discovery to dismiss the counterclaim brought against him because, he contends, he was not party to the agreement from which the causes of action arise. MTG contends that a triable issue of fact exists with respect to whether the agreement was made between MTG and Medford or MTG and Covelli. [FN1]

> FN1. MTG also contends that a triable issue of fact exists with respect to whether Covelli functioned as the alter ego of Medford Cowell. MTG, however, failed to allege facts to support an alter-ego theory in its Complaint.

The Second Circuit has summarized the standards for granting summary judgment as follows:
> First, summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

law." Fed. R. Civ. P. 56(c). Second, the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists. In considering that, third, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. Fourth, the moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.

*2 *Gallo v. Prudential Residential Svcs., 22 F.3d 1219, 1223-24 (2d Cir. 1994)* (citations omitted).

Covelli contends that Medford and MTG entered into an oral agreement whereby MTG would manufacture and ship to Medford cashmere clothing and accessories, and Medford would market and sell the goods in the United States. (3(g) Statement ¶ 5.) In support of this statement Covelli submits the deposition testimony of Marco Pedemonte ("Pedemonte"), "sole administrator" of MTG:

Q: What was the purpose of your extended meeting with Mr. Covelli at the end of 1993?
A: Essentially to discuss the creation of a joint venture to distribute our products in the United States.
Q: I know you were together for a long time but if you can tell me everything that you remember about what you discussed?
A: What we discussed was the joint venture and details of what we discussed in the draft of the joint venture agreement that I put together, and I'm talking about my draft of the joint venture agreement that I put together in February of '94 at the same time....
....
Q: Can you tell me what was discussed about the specific terms?
A: I will repeat. It is contained within the '94 draft of the agreement that I put together.
(Bodian Aff., Ex. D at 42-44.)

The draft agreement to which Pedemonte's deposition testimony refers provides the following:

Joint venture agreement between the companies known as Maria Teresa Gilberti, S.R.L., whose registered office is located in Genoa, and Medford Cowell Group, whose registered office is located in New York, at 1140 Broadway, Suite 1604, with said firm being a company partially owned by IRIX International Corporation.

The following terms have been established and adopted by the two companies, which are personally represented by their respective legal representatives, namely Mr. Marco Pedemonte, the Sole Manager of Maria Teresa Gilberti, s.r.l., and Mr. Maurizio Covelli, the Chairman of IRIX International Corporation, who is likewise a partner of the Medford Cowell Group[.]
(Bodian Aff., Ex. E.) ("First Draft Agreement"). Two additional drafts exchanged between Pedemonte and Covelli also name MTG and Medford as parties to the agreement and refer to Covelli only as representative of Medford. (3(g) Statement ¶ 11; Bodian Aff., Exs. F & G.) Covelli is not referred to in any of the drafts other than as representative of Medford. (3(g) Statement ¶ 11.) All shipments and invoices were sent to Medford. (3(g) Statement ¶ 7.)

MTG asserts that the agreement was made between Pedemonte, as representative of MTG, and Covelli acting on his own behalf; and that merchandise was shipped according to Covelli's instructions. (3(g) Response ¶ 5, 7, 8.) To support these assertions MTG offers a declaration by Pedemonte dated October 25, 1996 ("Pedemonte Decl.") stating that Covelli proposed that MTG sell Covelli the goods at cost and that Covelli organize their distribution in the U.S. (Pedemonte Decl. ¶ 11); that Covelli never said that he was a representative of Medford, that he spoke in the first person, and that he assured Pedemonte that he personally would be the principal on the American side of the proposed joint venture (Pedemonte Decl. ¶ 12); that he would personally organize the distribution (Pedemonte Decl. ¶ 12); and that Covelli reassured Pedemonte that he was dealing with him, and that he was good, personally, for the money. (Pedemonte Decl. ¶ 15.)

*3 MTG also asserts in its 3(g) Response that all goods were in fact shipped to Covelli and that shipments and invoices were sent to Medford only upon Covelli's instruction but provides no supporting documents or citations to depositions for either assertion. (3(g) Response ¶ 6.) Pursuant to this Judge's rules, 3(g) statements and responses are required to support claims with citations to the record. In addition the responses are contradicted by MTG's Answer and Counterclaims, which repeatedly allege that goods were sold and delivered to Medford.

Furthermore, the portions of the Pedemonte Declaration that suggest that the agreement was between Covelli, personally, and MTG, (Pedemonte Decl. ¶¶ 11-12), are contradicted by his deposition testimony, which refers to the First Draft Agreement

Case 3:03-cv-00431-SRU   Document 72-6   Filed 02/04/2005   Page 3 of 4

Not Reported in F.Supp.     Page 3
1997 WL 80575 (S.D.N.Y.)
**(Cite as: 1997 WL 80575 (S.D.N.Y.))**

as an embodiment of the agreement. They are also contradicted by the portion of the Pedemonte Declaration that identifies the First Draft Agreement as the embodiment of the joint venture agreement. (Pedemonte Decl. ¶ 17.) The subsequent drafts, as well as the shipping and invoicing documents, also contradict the Pedemonte Declaration.

