UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

United States District Court
District of Connecticut
FILED AT   BRIDGEPORT
2/8/05
Kevin F. Rowe, Clerk
By D. Candee
Deputy Clerk

| | |
|---|---|
| MARY McCARTHY, CLAYTON BOROWSKI, individually and on behalf of others similarly situated, and individually, GAIL ADAMS, DONALD BAKERT, et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE DUN & BRADSTREET CORPORATION, THE DUN & BRADSTREET CORPORATION RETIREMENT ACCOUNT, and THE DUN & BRADSTREET CAREER TRANSITION PLAN, <br><br> Defendants. | CIVIL ACTION NO. 3:03 CV 0431 (SRU) <br><br><br> FEBRUARY 4, 2005 |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO COUNT 4

Still lacking any support for their claim that the MRP's interest rate of 6.75 percent is unreasonable, Plaintiffs continue to throw wayward barbs that have no applicability or relevance to the issue at hand. In a final attempt to keep Count 4 alive, Plaintiffs contend that Defendants' use of the 30-year Treasury bond rate in the Dun & Bradstreet Corporation Retirement Account (the "Retirement Account") – an entirely different plan that succeeded the Master Retirement Plan ("MRP") – demonstrates that even Defendants no longer believe that the MRP's 6.75 percent interest rate is reasonable. Relying on an on-line summary plan description of the Retirement Account that their counsel "recently received from a Dun & Bradstreet employee not a plaintiff in this case" (Declaration of T. Moukawsher ¶ 3; Ex. A to Pls.' Sur-Reply), Plaintiffs argue, "Dun & Bradstreet apparently believes the 30-Year Treasury rate is the appropriate choice for an interest rate under its current cash balance plan: it uses this rate to pay its employees interest on their cash

balance accounts and used this rate to set up the opening balances of the employees' accounts." Pls.' Sur-Reply at 1.

This argument is a red herring to deflect attention from the utter lack of evidence that the MRP's interest rate of 6.75 percent is somehow unreasonable. It is undisputed that the MRP is a traditional defined benefit plan, not a cash balance plan like the Retirement Account, which (as discussed below) operates under a different set of terms and rules. It is also undisputed that Plaintiffs are not challenging any aspect of or seeking any benefits under the terms of the cash balance plan. Therefore, Plaintiffs are once again comparing apples to oranges and asking the Court to find a connection where none exists: the interest credit rate used to calculate hypothetical account funds under a cash balance plan simply has no bearing on the reasonableness of the interest rate used to calculate actuarially equivalent benefits under a traditional defined benefit plan. Therefore, Plaintiffs' latest argument, like their other arguments, should be rejected.

### A. Unlike Traditional Defined Benefit Plans, Cash Balance Plans Must Use the 30-Year Treasury Rate to Avoid Potential Violations of ERISA and Treasury Regulations.

Under the umbrella of defined benefit pension plans, there are traditional defined benefit plans like the MRP (under which a retiree receives a fixed monthly pension based primarily on years of service, age at retirement, and salary during the last several years of employment), and a second type of defined benefit plan – the "cash balance plan" – that has emerged in more recent years. As the IRS has explained,

> In general terms, a cash balance plan is a defined benefit pension plan that defines benefits for each employee by reference to the amount of the employee's hypothetical account balance. An employee's hypothetical account balance is credited with hypothetical allocations and hypothetical earnings determined under a formula selected by the employer and set forth in the plan. These hypothetical allocations and hypothetical earnings are designed to mimic the allocations of actual contributions and actual earnings to an employee's account that would occur under a defined

> contribution plan. Cash balance plans often specify that hypothetical earnings (referred to in this notice as interest credits) are determined using an interest rate or rate of return under a variable outside index (e.g., the annual yield on one-year Treasury securities).

IRS Notice 96-8, 1996-1 C.B. 359, 1996 WL 17901 (IRS NOT) (attached hereto as Ex. A).

Unlike traditional defined benefit plans, for which (as discussed in Defendants' prior briefs) neither Congress nor the Treasury Department has prescribed the rate of interest to be used, there is significant regulatory and judicial authority compelling the use of the 30-year Treasury rate for cash balance plans. In 1996, the Internal Revenue Service issued IRS Notice 96-8, which was directed specifically at cash balance plans.[1] In this Notice, the IRS made clear that – <u>for cash balance plans only</u> – any rate other than the current 30-year Treasury rate would, as a practical and legal matter, be problematic in calculating benefits payable under the plan.

Specifically, for cash balance plans, lump sum distributions are calculated by projecting the cash balance forward to normal retirement age using an interest credit rate, and then discounting back to the present value using a discount rate. <u>See</u> Notice 96-8 at Section IIA ("[I]n order to comply with sections 411(a) and 417(e) in calculating the amount of a single sum distribution under a cash balance plan, the balance of the employee's hypothetical account must be projected to normal retirement age and then the employee must be paid at least the present value, determined in accordance with section 417(e), of that projected hypothetical account."); <u>Esden v. Bank of Boston</u>, 229 F.3d 154, 159 (2d. Cir 2000). While there is no specific interest <u>credit</u> rate mandated by statute or regulation, the <u>discount</u> rate must be the current 30-year Treasury rate as prescribed under

---

[1] The Second Circuit has held that Notice 96-8 represents the IRS's "fair and considered judgment" on the issue of cash balance plan administration and is entitled to deference. <u>Esden</u>, 229 F.3d at 169.