An affidavit opposing summary judgment that contradicts the affiant's previous deposition testimony does not create an issue of fact. _Hayes v. New York City Dep't of Corrections_, 84 F.3d 614 (2d Cir. 1996). A review of the depositions and documents submitted on this motion shows that MTG developed insufficient evidence for a reasonable juror to conclude that Covelli was a party to the joint venture agreement, even if all ambiguities are resolved and inferences are drawn in favor of MTG. Thus, summary judgment should be granted dismissing the breach of contract action as against Covelli.

B. Motion to Amend

MTG requests leave to amend its counterclaims by adding two "counterclaims" against Covelli, for alter ego liability and for fraud, on the basis of "information obtained during discovery." The alter ego counterclaim alleges that "Covelli exercised such control and domination over Medford Cowell that Medford Cowell was merely a 'shell' used by Covelli to advance his own personal ends" causing damages to MTG. (Saracino Aff., Ex. A ¶ 97-98.) The fraud counterclaim alleges that Covelli fraudulently led MTG to believe that he was president and owner of Medford while it was actually Maria De Filippis. (_Id._ ¶ 103-12.) MTG does not identify what new information it "obtained during discovery" or when it received the new information which gave rise to the new counterclaims. (_See Saracino Aff._, dated Nov. 1, 1996, and Exs.) Medford contends, and MTG does not dispute, that all documents submitted in support of MTG's motion to amend were produced by February 23, 1996, and that depositions of De Filippis, Covelli, and Pedemonte were taken in January and March of 1996. (Covelli's Opp. Mem. at 7.) Thus, if any such information came from document requests or depositions of the parties, these were taken in January, February, and March 1996.

*4 MTG filed the answer and counterclaims on July 10, 1995. All documents on which MTG relies for its proposed amended counterclaims were produced by February 1996. Pedemonte and Covelli were deposed in March 1996. Discovery was completed on June 4, 1996. The summary judgment motion to dismiss the counterclaim against Covelli was filed on July 31, 1991. The motion to amend was filed on Nov. 4, 1996.

Covelli argues that leave to amend should be denied because 1) it would unfairly prejudice him; 2) all of the relevant facts were known when the counterclaims were first brought; and 3) the proposed counterclaims are futile.

Leave to amend should be given unless there is undue delay, bad faith, undue prejudice to the opposing party, or futility of the amended complaint. _Foman v. Davis_, 371 U.S. 178, 182 (1962); _Teachers Retirement Bd. v. Fluor. Corp._, 654 F.2d 843, 856 (2d Cir. 1981.) When a motion for summary judgment has already been filed and discovery completed, an amended pleading is likely to result in prejudice. _See Ansam Assocs., Inc. v. Cola Petroleum, Ltd._, 760 F.2d 442 (2d Cir. 1985); _Oak Point Associates et al v. Southern States Screening, Inc._, 1992 WL 197419 (S.D.N.Y. 1992) (JFK); _cf. Walton v. Waldron_, 886 F. Supp. 981 (N.D.N.Y. 1995) (allowing amended pleading after summary judgment motion because little discovery had occurred and defendants had some prior notice).

MTG brought this motion to amend over seven months after relevant discovery was taken, five months after all discovery was completed, and over three months after Covelli moved for summary judgment. MTG has provided no explanation for its delay in bringing this motion and neglected to submit reply papers to answer those questions raised by Covelli.

Covelli would have to conduct additional discovery if the new counterclaims were added. The proposed alter-ego theory counterclaim would require Covelli to defend additional depositions of the parties and secure evidence from third parties with respect to separate corporate existence. _See Vac Svc. Corp. v. Service Merchandise Co., Inc._, 1996 WL 625423 (S.D.N.Y. 1996) (denying leave to amend because opposing alter ego claim would require "substantial time to conduct discovery and garner evidence"). The proposed fraud counterclaim, of which the complaint also gives no notice, would also require additional discovery.

Because of the imminence of trial and the length of the delay, five months after completion of discovery, to which MTG has no explanation, and because amendment of the counterclaims would cause undue prejudice to Covelli by requiring additional

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

discovery, the motion to amend is denied.

Conclusion

Covelli's summary judgment motion dismissing MTG's counterclaim brought against him is granted. MTG's motion for leave to amend the counterclaims is denied. The parties are to file a Pre-Trial Order by March 10, 1997 and appear for trial on March 17, 1997 at 9:00 a.m.

**\*5** IT IS SO ORDERED

1997 WL 80575 (S.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**
. 1:95CV04178 (Docket)
(Jun. 07, 1995)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.