Internal Revenue Code Section 417(e).[2] Id.

If the interest credit rate is higher than the statutory discount rate, however, a problematic consequence known as the "whipsaw" effect occurs. Specifically, if the interest credit rate that is used to project the value of the cash balance account forward is higher than the Treasury rate that is used to discount back to present value, the lump sum benefit will be greater than the value of the cash balance account. See Notice 96-8 at Section IIA ("If a cash balance plan provides interest credits using an interest rate that is higher than the section 417(e) applicable interest rate, payment of a single sum distribution equal to the hypothetical account balance as a complete distribution of the employee's accrued benefit may result either in a violation of section 417(e) or a [prohibited] forfeiture . . ."); Esden, 229 F.3d at 159, 165-66. This in turn undermines one of the principal advantages of having a cash balance plan – the simplicity of having a stated account balance that reflects the value of the benefit just like a defined contribution plan.[3] See Esden, 229 F.3d at 158 (noting that with a cash balance plan, "[e]ach year an employee receives a statement of her 'account' balance, and can therefore see the value of her pension benefit. These features are designed to mimic the simplicity of a defined contribution plan.").

The only way an employer can avoid a potential "whipsaw" problem is to design its cash balance plan so that the interest credit rate equals the statutory discount rate. In this manner, the rates used to project forward and discount back would be the same, thereby making the actual

---

[2] IRC Section 417(e) defines the applicable interest rate for calculating lump sum distributions to mean "the annual rate of interest on 30-year Treasury securities for the month before the date of distribution or such other time as the Secretary may by regulations prescribe."

[3] In a footnote, Plaintiffs contend that, "Unlike with calculations of immediate lump sum retirement payments, ERISA doesn't mandate any particular rate for cash balance plans to use when paying interest to their employees . . .". Pls.' Sur-Reply at 1. While that may technically be true, selecting any rate that is higher than the Treasury rate does not avoid the practical problem of a "whipsaw," as described in this brief.

account balance equal to the discounted cash balance projected to normal retirement age. Like many other employers with cash balance plans who wish to avoid the "whipsaw" problem and ensure compliance with ERISA and the Treasury regulations, that is exactly what Dun & Bradstreet did in the Retirement Account. Therefore, Dun & Bradstreet's adoption of the current 30-year Treasury rate as the interest credit rate for its cash balance plan was a matter of legal and practical necessity under the rules governing cash balance plans; it was in no way any type of acknowledgement that the MRP's 6.75 percent rate is no longer an appropriate interest rate.[4]

**B.      Conclusion.**

Therefore, as set forth in their Memorandum and Reply Brief in Support of Their Motion for Summary Judgment as to Count 4, Defendants respectfully request that the Court GRANT Defendants' Motion for Summary Judgment and DISMISS Count 4 in its entirety and with prejudice.

---

[4] Likewise, Dun & Bradstreet's use of a 6.65 percent interest rate – the 30-year Treasury rate in effect on December 31, 1996 – to calculate opening balances under its cash balance plan does not support using the current 30-year Treasury rate in the MRP. Selecting an interest rate to set up opening balances under a cash balance plan is simply not analogous to selecting an interest rate to calculate actuarially equivalent early retirement benefits under a traditional defined benefit pension plan. Furthermore, as Plaintiffs acknowledge, there is no statutory or regulatory mandate as to what interest rate must be used for either purpose, nor is there any authority to suggest that those interest rates must be equivalent. See Pls.' Opp. at 6; Pls.' Sur-Reply at 1-2 n. 1. Therefore, Defendants' use of the 6.65 percent Treasury rate to calculate opening balances under the cash balance plan in no way calls into question the use of the 6.75 interest rate to calculate actuarially equivalent early retirement benefits under the MRP.

Respectfully submitted, this 4th day of February, 2005.

By: _____
Patrick W. Shea (ct07071)
Sandra K. Lalli (ct25805)
Paul, Hastings, Janofsky & Walker, LLP
1055 Washington Boulevard
Stamford, CT 06901-2217
Tel.: (203) 961-7400; Fax: (203) 359-3031
patrickshea@paulhastings.com
Counsel for Defendants

## CERTIFICATE OF SERVICE

This is to certify that on this 4th day of February 2005, a copy of the foregoing Defendants' Response to Plaintiffs' Sur-Reply in Opposition to Defendants' Motion for Summary Judgment as to Count Four was served by overnight express mail on the following counsel of record:

> Thomas G. Moukawsher, Esq.
> Moukawsher & Walsh, LLC
> 21 Oak Street, Suite 100
> Hartford, Connecticut 06106
>
> _____
> Sandra K. Lalli

STM/290171.1